Dennis F. Dunne
Evan R. Fleck
MILBANK LLP
55 Hudson Yards
New York, New York 10001
Telephone: (212) 530-5000
Facsimile:  (212) 530-5219

Gregory Bray
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile:  (213) 629-5063

*Proposed Counsel for Debtors and
Debtors-In-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                        :

In re:                        :    Chapter 11
                        :

AVIANCA HOLDINGS S.A., *et al.*,[1]  :    Case No. 20-11133 (MG)
                        :

               Debtors.  :    (Joint Administration Requested)
                        :
-------------------------------------------------------------------x

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
PURSUANT TO SECTIONS 105(a), 345, 363, AND 364 OF THE BANKRUPTCY
CODE (I) AUTHORIZING DEBTORS TO (A) MAINTAIN AND USE EXISTING
CASH MANAGEMENT SYSTEMS, BANK ACCOUNTS AND BUSINESS FORMS;
(B) CONTINUE TO ENGAGE IN INTERCOMPANY TRANSACTIONS AND
AFFORD ADMINISTRATIVE EXPENSE PRIORITY TO INTERCOMPANY
CLAIMS; (C) CONTINUE PAYMENT OF SERVICE CHARGES; (II)**

---

[1]    The Debtors in these chapter 11 cases, and each Debtor's federal tax identification number (to the extent applicable), are as follows: Avianca Holdings S.A. (N/A); Aero Transporte de Carga Unión, S.A. de C.V. (N/A); Aeroinversiones de Honduras, S.A. (N/A); Aerovías del Continente Americano S.A. Avianca (N/A); Airlease Holdings One Ltd. (N/A); America Central (Canada) Corp. (00-1071563); America Central Corp. (65-0444665); AV International Holdco S.A. (N/A); AV International Holdings S.A. (N/A); AV International Investments S.A. (N/A); AV International Ventures S.A. (N/A); AV Investments One Colombia S.A.S. (N/A); AV Investments Two Colombia S.A.S. (N/A); AV Taca International Holdco S.A. (N/A); Avianca Costa Rica S.A. (N/A); Avianca Leasing, LLC (47-2628716); Avianca, Inc. (13-1868573); Avianca-Ecuador S.A. (N/A); Aviaservicios, S.A. (N/A); Aviateca, S.A. (N/A); Avifreight Holding Mexico, S.A.P.I. de C.V. (N/A); C.R. Int'l Enterprises, Inc. (59-2240957); Grupo Taca Holdings Limited (N/A); International Trade Marks Agency Inc. (N/A); Inversiones del Caribe, S.A. (N/A); Isleña de Inversiones, S.A. de C.V. (N/A); Latin Airways Corp. (N/A); Latin Logistics, LLC (41-2187926); Nicaraguense de Aviación, Sociedad Anónima (Nica, S.A.) (N/A); Regional Express Américas S.A.S. (N/A); Ronair N.V. (N/A); Servicio Terrestre, Aereo y Rampa S.A. (N/A); Servicios Aeroportuarios Integrados SAI S.A.S. (92-4006439); Taca de Honduras, S.A. de C.V. (N/A); Taca de México, S.A. (N/A); Taca International Airlines S.A. (N/A); Taca S.A. (N/A); Tampa Cargo S.A.S. (N/A); Technical and Training Services, S.A. de C.V. (N/A).  The Debtors' principal offices are located at Avenida Calle 26 # 59 – 15 Bogotá, Colombia.

**WAIVINGCOMPLIANCE WITH SECTION 345 OF BANKRUPTCY CODE; (III) SCHEDULING FINAL HEARING; AND (IV) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Avianca Holdings S.A. and its affiliated debtors in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), as debtors and debtors-in-possession (collectively, the "Debtors"), respectfully represent as follows in support of this motion (the "Motion"):[2]

## RELIEF REQUESTED

1.     By this Motion, the Debtors seek (a) entry by this Court of interim and find orders, substantially in the forms annexed hereto as **Exhibit E** (the "Proposed Interim Order") and **Exhibit F** (the "Proposed Final Order"), pursuant to sections 105(a), 345, 363, and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code"), authorizing (i) the Debtors' continued use of the existing Cash Management System, Bank Accounts, and Business Forms (each as defined herein); (ii) the Debtors' continued performance of ordinary course Intercompany Transactions (as defined herein) and the grant of administrative expense status for Intercompany Claims (as defined herein); (iii) waiver or an extension of the time to comply with the investment and deposit restrictions imposed by section 345 of the Bankruptcy Code, and (iv) related relief, including authority for the Banks to continue to charge Service Fees (as defined below); and (b) scheduling a final hearing (the "Final Hearing") to consider entry of the Proposed Final Order, granting the relief provided in the Interim Order on a permanent basis.

## JURISDICTION

2.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration (as defined below).

3.     This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.     The bases for the relief requested herein are sections 105(a), 345, 363, and 364 of the Bankruptcy Code.

## STATUS OF THE CASE

5.     On the date hereof (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6.     Each Debtor is continuing to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.     No creditors' committee has yet been appointed in these cases.  No trustee or examiner has been appointed.

8.     The Debtors have filed a motion requesting joint administration of the Chapter 11 Cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules").

## BACKGROUND

9.     Avianca is the second-largest airline group in Latin America and the most important carrier in the Republic of Colombia and in the Republic of El Salvador.  It is the largest airline in the Republic of Colombia (the third largest Latin American economy), a code-share partner of United Airlines, and a member of the Star Alliance which, with 26 members, is the world's largest global airline alliance.  Established in 1919, Avianca has a 100-year legacy as a leading provider of air travel and cargo services in the Latin American market and around the globe.  Avianca is well respected throughout Latin America and maintains significant customer brand equity and market share in the regions it services.

3

10. The Debtors operate an extensive network of routes from their primary hubs in Bogotá and San Salvador (in addition to other focus markets) and offer passenger services on more than 5,350 weekly flights to more than 76 destinations in 27 countries. With approximately 18,900 employees and approximately $3.9 billion in annual revenues, the Debtors play a key role in the Latin American airline market.

11. Despite an effective debt reprofiling executed in the second half of 2019, a significant improvement in Avianca's liquidity position in early 2020, and the successful 2019 launch of the "Avianca 2021" transformation plan, the Debtors have been compelled to file these Chapter 11 Cases for one principal reason: the COVID-19 pandemic, which has affected the world's population and economies in ways that have never been experienced. The reduction in travel as a result of the virus, and the measures undertaken to combat the virus, including restrictions commercial flights and on travel, have had and will continue to have an adverse impact on the Debtors. As a result of the ongoing pandemic and its consequences, the Debtors are facing significantly reduced revenues from ticket sales and ancillary revenues, government prohibitions globally on international flights, substantial ongoing contractual obligations to their lessors, lenders and other creditors, and a near complete standstill of the global economy—all with significant continued impact and limited visibility as to the potential market recovery.

12. On March 20, 2020, the Republic of Colombia, consistent with what numerous other governments around the world have done, announced that it would close its airspace to address the spread of COVID-19. As a result of the restrictions imposed by the Colombian government, as well as similar measures in various other of the Debtors' primary markets, on March 24, 2020 the Debtors announced that they were suspending all scheduled passenger flights

from March 25, 2020 until at least the end of April 2020; this situation has now been extended and is ongoing, and no date has been established for restart of flights.

13.     Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Adrian Neuhauser in Support of Chapter 11 Petitions and First Day Motions* (the "*First Day Declaration*"), which is being filed contemporaneously herewith and is incorporated by reference herein.

## BACKGROUND RELEVANT TO MOTION

14.     To facilitate the efficient operation of their businesses, the Debtors and their non-debtor affiliates use an integrated, centralized cash management system (the "Cash Management System") to collect, transfer, and disburse funds generated by their operations.    The Cash Management System has several main components: (i) cash collection, including the collection of revenues generated in the ordinary course through ticket and other sales to customers; (ii) cash transfers among the Debtors and certain of their non-debtor affiliates;[3] and (iii) cash disbursements to fund the Debtors' business operations and related obligations.

### A.    Bank Accounts and Cash Management System

15.     The Cash Management System is integrated into the Debtors' business operations, with automatic and manual account actions occurring on a daily and weekly basis.    Any disruption of the Cash Management System—especially in light of the turmoil caused by the COVID-19 pandemic crisis—would be extremely detrimental to the Debtors' operations, as their businesses require prompt access to cash and accurate cash tracking.

---

[3] In the ordinary course of business, the Debtors pay certain of their pilots through three "employer companies," which are not themselves Debtor entities but take direction from and receive all of their funding from Debtor entities.  The Debtors also engage in transactions with non-Debtor LifeMiles Ltd. related to the Debtors' loyalty programs with their customers; however, most of these transactions settle on a non-cash basis.

16.    The Cash Management System facilitates cash monitoring, forecasting, and reporting and enables the Debtors and their non-debtor affiliates to maintain control over the administration of approximately 257 bank accounts (the "Bank Accounts") in Central America, North America, South America, Europe, and the Caribbean at a number of banks (collectively, the "Banks"), including the Banks listed on **Exhibit A**.  The Debtors use the Bank Accounts to organize and monitor cash flows across the Debtors' corporate enterprise, and to centralize procurement and general administrative and operating expenses.

17.    As part of their daily operations, the Debtors collect cash, checks, wire transfers, automated clearing house ("ACH") transfers, and credit and debit card payments from customers and certain other parties.  Each of the Debtors' operating airlines receives funds generated by or on account of that specific Debtor's operations either (i) directly via ACH, wire, money order, and check from third parties; or (ii) indirectly via intercompany transfers when Bank Account balances reach a certain threshold.

18.    Although each operating airline Debtor maintains a separate cash collection and disbursement system, the Cash Management System is an integrated, overarching system that is supervised by the Debtors' Treasury Department, which includes a Cash and Investment Department and a Cash Management Department (together, the "Cash Management Departments").  The Cash Management Departments maintain regular oversight over the Cash Management System, working to ensure that the larger corporate enterprise operates without interruption. The Cash Management Departments implement cash management controls to (a) correctly distribute available funds; (b) enable the appropriate funding of cash needs; and (c) enable the Debtors to timely perform their payment obligations. Additionally, the Cash

Management Departments regularly reconcile the Debtors' books and records to ensure that all transfers are accounted for properly.

19.     The Debtors use the Cash Management System to direct the flow of funds collected in the ordinary course of their operations to certain key bank accounts (the "Key Bank Accounts") maintained primarily by their airline operating entities. A list of the Key Bank Accounts is attached hereto as **Exhibit B**.  The Key Bank Accounts are principally located in the United States, Colombia, Panama, Costa Rica, Curacao, Ecuador, Guatemala, Honduras, Mexico, El Salvador, and Spain.  The Debtors regularly concentrate their cash assets and collections in the Key Bank Accounts, with the result that the Key Bank Accounts maintain the highest number of payment obligations and the highest availability of funds.

20.     To manage daily cash inflows and outflows, each of the Debtors maintains Bank Accounts that are funded as necessary, and make payments associated with operating activities, including wires, check issuances, and ACH transfers.  As needed, the Debtors transfer funds from the Key Bank Accounts to non-Key Banks Accounts to timely satisfy outstanding payment obligations.  The Debtors also maintain various savings accounts that are used to manage cash in advance of disbursement.

21.     On a weekly basis, in a joint meeting, the Treasury's Cash and Investment Department identifies the projected cash shortages or surpluses in each of the Key Bank Accounts, and the Cash Management Department identifies any projected shortages or surpluses in each of the non-Key Bank Accounts.  The Cash and Investment Department then identifies the set of transactions that needs to be carried out in order to achieve a proper distribution of the available cash.  Upon receipt of direction from the Cash and Investment Department, the Cash Management

Department transfers funds to the appropriate Bank Accounts to ensure that the Debtors' financial obligations are timely satisfied.

22.     As described herein, given the economic and operational scale of the Debtors' businesses in multiple countries, any disruption to the Cash Management System—especially in light of the turmoil caused by the COVID-19 crisis—would have an immediate adverse effect on the Debtors' businesses and operations to the detriment of their estates and stakeholders. Accordingly, to minimize the disruption caused by the filing of these Chapter 11 Cases and to maximize the value of the Debtors' estates, the Debtors request authority to continue to utilize their existing Cash Management System during the pendency of these cases.

**C.     Cash Investments and Policy**

23.     The Debtors' Cash Planning and Portfolio Investment Department (the "Investment Department") manages the Debtors' excess cash pursuant to a Cash Investment and Management policy (the "Investment Policy").  Funds not needed for disbursements or other operating requirements are invested in accordance with the Investment Policy.  The primary objective of the Investment Policy is the preservation of principal, diversification of counterparty risk, and maintenance of accessibility to funds.  Secondarily, the goal of the Investment Policy is to optimize returns without compromising safety and liquidity.

24.     The Debtors' cash cycle starts with collection, which may occur in different currencies.  On a weekly basis, after paying costs and expenses related to the Debtors' operations, the Investment Department analyzes whether the Debtors have any excess cash flow. If the Investment Department determines that excess funds are available, such excess funds are invested in accordance with the Investment Policy.

25.     Pursuant to the Investment Policy, the Debtors seek to concentrate funds in U.S. Dollars and will only invest in certain permitted investment instruments with authorized counterparties, including the following:[4]

| Financial Sector | Certificates of Deposit, Corporate Bonds, Commercial Paper, Fixed-Interest Accounts, Interest Bearing Accounts, Time Deposits, Demand Deposit Accounts, Over Night or Money Market, Mutual Funds, Automated Sweep Accounts, Investment Funds, Money Market Deposit Accounts; provided these are overseen by the Financial Superintendence of Columbia, or by the competent entity in the respective country of incorporation and/or operation. |
|---|---|
| Public Sector | U.S. Treasury Bills & Notes, U.S. Treasury Bonds, Government agency bonds or securities, Sovereign debt of countries with investment grade, TES, Yankees, TIDIS or similar instruments in other geographic locations; provided these securities are issued and guaranteed by the relevant national government, territorial public entities, or industrial and commercial state companies. |
| Goods and Services Sector | Auction Rate Certificates, Corporate Bonds, Commercial Paper; provided such investments are only in fixed-income securities issued through the public securities markets of the goods or services sector. |
| Local Funds | Ordinary Common Funds, Term Funds, and Securities Funds; provided such investments are only in fund entities belonging to financial groups that include a bank within their group structure. |

26.     The Investment Policy places appropriate safeguards on the approved investments. For example, the maximum limit to be allocated to a financial group is 35% of the total value of the Debtors' excess cash.  Thus, the Investment Policy reflects a disciplined and prudent strategy that permits the Debtors to balance the need to maximize returns on excess cash while ensuring that such cash is readily available for use in the Debtors' business operations.

---

[4]  Capitalized terms used in the table below but not otherwise defined in this Motion have the meanings ascribed to them in the Investment Policy.

D.    **Business Forms**

27.    In addition, in the ordinary course of their businesses, the Debtors use a variety of checks and other business forms, including purchase orders and invoices (collectively, the "Business Forms").  In particular, the Debtors, from time to time, issue a variety of checks on existing stock that cannot be easily altered.  To minimize expense to their estates and avoid confusion on the part of employees, customers and suppliers, the Debtors respectfully request that the Court authorize them to continue to use all correspondence and Business Forms, as such forms were in existence immediately prior to the Petition Date without reference to the Debtors' status as debtors-in-possession; provided, however, that, upon depletion of the Debtors' Business Forms stock, the Debtors will obtain new Business Forms reflecting their status as debtors-in-possession. Such authorization will enable the Debtors to avoid the expense and delay of ordering new Business Forms. Additionally, the Debtors will obtain a stamp that will indicate their status as debtors-in-possession on all Business Forms and will also immediately update their computer-generated checks to reflect the same.

## BASIS FOR RELIEF REQUESTED

A.    **The Court Should Authorize Continued
Use of Existing Bank Accounts**

28.    The *Operating Guidelines and Reporting Requirements for Debtors-in-Possession and Trustee* promulgated by the Office of the United States Trustee (the "Operating Guidelines") require that a chapter 11 debtor close its prepetition bank accounts and open new accounts.  This requirement is designed to (a) provide a clear line of demarcation between prepetition and postpetition transactions and operations; and (b) block the inadvertent payment of prepetition claims through the payment of checks drawn prior to the commencement of a debtor's case.  Doing so provides a clear line of demarcation between pre-petition and post-petition claims and payments

10

and helps protect against the inadvertent payment of pre-petition claims by preventing banks from honoring checks drawn before the petition date.  See In re Tolomeo, 537 B.R. 869, 875 (Bankr. N.D. Ill. 2015) (citing Operating Guidelines).

29.     The Debtors can achieve the goals of the Operating Guidelines without closing their existing accounts and opening new ones.  The Debtors will identify all prepetition checks and other forms of payment outstanding on the Petition Date and notify the appropriate Bank not to pay such checks or obligations. The systems employed by the Debtors and their Banks should ensure that prepetition obligations are not paid.

30.     Requiring the Debtors to close all Bank Accounts and open new debtor-in-possession accounts would not be in the best interests of the estates.  Such an exercise would—especially in light of the turmoil caused by the COVID-19 crisis—(i) be costly; (ii) disrupt the Debtors' ability to satisfy postpetition payables in a timely manner, potentially causing a loss of trade credit and customer confidence; (iii) interfere with the efficient management of the Debtors' cash resources; and (iv) distract the Debtors' managers at a time when the business requires their full attention.

31.     Courts in this District have routinely authorized corporate debtors to maintain their prepetition bank accounts, including in large chapter 11 cases involving airlines.  See, e.g., In re Republic Airways Holdings Inc., Case No. 16-10429 (SHL) (Bankr. S.D.N.Y. Mar. 24, 2016); In re AMR Corp., Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. Feb. 7, 2012); In re Northwest Airlines Corp., Case No. 05-17930 (ALG) (Bankr. S.D.N.Y. Oct. 7, 2005); In re Ditech Holding Corp., Case No. 19-10412 (JLG) (Bankr. S.D.N.Y. Apr. 30, 2019); In re Westinghouse Electric Co. LLC, Case No. 17-10751 (MEW) (Bankr. S.D.N.Y. June 9, 2017).

32.     A waiver of the bank-account-closing requirement in the Debtors' cases is necessary. Specifically, the Debtors request that the existing Bank Accounts be deemed debtor-in-possession accounts and that their maintenance and continued use, in the same manner and with the same account numbers, styles, and document forms (including checks) as during the prepetition period, be authorized, subject only to (a) designation of such accounts in the Debtors' books and records and by the affected financial institutions as debtor-in-possession accounts; and (b) a prohibition against honoring prepetition checks without specific authorization from this Court.  The Debtors reserve the right, however, to close some or all of the Bank Accounts and open new debtor-in-possession accounts.

33.     The Debtors will advise all Banks with whom they have disbursement accounts not to honor checks issued prior to the Petition Date, except as authorized by this Court.  By so advising the Banks, the Debtors will achieve the goals of the bank-account-closing requirement: (a) establishing a clear demarcation between prepetition and postpetition checks; and (b) blocking the inadvertent payment of prepetition checks without disrupting the Debtors' ongoing operations. The Debtors have filed several motions seeking authority to honor certain prepetition checks and, if those motions are granted, the Debtors will coordinate closely with the applicable Banks to ensure that only checks that have been authorized will be honored.

**B.      The Court Should Grant the Request for
          Authority to Use Existing Business Forms**

34.     By virtue of the nature and scope of the businesses in which the Debtors are engaged, and the numerous suppliers of goods and services and numerous other parties with whom the Debtors deal, it is imperative that the Debtors be permitted to continue to use the Business Forms without alteration or change.  Parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as debtors-in-possession due to the size of these Chapter 11 Cases and

the worldwide press.  Changing correspondence and Business Forms would be unnecessary and burdensome to the estates, as well as expensive and disruptive to the Debtors' business operations.

35.     Accordingly, the Debtors request that this Court authorize them to continue using their Business Forms postpetition without the legend "Debtor-in-Possession" or a so-called "debtor-in-possession number," as required by the Operating Guidelines.  As soon as practicable after the Petition Date, the Debtors will include "debtor-in-possession" on the checks they print electronically.   Upon depletion of the Debtors' Business Forms, the Debtors will obtain new Business Forms stock reflecting their status as debtors-in-possession.

36.     Courts in this District consistently allow debtors in large chapter 11 cases to use their prepetition Business Forms without the "debtors-in-possession" label, including in cases involving airlines.  See, e.g., In re Republic Airways Holdings Inc., Case No. 16-10429 (SHL) (Bankr. S.D.N.Y. Mar. 24, 2016); In re AMR Corp., Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. Feb. 7, 2012); In re Northwest Airlines Corp., Case No. 05-17930 (ALG) (Bankr. S.D.N.Y. Oct. 7, 2005); In re Ditech Holding Corp., Case No. 19-10412 (JLG) (Bankr. S.D.N.Y. Apr. 30, 2019); In re Westinghouse Electric Co. LLC, Case No. 17-10751 (MEW) (Bankr. S.D.N.Y. June 9, 2017).

**C.     The Court Should Approve  Debtors' Continued
        Use of the Cash Management System**

37.     The Cash Management System, or a variation thereof, has been employed by the Debtors for a number of years and constitutes an ordinary course, essential business practice.  The centralized Cash Management System is essential to the Debtors and beneficial to their estates and creditors because it enables the Debtors to reduce the administrative expenses involved in moving funds, to maintain accurate information regarding receipts, account balances and disbursements, to maintain an efficient process for the investment of cash, and to ensure compliance with the Debtors' accounting and disbursement control procedures.  These controls are especially important

here, given the significant volume of cash transactions managed through the Cash Management System.

38.     As a practical matter, due to the Debtors' corporate and financial structure, it would be extremely difficult and expensive to establish and maintain a separate cash management system for each Debtor and non-Debtor entity.  Requiring the Debtors to adopt new, segmented cash management systems or to extricate the Debtors from the Cash Management System, would be expensive, create unnecessary administrative burdens, and be extraordinarily disruptive to the operation of their global network.  Any such disruption would—especially in light of the turmoil caused by the COVID-19 crisis—have a severe and adverse impact upon the Debtors' reorganization efforts.

39.     An integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  In re Columbia Gas Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1992), aff'd in part and rev'd in part, 997 F.2d 1039 (3d Cir. 1993); see also In re US Airways, Inc., Case No. 04-13819 (Bankr. E.D. Va. Sept. 14, 2004).  As a result, courts have generally concluded that the requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient."  Columbia Gas, 997 F.2d at 1061; see also In re Southmark Corp., 49 F.3d 1111, 1114 (5th Cir. 1995) (cash management system allows debtor "to administer more efficiently and effectively its financial operations and assets").

40.     In other large and complex chapter 11 cases, such as these, courts in this District routinely allow the continued use of centralized cash management systems. See, e.g., In re Ditech Holding Corp., Case No. 19-10412 (JLG) (Bankr. S.D.N.Y. Apr. 30, 2019); In re Westinghouse Electric Co. LLC, Case No. 17-10751 (MEW) (Bankr. S.D.N.Y. June 9, 2017); In re Republic

Airways Holdings Inc., Case No. 16-10429 (SHL) (Bankr. S.D.N.Y. Mar. 24, 2016); In re

Relativity Fashion, LLC, Case No. 15-11989 (MEW) (Bankr. S.D.N.Y. July 30, 2015); In re

Inversiones Alsacia S.A., Case No. 14-12896 (MG) (Bankr. S.D.N.Y. Dec. 4, 2014); In re Sbarro

LLC, Case No. 14-10557 (MG) (Bankr. S.D.N.Y. Apr. 7, 2014); In re AMR Corp., Case No. 11-

15463 (SHL) (Bankr. S.D.N.Y. Feb. 7, 2012); In re Northwest Airlines Corp., Case No. 05-17930

(ALG) (Bankr. S.D.N.Y. Oct. 7, 2005).

41.     Consistent with the foregoing precedent, the Debtors seek authority to continue to

use their integrated Cash Management System, including the Debtors' continued ability to transfer

funds among themselves and their non-debtor affiliates.

**D.     The Court Should Authorize Administrative
Expense Priority for Intercompany Claims**

42.     The Cash Management System directs funds to each affiliate in accordance with its

needs (the "Intercompany Transactions").    From time-to-time, this may have the effect of

rendering some entities net lenders and some net borrowers, creating intercompany claims (the

"Intercompany Claims").    To resolve concerns related to the repayment of funds moved from a

Debtor to one or more of its affiliates, courts typically grant administrative expense priority to

postpetition Intercompany Claims.   See, e.g., In re Fairway Group Holdings Corp., Case No. 20-

10161 (JLG) (Bankr. S.D.N.Y. Jan. 27, 2020); In re Westinghouse Electric Co. LLC, Case No. 17-

10751 (MEW) (Bankr. S.D.N.Y. June 9, 2017); In re Republic Airways Holdings Inc., Case No.

16-10429 (SHL); In re Relativity Fashion, LLC, Case No. 15-11989 (MEW) (Bankr. S.D.N.Y. July

30, 2015).  Similar relief is warranted here.

43.     To ensure each Debtor will not fund, at the expense of its creditors, obligations of

another Debtor, the Debtors propose that, pursuant to sections 503(b)(1) and 364(b) of the

Bankruptcy Code, all Intercompany Claims arising on or after the Petition Date as a result of

Intercompany Transactions through the Cash Management System be accorded administrative expense status. As a result, each entity utilizing funds in the system will continue to bear its own obligations with respect to the underlying transactions.[5]

44.    The Debtors do not seek to grant administrative expense priority on account of postpetition remittances of cash from one Debtor to another Debtor.  To protect their cash, the Debtors made several prepetition cash transfers from one Debtor bank account to another (and maintained detailed records of such transfers) because certain of their banking institutions posed a risk of setoff and/or administrative holds.  Thus, to the extent the Debtors remedially transfer such cash back to the original possessor Debtor postpetition, no Intercompany Claims should arise therefrom.

### E.    The Court Should Approve the Payment of Certain Prepetition Obligations Related to the Cash Management System

45.    The Debtors incur periodic service charges and other fees to the Banks relating to the maintenance of the Cash Management System (the "Service Charges").  The Debtors estimate that approximately $91,000 in monthly Service Charges are due and owing as of the Petition Date.  Payment of the prepetition Service Charges is in the best interests of the Debtors and all parties in interest in these Chapter 11 Cases, as it will prevent any disruption to the Cash Management System.  Furthermore, because the Banks likely have setoff rights for the Service Charges, payment of prepetition Service Charges should not prejudice the rights of the Debtors' unsecured creditors.

46.    Thus,  in order to  maintain the integrity of their Cash Management System, the Debtors respectfully request authority to pay the full amount of the Service Fees, including fees

---

[5]

for prepetition transactions that are charged postpetition, and to continue to pay the Service Fees

in the ordinary course of business postpetition.

F. **The Court Should Waive the Investment and Deposit Restrictions**
**Imposed by Section 345 of the Bankruptcy Code and the**
**U.S. Trustee Guidelines Regarding Authorized Depositories**

47.    Section 345 of the Bankruptcy Code governs a debtor's cash deposits during a

chapter 11 case and authorizes deposits of money as "will yield the maximum reasonable net return

on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a).

For deposits that are not "insured or guaranteed by the United States or by a department, agency,

or instrumentality of the United States or backed by the full faith and credit of the United States,"

section 345(b) requires the trustee to obtain from the entity with which the money is deposited a

bond in favor of the United States and secured by the undertaking of an adequate corporate surety,

unless the Court for "cause" orders otherwise.  11 U.S.C. § 345(b)(2).

48.    To assist debtors in complying with section 345, the U.S. Trustee has promulgated

provisions relevant to maintenance of bank accounts in the Operating Guidelines, as well as a list

of "Authorized Depositories," at which debtors may maintain bank accounts in presumed

compliance with section 345.  The list of Authorized Depositories issued by the U.S. Trustee Office

in the Southern District of New York (Region 2) is annexed hereto as **Exhibit C.**

49.    However, as set forth above and even in absence of funds on deposit at the

Authorized Depositories, it is within the Court's discretion to waive or modify the requirements

of section 345(b) of the Bankruptcy Code for "cause."  See 11 U.S.C. § 345(b); In re Ditech

Holding Corp., 605 B.R. 10, 17 (Bankr. S.D.N.Y. 2019) (explaining that courts are provided with

"flexibility in addressing the challenges of strict compliance with" section 345, and that a court

will consider the "totality of the circumstances" in considering whether the waive the requirements

of that provision); In re Serv. Merch. Co., 240 B.R. 894, 896-97 (Bankr. M.D. Tenn. 1999)

(concluding that "cause" existed to waive requirements of section 345 because debtors were "large, sophisticated [companies] with a complex cash management system," and the benefit of waiving the requirements of section 345(b) far outweighed any potential harm to the estate, and "would 'needlessly handcuff' [the] debtors' reorganization efforts").

50.     The Court's ability to excuse strict performance of the deposit and investment requirements of section 345(b) of the Bankruptcy Code "for cause" arises from the 1994 amendments to the Bankruptcy Code. The legislative history of that amendment provides:

> Section 345 of the Code governs investments of funds of bankruptcy estates. The purpose is to make sure that funds of a bankrupt that are obliged to creditors are invested prudently and safely with the eventual goal of being able to satisfy all claims against the bankruptcy estate.  Under current law, all investments are required to be FDIC insured, collateralized or bonded. While this requirement is wise in the case of smaller debtors with limited funds that cannot afford a risky investment to be lost, it can work to needlessly handcuff larger, more sophisticated debtors. This section would amend the Code to allow the courts to approve investments other than those permitted by Section 345(b) for just cause, thereby overruling In re Columbia Gas Systems, Inc., 33 F.3d 294 (3d Cir. 1994).

H.R. Rep. 103–834, 103rd Cong., 2nd Sess. 224 (Oct. 4, 1994); 140 Cong. Rec. H10767 (Oct. 4, 1994; In re Service Merch. Co., 240 B.R. at 896 (noting that in Columbia Gas, "the Third Circuit Court of Appeals found that the pre-amendment provisions of § 345(b) were mandatory and could not be modified or waived by the court").

51.     In determining whether the "for cause" standard has been satisfied, the Court should consider a "totality of the circumstances" by utilizing the following factors:

(a)     the sophistication of the debtor's business;

(b)     the size of the debtor's business operations;

(c)     the amount of the investments involved;

(d)     the bank ratings (Moody's and S&P) of the financial institutions where the debtor in possession funds are held;

(e)     the complexity of the case;

(f)     the safeguards in place within the debtor's own business of insuring the safety of the funds;

(g)     the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

(h)     the benefit to the debtor;

(i)     the harm, if any, to the estate and

(j)     the reasonableness of the debtor's request for relief from section 345(b) requirements in light of the overall circumstances of the case.

In re Serv. Merch. Co., 240 B.R. at 896.

52.     Here, "cause" exists to waive the requirements of section 345(b) of the Bankruptcy Code because (i) the vast majority of Debtors' banks are highly rated, financially stable institutions subject to supervision by federal banking regulators, (ii) the Debtors retain the right to remove funds held at the banks and establish new bank accounts as needed, (iii) the cost associated with satisfying the requirements of section 345 is burdensome, and (iv) the process of satisfying those requirements would lead to needless inefficiencies in the management of the Debtors' business. Moreover, a bond secured by the undertaking of a corporate surety would be prohibitively expensive, if such a bond were available at all.  Requiring the Debtors to change their Bank Accounts and other components of the Cash Management System would—especially in light of the turmoil and uncertainty caused by the COVID-19 crisis—result in a significant disruption of the Debtors' businesses, which rely upon the Cash Management System for their business operations.

53.     A substantial amount of the Debtors' cash is maintained in Bank Accounts at Citibank, N.A., J.P. Morgan Chase Bank N.A., and Bank of America N.A.—domestic financial

institutions that are Authorized Depositories.  However, the Debtors do have significant amounts

of cash on deposit in Bank Accounts that are not maintained at Authorized Depositories or

otherwise at institutions that are "insured or guaranteed by the United States," including numerous

foreign banks (each, a "Foreign Bank").  Such circumstances notwithstanding, the financial

institutions holding such Bank Accounts, as set forth on **Exhibit D** hereto, are financially stable

institutions based upon, among other considerations, their Moody's, Fitch and S&P long-term

debt/deposits ratings.  Indeed, each is an internationally recognized and highly-rated financial

institution, including the likes of Banco de Bogotá, Banco de America Central, Davivienda, La

Caixa, Banamex, Itau Bank, and Banco Santander, all of which are considered in their home

jurisdictions to be in the same rank as the U.S. institutions on the Authorized Depository list.

54.    Because the accounts in Foreign Banks are vital to the Cash Management System,

requiring the Debtors to transfer these funds to other Banks would be crippling to the Debtors'

operations, which must seamlessly operate across multiple jurisdictions.  Indeed, given that the

substantial majority of the Debtors' employees are based in locations outside of the United States

(as well as the majority of the Debtors' operations and vendors), it is absolutely critical for the

Debtors to maintain the Foreign Banks in the jurisdictions in which they operate in order to, among

other things, pay their employees and vendors in local currencies.  Additionally, in certain

instances, the Debtors are required by their aeronautical regulators to maintain a bank account in

applicable jurisdictions.

55.    In light of all the foregoing, there is no reason that the Debtors should be prevented

from using any of the Cash Management Banks on section 345(b) grounds.  Indeed, courts in this

District have granted requests for approval of the continued use of deposit guidelines that did not

strictly comply with section 345 of the Bankruptcy Code, but that, as here, were nevertheless safe

and prudent.  See, e.g., In re SunEdison, Inc., Case No. 16-10992 (SMB) (July 8, 2016); In re Excel Mar. Carriers Ltd., Case No. 13-23060 (RDD) (Bankr. S.D.N.Y. Dec. 9, 2013); In The Great Atl. & Pac. Tea Co., Inc., Case No. 10-24549 (RDD) (Bankr. S.D.N.Y. Feb. 7, 2011).

56.     Even more relevantly, courts in this District have authorized similarly situated debtors to use their existing depository accounts, even when such accounts have been located at Foreign Banks—most notably in the Debtors' prior chapter 11 cases.  See In re Aerovias, Nacionales de Colombia S.A., Case No. 03-11678 (ALG) (Bankr. S.D.N.Y. June 4, 2003) (waiving full compliance as to section 345 for foreign bank accounts in connection with Avianca's 2003 chapter 11 filing in this District); see also In re Maxcom USA Telecom, Inc., Case No. 19-23489- (RDD) (Bankr. S.D.N.Y. Sep. 27, 2019) (order waiving debtors' obligation to comply with section 345 and allowing maintenance of foreign bank accounts); In re Avaya Inc., Case No. 17-10089 (SMB) (Bankr. S.D.N.Y. Mar. 31, 2017) [Docket No. 341] (order waiving section 345 compliance and allowing maintenance of eight foreign bank accounts); In re Inversiones Alsacia S.A., Case No. 14-12896 (MG) (Bankr. S.D.N.Y. Dec. 4, 2014) [Docket No. 99] (order permitting continued maintenance of foreign bank accounts notwithstanding section 345); In re Eagle Bulk Shipping, Case No. 14-12303 (SHL) (Bankr. S.D.N.Y. Sept. 19, 2014) [Docket No. 100] (order waiving section 345 investment guidelines and allowing maintenance of 69 foreign bank accounts); In re Lear Corp., No. 09-14326 (ALG) (Bankr. S.D.N.Y. July 31, 2009) [Docket No. 255] (order allowing maintenance of 625 foreign bank accounts); In re CIT Grp. Inc., No. 09-16565 (ALG) (Bankr. S.D.N.Y. Nov. 24, 2009) [Docket No. 132] (order allowing maintenance of at least nine foreign bank accounts).

57.     Based on the foregoing precedents, this Court should do the same and find that cause exists to waive strict compliance with the requirements of section 345(b) and the Operating Guidelines.

58.     To the extent that the Court does not waive the requirements of section 345(b), the Debtors request that the Court grant an extension of the Debtors' time to comply with section 345(b) of the Bankruptcy Code for forty-five (45) days (or such later time as may be agreed to by the U.S. Trustee or as otherwise approved by the Court).  During such time, the Debtors propose to engage in discussions with the U.S. Trustee to determine what modifications to those Bank Accounts, if any, are necessary under the circumstances.

## RESERVATION OF RIGHTS

59.     Nothing contained herein is intended to be or shall be construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's right to dispute any claim; or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be , and should not be construed as, an admission to the validity of any claim or waiver of the Debtors' rights to dispute such claim subsequently.

## REQUEST FOR WAIVER OF STAY

60.     Bankruptcy Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001 . . . .

Fed. R. Bankr. P. 6003.

61.     As described herein, the Cash Management System is critical to the Debtors'
ongoing operations. Modifications of and disruptions to the Cash Management System—
especially in light of the turmoil caused by the COVID-19 crisis—likely would cause payment
delays and impair the Debtors' operations. Additionally, changes to the Cash Management System
could impair the Debtors' ability to obtain important financial information in a timely manner.
Ultimately, these outcomes would cause a diminution in the value of the Debtors' estates, which
would have a negative impact on all parties in interest. Accordingly, the Debtors submit that the
relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore,
Bankruptcy Rule 6003(b) is satisfied.

62.     The Debtors further seek a waiver of any stay of the effectiveness of an order
approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use,
sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after
entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth
above, the relief requested herein is essential to prevent immediate and irreparable damage to the
Debtors' operations, going concern value and their efforts to pursue a resolution to these
Chapter 11 Cases.

63.     Accordingly, the relief requested herein is appropriate under the circumstances and
under Bankruptcy Rules 6003 and 6004(h).

## NOTICE

64.     Notice of this Motion has been given to the following parties or, in lieu thereof, to
their counsel, if known: (a) the Office of the United States Trustee for the Southern District of
New York; (b) the Debtors' five (5) largest prepetition secured lenders (on a consolidated basis);
(c) creditors holding the forty (40) largest unsecured claims (on a consolidated basis); (d) the
Internal Revenue Service; (e)  the Securities and Exchange Commission; (f) the Federal Aviation

Administration; (g) those parties requesting notice pursuant to Bankruptcy Rule 2002; and (h) the Banks at which the Debtors maintain the Bank Accounts.

65.     In light of the nature of the relief requested, the Debtors submit that no further notice need be given.

**NO PRIOR REQUEST**

66.     No prior request for the relief sought in this motion has been made to this or to any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the forms of the Proposed Interim Order and the Proposed Final Order, granting the relief requested herein and granting such other and further relief as is just and proper.

Dated:  New York, New York           MILBANK LLP
        May 10, 2020

                                     /s/ Evan R. Fleck
                                     Dennis F. Dunne
                                     Evan R. Fleck
                                     MILBANK LLP
                                     55 Hudson Yards
                                     New York, New York 10001
                                     Telephone:  (212) 530-5000
                                     Facsimile:  (212) 530-5219

                                     - and -

                                     Gregory A. Bray
                                     MILBANK LLP
                                     2029 Century Park East, 33rd Floor
                                     Los Angeles, CA 90067
                                     Telephone:  (424) 386-4000
                                     Facsimile:  (213) 629-5063

                                     *Proposed Counsel for Debtors and*
                                     *Debtors-in-Possession*

## EXHIBIT A

### List of Bank Accounts

| COUNTRY | ENTITY | BANK | LAST 4 DIGITS OF ACCOUNT # | CURRENCY |
|---|---|---|---|---|
| Argentina | AEROVIAS DEL CONTINENTE AMERICANO SA | CITIBANK | 4028 | USD |
| Argentina | AEROVIAS DEL CONTINENTE AMERICANO SA | CITIBANK | 4017 | ARS |
| Argentina | AVIANCA COSTA RICA | CITIBANK | 4019 | ARS |
| Argentina | TAMPA CARGO S.A. | CITIBANK | 3014 | ARS |
| Aruba | AEROVIAS DEL CONTINENTE AMERICANO SA | ARUBA BANK N.V | 1838 | AWG |
| Barbados | AEROVIAS DEL CONTINENTE AMERICANO SA | OCCIDENTAL BANK BARBADOS | 689 | EUR |
| Belize | TACA INTERNATIONAL AIRLINES, S.A. | THE BELIZE BANK | 0002 | BZD |
| Belize | TACA INTERNATIONAL AIRLINES, S.A. | THE BELIZE BANK | 0001 | BZD |
| Bolivia | AEROVIAS DEL CONTINENTE AMERICANO SA | MERCANTIL SANTA CRUZ | 4897 | USD |
| Bolivia | AEROVIAS DEL CONTINENTE AMERICANO SA | MERCANTIL SANTA CRUZ | 2424 | BOB |
| Bolivia | AVIANCA ECUADOR | MERCANTIL SANTA CRUZ | 1293 | BOB |
| Bolivia | AVIANCA ECUADOR | MERCANTIL SANTA CRUZ | 4275 | USD |
| Brazil | AEROVIAS DEL CONTINENTE AMERICANO SA | CITIBANK | 3014 | BRL |
| Brazil | AVIANCA COSTA RICA | CITIBANK | 1747/9026 | BRL |
| Brazil | AVIANCA COSTA RICA | ITAU | `0588 | BRL |
| Brazil | AEROVIAS DEL CONTINENTE AMERICANO SA | CITIBANK | 3022 | BRL |
| Brazil | AEROVIAS DEL CONTINENTE AMERICANO SA | ITAU | 6996 | BRL |
| Brazil | TAMPA CARGO S.A. | CITIBANK | 5670 | BRL |
| Brazil | AVIANCA COSTA RICA | CITIBANK | 3852/9018 | BRL |
| Brazil | TAMPA CARGO S.A. | ITAU | 4333 | BRL |
| Canada | AVIANCA COSTA RICA | JP MORGAN CHASE | 0631 | CAD |
| Canada | AVIANCA INC | JP MORGAN CHASE | 805 | CAD |
| Canada | AMERICA CENTRAL CORP | JP MORGAN CHASE | 0630 | CAD |
| Canada | AMERICA CENTRAL CORP CANADA | JP MORGAN CHASE | 0624 | CAD |
| Chile | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO DE CHILE | 7503 | USD |
| Chile | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO SANTANDER | 5297 | USD |
| Chile | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO DE CHILE | 7007 | CLP |
| Chile | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO SANTANDER | 3772 | CLP |
| Chile | TAMPA CARGO S.A. | BANCO SANTANDER | 2720 | USD |

| COUNTRY | ENTITY | BANK | LAST 4 DIGITS OF ACCOUNT # | CURRENCY |
|---------|--------|------|---------------------------|----------|
| Chile | TAMPA CARGO S.A. | BANCO SANTANDER | 1214 | CLP |
| Chile | AVIANCA COSTA RICA | BANCO SANTANDER | 3028 | CLP |
| Colombia | TACA INTERNATIONAL AIRLINES, S.A. | DAVIVIENDA | 8541 | COP |
| Colombia | AVIANCA ECUADOR | DAVIVIENDA | 6528 | COP |
| Colombia | AVIATECA, S.A. | DAVIVIENDA | 5909 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | COLPATRIA | 6092 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | DAVIVIENDA | 1162 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | DAVIVIENDA | 1942 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO DE OCCIDENTE | 2931 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | DAVIVIENDA | 9384 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | ITAU | 0059 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | DAVIVIENDA | 1204 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | CITIBANK | 1019 | COP |
| Colombia | TAMPA CARGO S.A. | COLPATRIA | 6490 | COP |
| Colombia | TAMPA CARGO S.A. | DAVIVIENDA | 1632 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | ITAU | 4982 | USD |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | DAVIVIENDA | 8603 | COP |
| Colombia | AVIANCA COSTA RICA | DAVIVIENDA | 5000 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO DE BOGOTÁ | 3829 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | COLPATRIA | 2283 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO DE BOGOTÁ | 7564 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCOLOMBIA | 7708 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCOLOMBIA | 1710 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO DE BOGOTÁ | 0554 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO DE BOGOTÁ | 1562 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | COLPATRIA | 6439 | COP |
| Colombia | AVIANCA HOLDINGS S.A. | DAVIVIENDA | 8540 | COP |
| Colombia | LATIN AIRWAYS CORP | DAVIVIENDA | 7336 | COP |
| Colombia | Regional Express Américas S.A.S. | BANCO DE BOGOTÁ | 4418 | COP |
| Colombia | Regional Express Américas S.A.S. | DAVIVIENDA | 1601 | COP |
| Colombia | SAI | BANCOLOMBIA | 2293 | COP |
| Colombia | SAI | BANCOLOMBIA | 1039 | COP |
| Colombia | SAI | BANCOLOMBIA | 2868 | COP |
| Colombia | SAI | DAVIVIENDA | 9655 | COP |

| COUNTRY | ENTITY | BANK | LAST 4 DIGITS OF ACCOUNT # | CURRENCY |
|---|---|---|---|---|
| Colombia | SAI | BANCO DE BOGOTÁ | 3147 | COP |
| Colombia | SAI | BANCO DE BOGOTÁ | 4722 | COP |
| Colombia | SAI | BANCO DE BOGOTÁ | 2339 | COP |
| Colombia | SAI | BANCO CAJA SOCIAL | 0948 | COP |
| Costa Rica | TACA INTERNATIONAL AIRLINES, S.A. | BANCO DE AMERICA CENTRAL | 8269 | CRC |
| Costa Rica | TACA INTERNATIONAL AIRLINES, S.A. | BANCO DE AMERICA CENTRAL | 8277 | USD |
| Costa Rica | AVIANCA COSTA RICA | BANCO DE AMERICA CENTRAL | 8210 | CRC |
| Costa Rica | AVIANCA COSTA RICA | BANCO DE AMERICA CENTRAL | 8251 | USD |
| Costa Rica | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO DE AMERICA CENTRAL | 3728 | USD |
| Costa Rica | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO DE AMERICA CENTRAL | 3710 | CRC |
| Costa Rica | SERVICIO TRANSPORTE AEREO Y RAMPA S.A. | BANCO DE AMERICA CENTRAL | 9366 | USD |
| Costa Rica | SERVICIO TRANSPORTE AEREO Y RAMPA S.A. | BANCO DE AMERICA CENTRAL | 9358 | CRC |
| Cuba | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO FINANCIERO INTERNACIONAL | 2430 | USD |
| Cuba | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO FINANCIERO INTERNACIONAL | 2535 | USD |
| Curazao | RONAIR N.V. | CITCO BANKING CORPORATION N.V. | 7200 | USD |
| Curazao | AEROVIAS DEL CONTINENTE AMERICANO SA | MADURO & CURIES BANK | 9907 | ANG |
| Dominican Republic | AVIANCA COSTA RICA | BANCO POPULAR DOMINICANO | 8255 | USD |
| Dominican Republic | AVIANCA COSTA RICA | CITIBANK | 2008 | USD |
| Dominican Republic | AVIANCA COSTA RICA | CITIBANK | 2006 | DOP |
| Dominican Republic | AEROVIAS DEL CONTINENTE AMERICANO SA | CITIBANK | 0005 | USD |
| Dominican Republic | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO BHD LEÓN | 0019 | USD |
| Dominican Republic | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO BHD LEÓN | 0027 | DOP |
| Dominican Republic | AVIANCA COSTA RICA | BANCO POPULAR DOMINICANO | 8214 | DOP |
| Dominican Republic | AEROVIAS DEL CONTINENTE AMERICANO SA | CITIBANK | 0003 | DOP |
| Ecuador | AVIANCA ECUADOR | BANCO DEL PACIFICO | 1609 | USD |
| Ecuador | TACA INTERNATIONAL AIRLINES, S.A. | PRODUBANCO | 08-2 | USD |
| Ecuador | AVIANCA ECUADOR | BANCO PICHINCHA | 1904 | USD |
| Ecuador | TAMPA CARGO S.A. | PRODUBANCO | 6351 | USD |
| Ecuador | AVIANCA COSTA RICA | PRODUBANCO | 17-2 | USD |
| Ecuador | AEROVIAS DEL CONTINENTE AMERICANO SA | PRODUBANCO | 6256 | USD |
| Ecuador | AEROVIAS DEL CONTINENTE AMERICANO SA | CITIBANK | 4015 | USD |

| COUNTRY | ENTITY | BANK | LAST 4 DIGITS OF ACCOUNT # | CURRENCY |
|---|---|---|---|---|
| Ecuador | AVIANCA ECUADOR | PRODUBANCO | 9061 | USD |
| Ecuador | AVIANCA ECUADOR | CITIBANK | 5255 | USD |
| El Salvador | TECHNICAL AND TRAINING SERVICE S.A. DE C.V. | BANCO CUSCATLAN | 9940 | USD |
| El Salvador | TECHNICAL AND TRAINING SERVICE S.A. DE C.V. | BANCO AGRICOLA | 7022 | USD |
| El Salvador | PILOTASA | BANCO CUSCATLAN | 1715 | USD |
| El Salvador | PILOTASA | BANCO AGRICOLA | 80-7 | USD |
| El Salvador | PILOTASA | BANCO AGRICOLA | 8376 | USD |
| El Salvador | TECHNICAL AND TRAINING SERVICE S.A. DE C.V. | BANCO DE AMERICA CENTRAL | 0875 | USD |
| Germany | AEROVIAS DEL CONTINENTE AMERICANO SA | BNP PARIBAS | 0018 | EUR |
| Guatemala | AVIATECA, S.A. | BANCO DE AMERICA CENTRAL | 9808 | USD |
| Guatemala | Isleña de Inversiones, S.A. de C.V. | BANCO DE AMERICA CENTRAL | 9824 | USD |
| Guatemala | TAMPA CARGO S.A. | BANCO DE AMERICA CENTRAL | 5704 | GTQ |
| Guatemala | AVIANCA COSTA RICA | BANCO DE AMERICA CENTRAL | 9840 | USD |
| Guatemala | Isleña de Inversiones, S.A. de C.V. | BANCO DE AMERICA CENTRAL | 9816 | GTQ |
| Guatemala | AVIANCA COSTA RICA | BANCO DE AMERICA CENTRAL | 9832 | GTQ |
| Guatemala | AVIATECA, S.A. | BANCO DE AMERICA CENTRAL | 9790 | GTQ |
| Guatemala | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO DE AMERICA CENTRAL | 1120 | USD |
| Guatemala | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO DE AMERICA CENTRAL | 1039 | GTQ |
| Guatemala | TACA INTERNATIONAL AIRLINES, S.A. | BANCO DE AMERICA CENTRAL | 9865 | USD |
| Guatemala | TACA INTERNATIONAL AIRLINES, S.A. | BANCO DE AMERICA CENTRAL | 9857 | GTQ |
| Guatemala | PITASA | BANCO DE AMERICA CENTRAL | 5301 | GTQ |
| Guatemala | PITASA | BANCO DE AMERICA CENTRAL | 5319 | USD |
| Guatemala | AVIASERVICIOS | BANCO DE AMERICA CENTRAL | 9980 | USD |
| Guatemala | AVIASERVICIOS | BANCO DE AMERICA CENTRAL | 9972 | GTQ |
| Honduras | Isleña de Inversiones, S.A. de C.V. | BANCO DE AMERICA CENTRAL | 2041 | HNL |
| Honduras | Isleña de Inversiones, S.A. de C.V. | BANCO DE AMERICA CENTRAL | 2051 | USD |
| Honduras | TACA DE HONDURAS | BANCO DE AMERICA CENTRAL | 2071 | USD |
| Honduras | AVIANCA COSTA RICA | BANCO DE AMERICA CENTRAL | 2031 | HNL |
| Honduras | AVIANCA COSTA RICA | LAFISE | 0031 | USD |
| Honduras | AVIANCA COSTA RICA | BANCO DE AMERICA CENTRAL | 2061 | USD |

| COUNTRY | ENTITY | BANK | LAST 4 DIGITS OF ACCOUNT # | CURRENCY |
|---------|--------|------|---------------------------|----------|
| Honduras | TACA DE HONDURAS | BANCO DE AMERICA CENTRAL | 2021 | HNL |
| Honduras | Isleña de Inversiones, S.A. de C.V. | LAFISE | 0045 | USD |
| Honduras | TACA INTERNATIONAL AIRLINES, S.A. | LAFISE | 0022 | HNL |
| Honduras | TACA INTERNATIONAL AIRLINES, S.A. | BANCO DE AMERICA CENTRAL | 2001 | HNL |
| Honduras | TACA INTERNATIONAL AIRLINES, S.A. | LAFISE | 0030 | USD |
| Honduras | TACA INTERNATIONAL AIRLINES, S.A. | BANCO DE AMERICA CENTRAL | 2081 | USD |
| Mexico | Aero Transporte de Carga Union, S.A. de C.V. | BANCO SANTANDER | 7517 | MXN |
| Mexico | TAMPA CARGO S.A. | BANAMEX | 3439 | USD |
| Mexico | TAMPA CARGO S.A. | BANAMEX | 4365 | MXN |
| Mexico | Aero Transporte de Carga Union, S.A. de C.V. | BANAMEX | 2313 | USD |
| Mexico | Aero Transporte de Carga Union, S.A. de C.V. | BANCO SANTANDER | 2114 | USD |
| Mexico | Aero Transporte de Carga Union, S.A. de C.V. | BANAMEX | 1739 | MXN |
| Mexico | AVIANCA COSTA RICA | BANAMEX | 9508 | USD |
| Mexico | AVIANCA COSTA RICA | BANAMEX | 9001 | MXN |
| Mexico | AEROVIAS DEL CONTINENTE AMERICANO SA | BANAMEX | 0519 | USD |
| Mexico | AEROVIAS DEL CONTINENTE AMERICANO SA | BANAMEX | 0004 | MXN |
| Mexico | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO SANTANDER | 5329 | MXN |
| Mexico | TACA INTERNATIONAL AIRLINES, S.A. | BANAMEX | 4009 | MXN |
| Mexico | TACA INTERNATIONAL AIRLINES, S.A. | BANAMEX | 4505 | USD |
| Mexico | TACA INTERNATIONAL AIRLINES, S.A. | BANCO SANTANDER | 9536 | MXN |
| Mexico | GRUPO TACA MEXICO | CITIBANK | 5005 | MXN |
| Nicaragua | AVIANCA COSTA RICA | LAFISE | 1341 | USD |
| Nicaragua | AVIANCA COSTA RICA | BANCO DE AMERICA CENTRAL | 8605 | USD |
| Nicaragua | TACA INTERNATIONAL AIRLINES, S.A. | LAFISE | 2866 | USD |
| Nicaragua | TACA INTERNATIONAL AIRLINES, S.A. | BANCO DE AMERICA CENTRAL | 8423 | USD |
| Nicaragua | NICARAGUENSE DE AVIACION S.A. | BANCO DE AMERICA CENTRAL | 3373 | USD |
| Nicaragua | NICARAGUENSE DE AVIACION S.A. | BANCO DE AMERICA CENTRAL | 3472 | NIO |
| Panama | AVIANCA HOLDINGS S.A. | DAVIVIENDA PANAMA | 0415 | USD |
| Panama | AVIANCA LEASING LLC | DAVIVIENDA PANAMA | 1383 | USD |
| Panama | GRUPO TACA HOLDING | DAVIVIENDA PANAMA | 0462 | USD |
| Panama | TACA S.A. | DAVIVIENDA PANAMA | 0466 | USD |
| Panama | LATIN AIRWAYS CORP | DAVIVIENDA PANAMA | 0750 | USD |
| Panama | TAMPA CARGO S.A. | DAVIVIENDA PANAMA | 0865 | USD |

| COUNTRY | ENTITY | BANK | LAST 4 DIGITS OF ACCOUNT # | CURRENCY |
|---|---|---|---|---|
| Panama | TAMPA CARGO S.A. | BANCO DE AMERICA CENTRAL | 9678 | USD |
| Panama | AVIANCA COSTA RICA | CITIBANK | 9012 | USD |
| Panama | AVIANCA COSTA RICA | BANCO DE AMERICA CENTRAL | 9686 | USD |
| Panama | AEROVIAS DEL CONTINENTE AMERICANO SA | LAFISE | 4300 | USD |
| Panama | AEROVIAS DEL CONTINENTE AMERICANO SA | DAVIVIENDA PANAMA | 0853 | USD |
| Panama | AEROVIAS DEL CONTINENTE AMERICANO SA | CITIBANK | 2013 | USD |
| Panama | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO DE AMERICA CENTRAL | 0486 | USD |
| Panama | TACA INTERNATIONAL AIRLINES, S.A. | CITIBANK | 8024 | USD |
| Panama | TACA INTERNATIONAL AIRLINES, S.A. | BANCO DE AMERICA CENTRAL | 2366 | USD |
| Paraguay | TAMPA CARGO S.A. | BANCO ITAU PARAGUAY S.A. | 9293/6 | PYG |
| Paraguay | TAMPA CARGO S.A. | BANCO ITAU PARAGUAY S.A. | 1216/3 | USD |
| Peru | AVIANCA ECUADOR | BANCO DE CREDITO DEL PERU | 9189 | USD |
| Peru | AVIANCA ECUADOR | BANCO DE LA NACION DEL PERU | 4203 | PEN |
| Peru | TAMPA CARGO S.A. | BANCO DE CREDITO DEL PERU | 2115 | USD |
| Peru | TAMPA CARGO S.A. | BANCO DE LA NACION DEL PERU | 2597 | PEN |
| Peru | TAMPA CARGO S.A. | BANCO DE CREDITO DEL PERU | 4001 | PEN |
| Peru | AVIANCA ECUADOR | BANCO DE CREDITO DEL PERU | 6086 | PEN |
| Peru | AVIANCA COSTA RICA | BANCO DE LA NACION DEL PERU | 6972 | PEN |
| Peru | AVIANCA COSTA RICA | BANCO DE CREDITO DEL PERU | 4128 | USD |
| Peru | AVIANCA COSTA RICA | BANCO DE CREDITO DEL PERU | 1005 | PEN |
| Peru | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO DE CREDITO DEL PERU | 1172 | USD |
| Peru | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO DE LA NACION DEL PERU | 9734 | PEN |
| Peru | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO DE CREDITO DEL PERU | 5033 | PEN |
| Peru | TACA INTERNATIONAL AIRLINES, S.A. | BANCO DE CREDITO DEL PERU | 6060 | PEN |
| Peru | AVIANCA HOLDINGS S.A. | BANCO DE CREDITO DEL PERU | 8008 | PEN |
| Peru | AVIANCA HOLDINGS S.A. | BANCO DE CREDITO DEL PERU | 7160 | USD |
| Puerto Rico | AEROVIAS DEL CONTINENTE AMERICANO SA | CITIBANK | 8013 | USD |
| Puerto Rico | Avianca Holdings S.A. | WTC INTERNATIONAL BANK CORPORATION | 7047 | USD |

| COUNTRY | ENTITY | BANK | LAST 4 DIGITS OF ACCOUNT # | CURRENCY |
|---|---|---|---|---|
| Puerto Rico | Aerovías del Continente Americano S.A. Avianca -1 | WTC INTERNATIONAL BANK CORPORATION | 7048 | USD |
| Puerto Rico | Aerovías del Continente Americano S.A. Avianca – 2 | WTC INTERNATIONAL BANK CORPORATION | 7049 | USD |
| Puerto Rico | Tampa Cargo S.A.S. - 1 | WTC INTERNATIONAL BANK CORPORATION | 7050 | USD |
| Puerto Rico | Tampa Cargo S.A.S. - 2 | WTC INTERNATIONAL BANK CORPORATION | 7051 | USD |
| Puerto Rico | Avianca Ecuador S.A. | WTC INTERNATIONAL BANK CORPORATION | 7052 | USD |
| Puerto Rico | Taca International Airlines S.A. | WTC INTERNATIONAL BANK CORPORATION | 7053 | USD |
| Puerto Rico | Avianca Costa Rica Sociedad Anónima | WTC INTERNATIONAL BANK CORPORATION | 7057 | USD |
| Puerto Rico | Regional Express Américas S.A.S - 1 | WTC INTERNATIONAL BANK CORPORATION | 7054 | USD |
| Puerto Rico | Regional Express Américas S.A.S - 2 | WTC INTERNATIONAL BANK CORPORATION | 7055 | USD |
| Puerto Rico | Grupo Taca Holdings Limited | WTC INTERNATIONAL BANK CORPORATION | 7056 | USD |
| Salvador | TACA INTERNATIONAL AIRLINES, S.A. | BANCO AGRICOLA | 1503 | USD |
| Salvador | TACA INTERNATIONAL AIRLINES, S.A. | BANCO DE AMERICA CENTRAL | 5665 | USD |
| Salvador | TACA INTERNATIONAL AIRLINES, S.A. | BANCO DE AMERICA CENTRAL | 2269 | USD |
| Salvador | TACA INTERNATIONAL AIRLINES, S.A. | BANCO CUSCATLAN | 0837 | USD |
| Salvador | TACA INTERNATIONAL AIRLINES, S.A. | BANCO CUSCATLAN | 7098 | USD |
| Salvador | TACA INTERNATIONAL AIRLINES, S.A. | BANCO AGRICOLA | 8296 | USD |
| Salvador | AVIANCA COSTA RICA | BANCO CUSCATLAN | 4213 | USD |
| Salvador | AEROVIAS DEL CONTINENTE AMERICANO SA | CITIBANK | 2013 | USD |
| Salvador | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO CUSCATLAN | 2005 | USD |
| Spain | AEROVIAS DEL CONTINENTE AMERICANO SA | BNP PARIBAS | 3001 | EUR |
| Spain | AEROVIAS DEL CONTINENTE AMERICANO SA | LA CAIXA | 8777 | EUR |
| United Kingdom | AEROVIAS DEL CONTINENTE AMERICANO SA | BANK OF AMERICA | 7014 | GBP |
| United States | TECHNICAL AND TRAINING SERVICE S.A. DE C.V. | JP MORGAN CHASE | 6213 | USD |
| United States | AMERICA CENTRAL CORP | JP MORGAN CHASE | 6148 | USD |
| United States | AMERICA CENTRAL CORP | BANK OF AMERICA | 7212 | USD |
| United States | AMERICA CENTRAL CORP CANADA | JP MORGAN CHASE | 6239 | USD |
| United States | COSTA RICA INTERNATIONAL ENTERPRISES | JP MORGAN CHASE | 6171 | USD |
| United States | AVIANCA ECUADOR | JP MORGAN CHASE | 6130 | USD |

| COUNTRY | ENTITY | BANK | LAST 4 DIGITS OF ACCOUNT # | CURRENCY |
|---|---|---|---|---|
| United States | AVIATECA, S.A. | JP MORGAN CHASE | 6163 | USD |
| United States | TAMPA CARGO S.A. | US BANK | 7766 | USD |
| United States | AVIANCA INC | JP MORGAN CHASE | 6155 | USD |
| United States | TAMPA CARGO S.A. | JP MORGAN CHASE | 1857 | USD |
| United States | TAMPA CARGO S.A. | JP MORGAN CHASE | 7216 | USD |
| United States | LATIN LOGISTICS LLC | JP MORGAN CHASE | 3102 | USD |
| United States | TAMPA CARGO S.A. | JP MORGAN CHASE | 0545 | USD |
| United States | AVIANCA HOLDINGS S.A. | JP MORGAN CHASE | 5868 | USD |
| United States | AVIATECA, S.A. | BANK OF AMERICA | 0597 | USD |
| United States | LATIN LOGISTICS LLC | BANK OF AMERICA | 0917 | USD |
| United States | AVIANCA HOLDINGS S.A. | BANCO BOGOTA NUEVA YORK | 0015 | USD |
| United States | TACA INTERNATIONAL AIRLINES, S.A. | US BANK | 7139 | USD |
| United States | TAMPA CARGO S.A. | JP MORGAN CHASE | 1707 | USD |
| United States | Regional Express Américas S.A.S. | BANCO BOGOTA MIAMI | 0811 | USD |
| United States | AVIANCA HOLDINGS S.A. | JP MORGAN CHASE | 1237 | USD |
| United States | AVIANCA LEASING LLC | JP MORGAN CHASE | 5969 | USD |
| United States | GRUPO TACA HOLDING | JP MORGAN CHASE | 5977 | USD |
| United States | TACA S.A. | JP MORGAN CHASE | 5985 | USD |
| United States | AVIANCA COSTA RICA | US BANK | 7097 | USD |
| United States | AVIANCA COSTA RICA | BANK OF AMERICA | 0199 | USD |
| United States | AVIANCA COSTA RICA | JP MORGAN CHASE | 6189 | USD |
| United States | AEROVIAS DEL CONTINENTE AMERICANO SA | JP MORGAN CHASE | 6858 | USD |
| United States | Aero Transporte de Carga Union, S.A. de C.V. | BANK OF AMERICA | 3346 | USD |
| United States | Aero Transporte de Carga Union, S.A. de C.V. | BANK OF AMERICA | 8462 | USD |
| United States | AEROVIAS DEL CONTINENTE AMERICANO SA | JP MORGAN CHASE | 8057 | USD |
| United States | AEROVIAS DEL CONTINENTE AMERICANO SA | CITIBANK | 2764 | USD |
| United States | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO BOGOTA NUEVA YORK | 0002 | USD |

| COUNTRY | ENTITY | BANK | LAST 4 DIGITS OF ACCOUNT # | CURRENCY |
|---|---|---|---|---|
| United States | TACA INTERNATIONAL AIRLINES, S.A. | BANK OF AMERICA | 0746 | USD |
| United States | TACA INTERNATIONAL AIRLINES, S.A. | JP MORGAN CHASE | 6197 | USD |
| United States | Aero Transporte de Carga Union, S.A. de C.V. | BANK OF AMERICA | 3345 | USD |
| United States | AEROVIAS DEL CONTINENTE AMERICANO SA | JP MORGAN CHASE | 8356 | USD |
| Uruguay | TAMPA CARGO S.A. | CITIBANK | 1605 | USD |
| Uruguay | TAMPA CARGO S.A. | CITIBANK | 1001 | UYU |
| Uruguay | AEROVIAS DEL CONTINENTE AMERICANO SA | CITIBANK | 9601 | USD |
| Uruguay | AEROVIAS DEL CONTINENTE AMERICANO SA | CITIBANK | 9008 | UYU |
| Venezuela | AVIANCA ECUADOR | BANCO MERCANTIL | 8617 | VEF |
| Venezuela | TAMPA CARGO S.A. | BANCO MERCANTIL | 0028 | VEF |
| Venezuela | AVIANCA COSTA RICA | BANCO MERCANTIL | 4077 | USD |
| Venezuela | AVIANCA COSTA RICA | CORPBANCA | 3992 | VEF |
| Venezuela | AVIANCA COSTA RICA | BANCO MERCANTIL | 4555 | VEF |
| Venezuela | AEROVIAS DEL CONTINENTE AMERICANO SA | CORPBANCA/ Banco occidental de Venezuela | 9055 | VEF |
| Venezuela | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO DE VENEZUELA | 4059 | VEF |
| Venezuela | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO DE VENEZUELA | 7566 | USD |
| Venezuela | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO MERCANTIL | 7516 | VEF |

## EXHIBIT B

### List of Key Bank Accounts

| COUNTRY | COMPANY | BANK | LAST 4 DIGITS OF ACCOUNT # | CURRENCY |
|---------|---------|------|----------------------------|----------|
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | COLPATRIA | 6092 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | DAVIVIENDA | 1162 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | DAVIVIENDA | 1942 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO DE OCCIDENTE | 2931 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | DAVIVIENDA | 9384 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | ITAU | 0059 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | DAVIVIENDA | 1204 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | ITAU | 4982 | USD |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO DE BOGOTÁ | 3829 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | COLPATRIA | 2283 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO DE BOGOTÁ | 7564 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCOLOMBIA | 7708 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCOLOMBIA | 1710 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO DE BOGOTÁ | 0554 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO DE BOGOTÁ | 1562 | COP |
| Colombia | AEROVIAS DEL CONTINENTE AMERICANO SA | COLPATRIA | 6439 | COP |
| Colombia | Regional Express Américas S.A.S. | BANCO DE BOGOTÁ | 4418 | COP |
| Colombia | Regional Express Américas S.A.S. | DAVIVIENDA | 1601 | COP |
| Colombia | TAMPA CARGO S.A. | COLPATRIA | 6490 | COP |
| Colombia | TAMPA CARGO S.A. | DAVIVIENDA | 1632 | COP |
| Colombia | SAI | BANCOLOMBIA | 2293 | COP |
| Colombia | SAI | BANCOLOMBIA | 1039 | COP |
| Colombia | SAI | BANCOLOMBIA | 2868 | COP |
| Colombia | SAI | DAVIVIENDA | 9655 | COP |
| Colombia | SAI | BANCO DE BOGOTÁ | 3147 | COP |
| Colombia | SAI | BANCO DE BOGOTÁ | 4722 | COP |
| Colombia | SAI | BANCO DE BOGOTÁ | 2339 | COP |

| COUNTRY | COMPANY | BANK | LAST 4 DIGITS OF ACCOUNT # | CURRENCY |
|---|---|---|---|---|
| Colombia | SAI | BANCO CAJA SOCIAL | 0948 | COP |
| Costa Rica | AVIANCA COSTA RICA | BANCO DE AMERICA CENTRAL | 8210 | CRC |
| Costa Rica | AVIANCA COSTA RICA | BANCO DE AMERICA CENTRAL | 8251 | USD |
| Curazao | RONAIR N.V. | CITCO BANKING CORPORATION N.V. | 7200 | USD |
| Ecuador | AVIANCA ECUADOR | BANCO DEL PACIFICO | 1609 | USD |
| Ecuador | AVIANCA ECUADOR | BANCO PICHINCHA | 1904 | USD |
| Ecuador | AVIANCA ECUADOR | PRODUBANCO | 9061 | USD |
| Ecuador | AVIANCA ECUADOR | CITIBANK | 5255 | USD |
| Guatemala | AVIATECA, S.A. | BANCO DE AMERICA CENTRAL | 9808 | USD |
| Guatemala | AVIATECA, S.A. | BANCO DE AMERICA CENTRAL | 9790 | GTQ |
| Honduras | Isleña de Inversiones, S.A. de C.V. | BANCO DE AMERICA CENTRAL | 2041 | HNL |
| Honduras | Isleña de Inversiones, S.A. de C.V. | BANCO DE AMERICA CENTRAL | 2051 | USD |
| Honduras | Isleña de Inversiones, S.A. de C.V. | LAFISE | 0045 | USD |
| Honduras | TACA DE HONDURAS | BANCO DE AMERICA CENTRAL | 2071 | USD |
| Honduras | TACA DE HONDURAS | BANCO DE AMERICA CENTRAL | 2021 | HNL |
| Mexico | Aero Transporte de Carga Union, S.A. de C.V. | BANCO SANTANDER | 7517 | MXN |
| Mexico | Aero Transporte de Carga Union, S.A. de C.V. | BANAMEX | 2313 | USD |
| Mexico | Aero Transporte de Carga Union, S.A. de C.V. | BANCO SANTANDER | 2114 | USD |
| Mexico | Aero Transporte de Carga Union, S.A. de C.V. | BANAMEX | 1739 | MXN |
| Panama | AEROVIAS DEL CONTINENTE AMERICANO SA | DAVIVIENDA PANAMA | 0853 | USD |
| Panama | AVIANCA HOLDINGS S.A. | DAVIVIENDA PANAMA | 0415 | USD |
| Panama | AVIANCA LEASING LLC | DAVIVIENDA PANAMA | 1383 | USD |
| Panama | GRUPO TACA HOLDING | DAVIVIENDA PANAMA | 0462 | USD |

| COUNTRY | COMPANY | BANK | LAST 4 DIGITS OF ACCOUNT # | CURRENCY |
|---|---|---|---|---|
| Panama | LATIN AIRWAYS CORP | DAVIVIENDA PANAMA | 0750 | USD |
| Panama | TACA S.A. | DAVIVIENDA PANAMA | 0466 | USD |
| Panama | TAMPA CARGO S.A. | DAVIVIENDA PANAMA | 0865 | USD |
| Salvador | TACA INTERNATIONAL AIRLINES, S.A. | BANCO AGRICOLA | 1503 | USD |
| Salvador | TACA INTERNATIONAL AIRLINES, S.A. | BANCO DE AMERICA CENTRAL | 5665 | USD |
| Salvador | TACA INTERNATIONAL AIRLINES, S.A. | BANCO DE AMERICA CENTRAL | 2269 | USD |
| Salvador | TACA INTERNATIONAL AIRLINES, S.A. | BANCO CUSCATLAN | 0837 | USD |
| Salvador | TACA INTERNATIONAL AIRLINES, S.A. | BANCO CUSCATLAN | 7098 | USD |
| Salvador | TACA INTERNATIONAL AIRLINES, S.A. | BANCO AGRICOLA | 8296 | USD |
| Spain | AEROVIAS DEL CONTINENTE AMERICANO SA | LA CAIXA | 8777 | EUR |
| United States | Aero Transporte de Carga Union, S.A. de C.V. | BANK OF AMERICA | 3346 | USD |
| United States | Aero Transporte de Carga Union, S.A. de C.V. | BANK OF AMERICA | 8462 | USD |
| United States | Aero Transporte de Carga Union, S.A. de C.V. | BANK OF AMERICA | 3345 | USD |
| United States | AEROVIAS DEL CONTINENTE AMERICANO SA | JP MORGAN CHASE | 6858 | USD |
| United States | AEROVIAS DEL CONTINENTE AMERICANO SA | JP MORGAN CHASE | 8057 | USD |
| United States | AEROVIAS DEL CONTINENTE AMERICANO SA | BANCO BOGOTA NUEVA YORK | 0002 | USD |
| United States | AVIANCA COSTA RICA | US BANK | 7097 | USD |
| United States | AVIANCA COSTA RICA | BANK OF AMERICA | 0199 | USD |
| United States | AVIANCA COSTA RICA | JP MORGAN CHASE | 6189 | USD |
| United States | AVIANCA ECUADOR | JP MORGAN CHASE | 6130 | USD |
| United States | AVIANCA HOLDINGS S.A. | JP MORGAN CHASE | 5868 | USD |
| United States | AVIANCA HOLDINGS S.A. | BANCO BOGOTA NUEVA YORK | 0015 | USD |
| United States | AVIANCA INC | JP MORGAN CHASE | 6155 | USD |
| United States | AVIANCA LEASING LLC | JP MORGAN CHASE | 5969 | USD |
| United States | AVIATECA, S.A. | JP MORGAN CHASE | 6163 | USD |

| COUNTRY | COMPANY | BANK | LAST 4 DIGITS OF ACCOUNT # | CURRENCY |
|---|---|---|---|---|
| United States | AVIATECA, S.A. | BANK OF AMERICA | 0597 | USD |
| United States | GRUPO TACA HOLDING | JP MORGAN CHASE | 5977 | USD |
| United States | LATIN LOGISTICS LLC | JP MORGAN CHASE | 3102 | USD |
| United States | LATIN LOGISTICS LLC | BANK OF AMERICA | 0917 | USD |
| United States | Regional Express Américas S.A.S. | BANCO BOGOTA MIAMI | 0811 | USD |
| United States | TACA INTERNATIONAL AIRLINES, S.A. | US BANK | 7139 | USD |
| United States | TACA INTERNATIONAL AIRLINES, S.A. | BANK OF AMERICA | 0746 | USD |
| United States | TACA INTERNATIONAL AIRLINES, S.A. | JP MORGAN CHASE | 6197 | USD |
| United States | TACA S.A. | JP MORGAN CHASE | 5985 | USD |
| United States | TAMPA CARGO S.A. | US BANK | 7766 | USD |
| United States | TAMPA CARGO S.A. | JP MORGAN CHASE | 7216 | USD |
| United States | TAMPA CARGO S.A. | JP MORGAN CHASE | 0545 | USD |

## **EXHIBIT C**

### **SOUTHERN DISTRICT OF NEW YORK**
### **AUTHORIZED BANK DEPOSITORIES**

*(November 19, 2019)*

1. Alma Bank
2. Associated Bank
3. Axos Bank formerly known as BofI Federal Bank
4. Banc Of California
5. Banco Popular North America
6. Bank Hapoalim, B. M.
7. Bank Leumi
8. Bank of America
9. Bank of New York Mellon
10. Bank of the West
11. BankUnited, N.A.
12. BNB Bank
13. BOKF, N.A
14. Bank of Oklahoma
15. Bank of Texas
16. California Republic Bank
17. Capital One, N.A.
18. Citibank, N.A.
19. Citizens Bank, N.A.
20. City National Bank
21. Comerica Bank
22. Commerce Bank
23. ConnectOne Bank
24. East West Bank
25. Emigrant Mercantile Bank
26. Empire National Bank
27. Fifth Third Bank
28. First Niagara Ban
29. Flushing Bank
30. HSBC Bank USA, N.A.
31. Integrity Bank
32. Israeli Discount Bank
33. JP Morgan Chase
34. Key Bank N. A.
35. M&T Trust Company
36. Mechanics Bank formerly known as Rabobank, N.A.
37. Metropolitan Commercial Bank
38. MidFirst Bank
39. People's United Bank
40. Plains Capital Bank

41. PNC Bank, N.A.
42. Regions Bank. N.A.
43. Republic First Bank a/k/a Republic Bank
44. Signature Bank
45. Silicon Valley Bank
46. Sterling National Bank
47. SunTrust Bank
48. TD Bank, N.A.
49. Texas Capital Bank
50. The First National Bank of Long Island
51. The Private Bank (Chicago)
52. UMB Bank
53. Union Bank N.A. (a/k/a MUFG Union Bank, N.A.)
54. United Bank
55. US Bank, N. A.
56. Valley National Bank
57. Webster Bank, N.A.
58. Wells Fargo Bank, N.A.
59. ZB (Zion Bank), N.A. a/k/a Amegy Bank

## EXHIBIT D

## Description of Select Key Bank Account Banks

| Institution | Ratings[1] | Descriptions |
|---|---|---|
| Banco Santander (Colombia) | AAA(col) (Fitch)[2] | • A subsidiary of Banco Santander (rated A by S&P and A2 by Moody's), one of the largest banks in the Eurozone.<br><br>• As of December 31, 2019, Banco Santander had EUR 1,522,695 million of assets on its balance sheet and controlled EUR 1,050,765 million of total funds. |
| Citibanamex | mxAAA (S&P)[3]<br><br>AAAmex (Fitch)[4] | • Headquartered in Mexico City, Mexico.<br><br>• A subsidiary of Citigroup.<br><br>• As of September 30, 2019, Citibanamex was the second largest bank in Mexico, with MX$1,583 billion (approximately US$63.8 billion) in assets under management. |
| Banco de Bogota | BB+ (S&P)<br><br>Baa2 (Moody's) | • Headquartered in Bogota, Colombia.<br><br>• The oldest commercial bank in Colombia, owned by Grupo Aval.<br><br>• As of December 31, 2019, Banco de Bogota had total assets in an amount of COP 153 trillion (approximately US$ 37.8 billion). |
| CaixaBank | BBB+ (S&P)<br><br>A3 (Moody's) | • Headquartered in Valencia, Spain.<br><br>• Had 15.6 million retail clients as of December 31, 2019, with total assets amounting to €391.4 billion and a 186% liquidity coverage ratio. |
| Bancolombia | BB+ (S&P)<br><br>Baa2 (Moody's) | • Headquartered in Medellin, Colombia.<br><br>• Owns and controls several entities throughout Central and South America, as |

---

[1] Moody's, S&P and Fitch ratings services were referenced in sourcing this information. The ratings reported herein reflect available issuer credit ratings, long term deposit ratings, long term issuer default ratings and long term insurer financial strength ratings, as applicable and as available.

[2] Domestic ratings.

[3] Domestic ratings.

[4] Domestic ratings.

| | | well as the Caribbean, including Banco Agricola.<br><br>• As of December 31, 2019, Bancolombia had total assets in an amount of COP 169.8 trillion (approximately US$41.9 billion). |
| --- | --- | --- |
| Banco Cuscatlan | EAA+ slv[5] (Fitch) | • Headquartered in San Salvador, El Salvador.<br><br>• As of December 31, 2019, Banco Cuscatlán had total assets in an amount of US$1.7 billion. |
| Banco de America Central (BAC Credomatic) | AA- (nic) [6] | • Headquartered in San Jose, Costa Rica.<br><br>• Owned by Grupo Aval<br><br>• As of December 31, 2019, Banco de America Central had total assets in an amount of US$2.7 billion. |
| Banco del Pacifico | AAA- (CLASS INTERNATIONAL RATING; as of 2018) | • Headquartered in Quito, Ecuador.<br><br>• Founded in 1972, it the second largest financial institution in Ecuador, with approximately $5.9 billion in assets as of September 30, 2019.  It is currently wholly owned by the Ecuadorian government. |
| Banco De Credito Del Peru | BBB+ (S&P)<br><br>Baa1 (Moody's) | • Headquartered in Lima, Peru.<br><br>• The largest bank and financial services provider in Peru, Banco de Credito Del Peru's assets amounted to S. 152.1 billion (approximately US$44 billion) in assets and retains a substantial market share in Peru, with an approximately 32.7% market share in deposits, all as of December 31, 2019. |
| Banco De La Nacion Del Peru | A3 (Moody's) | • Headquartered in Lima, Peru.<br><br>• A Peruvian state-owned institution, which has functioned uninterrupted since its founding in 1966. As of September 30, 2019, Banco de la Nacion del Peru had S. 29.9 billion (approximately US$8.8 billion) in assets. |
| Scotiabank Colpatria | AA (Fitch) | • Headquartered in Bogota, Colombia |

---

[5] Domestic ratings.

[6] Domestic ratings.

| | | |
|---|---|---|
| | | • A subsidiary of Scotiabank, it held COP 35.6 trillion (approximately US\$8.7 billion) as of December 31, 2019. |
| Davivenda | BBB- (S&P) Baa3 (Moody's) | • Headquartered in Bogota, Colombia<br>• Founded in 1972, Davivenda is part of Grupo Empresarial Bolivar and, as of December 31, 2019, held COP 122.2 trillion (approximately US\$30.1 billion) in assets. |
| Banco Lafise | N/A | • Banco Lafise was founded in 1985 in order to provide cross-border financial services across Central America and the Caribbean regions.<br>• Grupo Lafise, Banco Lafise's parent company, is headquartered in Panama and currently operates in Colombia, Costa Rica, El Salvador, Guatemala, the United States, Nicaragua, Panama, Dominican Republic, Venezuela, Honduras and Mexico. As of December 31, 2018, Grupo Lafise held US\$3.9 billion in assets. |
| Produbanco | B- (Fitch) | • Founded in 1978, Produbanco is one of the largest financial institutions in Ecuador.<br>• As of December 31, 2019, Produbanco held US\$5.1 billion in assets. |
| Bancolombia | BB+ (S&P) Baa2 (Moody's) | • Headquartered in Medellin, Colombia.<br>• Owns or controls Banco Agricola.<br>• Operates throughout Central and South America, as well as the Caribbean, and maintains over a thousand branches. Bancolombia is regarded as having a strong business position, sufficient funding and liquidity and a strengthening risk-adjusted capital ratio, the latter of which has been driven, in part, by internal capital accumulation. |
| Banco Cuscatlan | EAA+ slv (Fitch) | • Headquartered in San Salvador, El Salvador.<br>• Founded in 1972, Banco Cuscatlan is one of the largest and most important banking institutions in El Salvador, with approximately 5,000 employees. |
| Banco de America Central | AA- (nic) | • Headquartered in San Jose, Costa Rica. |

| | | |
|---|---|---|
| | | • Founded in 1952 and with operations throughout Central America, Grand Cayman, the Bahamas and Florida, Banco de America Central is one of the most well established and stable financial institutions in the region. |
| Banco del Pacifico | AAA- (CLASS INTERNATIONAL RATING; as of 2018) | • Headquartered in Quito, Ecuador.<br><br>• Founded in 1972, it the second largest financial institution in Ecuador, with approximately $5.7 billion in assets as of June 2019. It is currently wholly owned by the Ecuadorian government. |
| Banco De Credito Del Peru | BBB+ (S&P)<br><br>Baa1 (Moody's) | • Headquartered in Lima, Peru.<br><br>• The largest bank and financial services provider in Peru, Banco de Creditor Del Peru holds approximately$39 billion in assets and retains a substantial market share in Peru. The institution was founded in 1889 and currently boasts solid operating performance metrics and sound capitalization. |
| Banco De La Nacion Del Peru | A3 (Moody's) | • Headquartered in Lima, Peru.<br><br>• A Peruvian state institution, which has functioned uninterrupted since its founding in 1966. The bank currently maintains approximately 400 branches throughout Peru. |
| Colpatria | AA (Fitch) | • Headquartered in Bogota, Colombia<br><br>• A Scotiabank brand. The bank currently employs approximately 7,000 employees across numerous locations. |
| Davivenda | BBB- (S&P)<br><br>Baa3 (Moody's) | • Headquartered in Bogota, Colombia<br><br>• Founded in 1972, Davivenda is part of Grupo Empresarial Bolivar and currently sits as the third-largest bank in Colombia in terms of assets. The bank purchased the Costa Rican, El Salvadoran and Honduran operations of HSBC in 2012 and currently owns and operates at least one branch in the United States. |
| Banco Lafise | AA- nic (Fitch) | • Perceived as an eminently stable financial institution, Banco Lafise was founded in 1985 in order to provide cross-border |

|  |  | • financial services across Central America and the Caribbean regions.<br><br>• Grupo Lafise, Banco Lafise's parent company, currently operates in Colombia, Costa Rica, El Salvador, Guatemala, the United States, Nicaragua, Panama, Dominican Republic, Venezuela, Honduras and Mexico. |
| Produbanco | B- (Fitch) | • Founded in 1978, Produbanco is one of the largest and most important financial institutions in Ecuador. The bank boasts a sound balance sheet and both adequate profitability and liquidity. |

**EXHIBIT E**

**Proposed Interim Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------x
                                               :
In re:                                         :    Chapter 11
                                               :
AVIANCA HOLDINGS S.A., et al.,[1]              :    Case No. 20-11133 (MG)
                                               :
                          Debtors.             :    (Joint Administration Requested)
                                               :
------------------------------------------------------------x
```

### INTERIM ORDER PURSUANT TO SECTIONS 105(a), 345, 363, AND 364 OF THE BANKRUPTCY CODE (I) AUTHORIZING DEBTORS TO (A) MAINTAIN AND USE EXISTING CASH MANAGEMENT SYSTEMS, BANK ACCOUNTS AND BUSINESS FORMS; (B) CONTINUE TO ENGAGE IN INTERCOMPANY TRANSACTIONS AND AFFORD ADMINISTRATIVE EXPENSE PRIORITY TO INTERCOMPANY CLAIMS; (C) CONTINUE PAYMENT OF SERVICE CHARGES; (II) WAIVING COMPLIANCE WITH SECTION 345 OF BANKRUPTCY CODE; (III) SCHEDULING FINAL HEARING; AND (IV) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and

debtors-in-possession (the "Debtors"), seeking entry of an interim order pursuant to sections

105(a), 345, 363, and 364 of the Bankruptcy Code authorizing (i) the Debtors' continued use of

the existing Cash Management System, Bank Accounts, and Business Forms; (ii) the Debtors'

---

[1]   The Debtors in these chapter 11 cases, and each Debtor's federal tax identification number (to the extent applicable), are as follows: Avianca Holdings S.A. (N/A); Aero Transporte de Carga Unión, S.A. de C.V. (N/A); Aeroinversiones de Honduras, S.A. (N/A); Aerovías del Continente Americano S.A. Avianca (N/A); Airlease Holdings One Ltd. (N/A); America Central (Canada) Corp. (00-1071563); America Central Corp. (65-0444665); AV International Holdco S.A. (N/A); AV International Holdings S.A. (N/A); AV International Investments S.A. (N/A); AV International Ventures S.A. (N/A); AV Investments One Colombia S.A.S. (N/A); AV Investments Two Colombia S.A.S. (N/A); AV Taca International Holdco S.A. (N/A); Avianca Costa Rica S.A. (N/A); Avianca Leasing, LLC (47-2628716); Avianca, Inc. (13-1868573); Avianca-Ecuador S.A. (N/A); Aviaservicios, S.A. (N/A); Aviateca, S.A. (N/A); Avifreight Holding Mexico, S.A.P.I. de C.V. (N/A); C.R. Int'l Enterprises, Inc. (59-2240957); Grupo Taca Holdings Limited (N/A); International Trade Marks Agency Inc. (N/A); Inversiones del Caribe, S.A. (N/A); Isleña de Inversiones, S.A. de C.V. (N/A); Latin Airways Corp. (N/A); Latin Logistics, LLC (41-2187926); Nicaraguense de Aviación, Sociedad Anónima (Nica, S.A.) (N/A); Regional Express Américas S.A.S. (N/A); Ronair N.V. (N/A); Servicio Terrestre, Aereo y Rampa S.A. (N/A); Servicios Aeroportuarios Integrados SAI S.A.S. (92-4006439); Taca de Honduras, S.A. de C.V. (N/A); Taca de México, S.A. (N/A); Taca International Airlines S.A. (N/A); Taca S.A. (N/A); Tampa Cargo S.A.S. (N/A); Technical and Training Services, S.A. de C.V. (N/A). The Debtors' principal offices are located at Avenida Calle 26 # 59 – 15 Bogotá, Colombia.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

continued performance of ordinary course Intercompany Transactions and the grant of administrative expense priority for Intercompany Claims; (iii) waiver or an extension of the time to comply with the investment and deposit restrictions imposed by section 345 of the Bankruptcy Code; and (iv) related relief, including authority for the Debtors to pay any Service Fees; and (b) scheduling of a final hearing (the "Final Hearing") to consider entry of the Proposed Final Order, all as described more fully in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012; and it appearing that venue of these chapter 11 cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary under the circumstances; and upon the Motion and the *Declaration of Adrian Neuhauser in Support of the Debtors' Chapter 11 Petitions and First Day Orders*; and upon the statements of counsel in support of the relief requested in the Motion at the hearing before the Court; and all of the proceedings had before the Court; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis.

2.      The Final Hearing shall be held on _____, 2020, at__:__ _.m., prevailing Eastern Time. Any objections or responses to entry of Proposed Final Order shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2020, and shall be served on: (a) the

Office of the United States Trustee for the Southern District of New York; (b) the Debtors; (c) proposed counsel to the Debtors; and (d) those parties requesting notice pursuant to Bankruptcy Rule 2002.  In the event no objections to entry of Proposed Final Order on the Motion are timely received, this Court may enter the Proposed Final Order without need for the Final Hearing.

3.     The Debtors are authorized, but not directed, to (i) designate, maintain, and continue to use their existing prepetition Bank Accounts, in the names and with the account numbers existing immediately prior to the commencement of the Chapter 11 Cases; provided, however, that the Debtors shall have the right to close some or all of their prepetition Bank Accounts and open new debtor in possession accounts; (ii) deposit funds in and withdraw funds from such accounts by all usual means, including, without limitation, checks, wire transfers, and other debits; (iii) pay any ordinary course bank fees incurred postpetition in connection with the Bank Accounts; (iv) treat the Bank Accounts for all purposes as debtor in possession accounts.

4.     All Banks in which the Debtors maintain the Bank Accounts as of the Petition Date are authorized and directed to continue to maintain, service, and administer such Bank Accounts; provided, however, that nothing contained herein shall authorize any such Bank to honor any check issued or dated prior to the commencement of the Chapter 11 Cases, except as otherwise provided by separate order(s) of this Court.

5.     To the extent that the Debtors are not in compliance with the requirements of section 345(b) of the Bankruptcy Code and of the Operating Guidelines, the Debtors are granted a forty-five (45) day extension of time to come into compliance with such requirements pending the final disposition of the Motion.

6.     Pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, all Intercompany Claims arising on or after the Petition Date as a result of Intercompany Transactions

through the Cash Management System shall be accorded administrative expense status (except for transfers from one Debtor to another Debtor of cash held in trust). As a result, each entity utilizing funds in the system will continue to bear its own obligations with respect to the underlying transactions.

7.      The Debtors are authorized, but not directed, to maintain and continue to use any and all Business Forms substantially in the forms existing immediately prior to the Petition Date, without reference to their status as debtors in possession.

8.      The Debtors are authorized, but not directed, to (a) continue to manage their cash pursuant to the Cash Management System maintained by the Debtors prior to the commencement of the Chapter 11 Cases, (b) transfer funds by and among the Debtors and their affiliates as and when needed and in the amounts necessary or appropriate to maintain their operations and facilitate the orderly operation of their estates or businesses, and (c) make ordinary course changes to their Cash Management System without further order of the Court.

9.      The Debtors are authorized to open new or close bank accounts in the ordinary course; provided, that all accounts opened by any of the Debtors on or after the Petition Date at any bank shall, for purposes of this Order, be deemed a Bank Account as if it had originally been listed on **Exhibit A** to the Motion; provided further, that such opening shall be timely indicated on the Debtors' monthly operating reports and notice of such opening or closing shall be provided to the U.S. Trustee and any statutory committee appointed in these cases; provided further, that any new bank account that the Debtors open will be (i) designated a "Debtor in Possession" account by the relevant bank, and (ii) with a bank that agrees to be bound by the terms of this Order.

10.     The Debtors shall maintain records in a manner consistent with their prepetition practices, of transfers within the Cash Management System so that postpetition transfers and

transactions shall be adequately documented in, and readily ascertainable from, their books and records, to the same extent maintained by the Debtors prior to the commencement of the Chapter 11 Cases.

11.    Pursuant to section 105(a) of the Bankruptcy Code, each of the Banks are authorized to continue to honor transfers, as directed by the Debtors, of funds among the Bank Accounts. In the course of providing cash management services to the Debtors, each of the Banks is authorized, without further order of this Court, to deduct the applicable fees and expenses, including Bank Fees, associated with the nature of the deposit and cash management services rendered to the Debtors, whether arising prepetition or postpetition, from the appropriate accounts of the Debtors, and further, to charge-back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from wire transfers, ACH transactions, or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

12.    Each of the Banks is authorized to debit the Debtors' accounts in the ordinary course and without further order of this Court on account of: (a) all checks drawn on the Debtors' accounts that have been cashed at such Banks' counters or exchanged for cashier's or official checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of the Debtors' accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with all bank fees and costs in connection with any checks or other items deposited in one of the Debtors' accounts with such bank prior to the Petition Date, which have been dishonored or returned unpaid for any reason, to the same extent the Debtors were responsible for such items prior to the Petition Date; and (c) all undisputed

prepetition amounts outstanding as of the date hereof, if any, owned to any Bank as to service charges for the maintenance of the Cash Management System.

13.    The Banks shall not be liable to any party on account of (a) following the Debtors' representations, instructions, or presentations as to any order of the Court (without any duty of further inquiry); (b) the honoring of any prepetition checks, drafts, wires or ACH payments in a good faith belief or upon a representation by the Debtors that the Court has authorized such prepetition check, draft, wire or ACH payments; or (c) an innocent mistake made despite implementation of reasonable handling procedures.

14.    Nothing contained herein shall prevent the Debtors from closing any Bank Account as they may deem necessary and appropriate, and any relevant bank is authorized to honor the Debtors' requests to close such Bank Accounts, and the Debtors shall give notice of the closure of any account to the U.S. Trustee.

15.    Notwithstanding the relief granted in this Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with any interim or final order entered by the Court approving the Debtors' entry into any post-petition debtor in possession financing facility, and any budget or cash flow forecasts in connection therewith and/or authorizing the Debtors' use of cash collateral and any budget in connection therewith (in either case, the "DIP Order"). To the extent that there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

16.    Nothing contained in this Order shall constitute a rejection or assumption by the Debtors of any executory contract or unexpired lease by virtue of reference of any such contract or lease in the Motion.

17.    Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any party.

18.    This Interim Order is effective from the date of entry through this Court's disposition of the Motion on a final basis; provided that the Court's ultimate disposition of the Motion on the final basis shall not impair or otherwise affect any action taken pursuant to this Order.

19.    Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.

20.    Notwithstanding Bankruptcy Rule 6004, this Order shall be immediately effective and enforceable upon its entry.

21.    The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

22.    This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Order.


Dated: _____, 2020


_____
    UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT F</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                        :
In re:                                  :    Chapter 11
                                        :
AVIANCA HOLDINGS S.A., et al.,¹         :    Case No. 20-11133 (MG)
                                        :
                    Debtors.            :    (Joint Administration Requested)
                                        :
------------------------------------------------------------x
```

**FINAL ORDER PURSUANT TO SECTIONS 105(a), 345, 363, AND 364 OF THE
BANKRUPTCY CODE (I) AUTHORIZING DEBTORS TO (A) MAINTAIN AND USE
EXISTING CASH MANAGEMENT SYSTEMS, BANK ACCOUNTS AND BUSINESS
FORMS; (B) CONTINUE TO ENGAGE IN INTERCOMPANY TRANSACTIONS AND
AFFORD ADMINISTRATIVE EXPENSE PRIORITY TO INTERCOMPANY CLAIMS; (C)
CONTINUE PAYMENT OF SERVICE CHARGES; (II) WAIVING COMPLIANCE WITH
SECTION 345 OF BANKRUPTCY CODE; AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")² of the above-captioned debtors and

debtors in possession (collectively, the "Debtors"), seeking entry of a final order (this "Final

Order") pursuant to sections 105(a), 345, 363, and 364 of the Bankruptcy Code authorizing (i) the

Debtors' continued use of the existing Cash Management System, Bank Accounts, and Business

Forms; (ii) the Debtors' continued performance of ordinary course Intercompany Transactions and

---

¹ The Debtors in these chapter 11 cases, and each Debtor's federal tax identification number (to the extent
applicable), are as follows: Avianca Holdings S.A. (N/A); Aero Transporte de Carga Unión, S.A. de C.V. (N/A);
Aeroinversiones de Honduras, S.A. (N/A); Aerovías del Continente Americano S.A. Avianca (N/A); Airlease
Holdings One Ltd. (N/A); America Central (Canada) Corp. (00-1071563); America Central Corp. (65-0444665);
AV International Holdco S.A. (N/A); AV International Holdings S.A. (N/A); AV International Investments S.A.
(N/A); AV International Ventures S.A. (N/A); AV Investments One Colombia S.A.S. (N/A); AV Investments
Two Colombia S.A.S. (N/A); AV Taca International Holdco S.A. (N/A); Avianca Costa Rica S.A. (N/A); Avianca
Leasing, LLC (47-2628716); Avianca, Inc. (13-1868573); Avianca-Ecuador S.A. (N/A); Aviaservicios, S.A.
(N/A); Aviateca, S.A. (N/A); Avifreight Holding Mexico, S.A.P.I. de C.V. (N/A); C.R. Int'l Enterprises, Inc. (59-
2240957); Grupo Taca Holdings Limited (N/A); International Trade Marks Agency Inc. (N/A); Inversiones del
Caribe, S.A. (N/A); Isleña de Inversiones, S.A. de C.V. (N/A); Latin Airways Corp. (N/A); Latin Logistics, LLC
(41-2187926); Nicaraguense de Aviación, Sociedad Anónima (Nica, S.A.) (N/A); Regional Express Américas
S.A.S. (N/A); Ronair N.V. (N/A); Servicio Terrestre, Aereo y Rampa S.A. (N/A); Servicios Aeroportuarios
Integrados SAI S.A.S. (92-4006439); Taca de Honduras, S.A. de C.V. (N/A); Taca de México, S.A. (N/A); Taca
International Airlines S.A. (N/A); Taca S.A. (N/A); Tampa Cargo S.A.S. (N/A); Technical and Training Services,
S.A. de C.V. (N/A).  The Debtors' principal offices are located at Avenida Calle 26 # 59 – 15 Bogotá, Colombia.

² Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

the grant of administrative expense priority for Intercompany Claims; (iii) waiver or an extension of the time to comply with the investment and deposit restrictions imposed by section 345 of the Bankruptcy Code; and (iv) related relief, including authority for the Debtors to pay any Service Fees, all as described more fully in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012; and it appearing that venue of these chapter 11 cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the Motion and the *Declaration of Adrian Neuhauser in Support of the Debtors' Chapter 11 Petitions and First Day Orders*, dated as of the Petition Date; and upon the statements of counsel in support of the relief requested in the Motion at the Final Hearing; and all of the proceedings had before the Court; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on a final basis in all respects.

2.      The Debtors are authorized, but not directed, to (i) designate, maintain, and continue to use their existing prepetition Bank Accounts, in the names and with the account numbers existing immediately prior to the commencement of the Chapter 11 Cases; provided, however, that the Debtors shall have the right to close some or all of their prepetition Bank Accounts and open new debtor in possession accounts; (ii) deposit funds in and withdraw funds

from such accounts by all usual means, including, without limitation, checks, wire transfers, and other debits; (iii) pay any ordinary course bank fees incurred postpetition in connection with the Bank Accounts; (iv) treat the Bank Accounts for all purposes as debtor in possession accounts.

3.      All Banks in which the Debtors maintain the Bank Accounts as of the Petition Date are authorized and directed to continue to maintain, service, and administer such Bank Accounts; provided, however, that nothing contained herein shall authorize any such Bank to honor any check issued or dated prior to the commencement of the Chapter 11 Cases, except as otherwise provided by separate order(s) of this Court.

4.      To the extent that the Debtors are not in compliance with the requirements of section 345(b) of the Bankruptcy Code and of the Operating Guidelines, such requirements are hereby waived for cause.

5.      Pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, all Intercompany Claims arising on or after the Petition Date as a result of Intercompany Transactions through the Cash Management System shall be accorded administrative expense status (except for transfers from one Debtor to another Debtor of cash held in trust).  As a result, each entity utilizing funds in the system will continue to bear its own obligations with respect to the underlying transactions.

6.      The Debtors are authorized, but not directed, to maintain and continue to use any and all Business Forms substantially in the forms existing immediately prior to the Petition Date, without reference to their status as debtors in possession.

7.      The Debtors are authorized, but not directed, to (a) continue to manage their cash pursuant to the Cash Management System maintained by the Debtors prior to the commencement of the Chapter 11 Cases, (b) transfer funds by and among the Debtors and their affiliates as and

when needed and in the amounts necessary or appropriate to maintain their operations and facilitate

the orderly operation of their estates or businesses, and (c) make ordinary course changes to their

Cash Management System without further order of the Court.

8.      The Debtors are authorized to open new or close bank accounts in the ordinary

course; provided, that all accounts opened by any of the Debtors on or after the Petition Date at

any bank shall, for purposes of this Order, be deemed a Bank Account as if it had originally been

listed on **Exhibit A** to the Motion; provided further, that such opening shall be timely indicated on

the Debtors' monthly operating reports and notice of such opening or closing shall be provided to

the U.S. Trustee and any statutory committee appointed in these cases; provided further, that any

new bank account that the Debtors open will be (i) designated a "Debtor in Possession" account

by the relevant bank, and (ii) with a bank that agrees to be bound by the terms of this Order.

9.      The Debtors shall maintain records in a manner consistent with their prepetition

practices, of transfers within the Cash Management System so that postpetition transfers and

transactions shall be adequately documented in, and readily ascertainable from, their books and

records, to the same extent maintained by the Debtors prior to the commencement of the

Chapter 11 Cases.

10.     Pursuant to section 105(a) of the Bankruptcy Code, each of the Banks are

authorized to continue to honor transfers, as directed by the Debtors, of funds among the Bank

Accounts. In the course of providing cash management services to the Debtors, each of the Banks

is authorized, without further order of this Court, to deduct the applicable fees and expenses,

including Bank Fees, associated with the nature of the deposit and cash management services

rendered to the Debtors, whether arising prepetition or postpetition, from the appropriate accounts

of the Debtors, and further, to charge-back to the appropriate accounts of the Debtors any amounts

resulting from returned checks or other returned items, including returned items that result from wire transfers, ACH transactions, or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

11.     Each of the Banks is authorized to debit the Debtors' accounts in the ordinary course and without further order of this Court on account of: (a) all checks drawn on the Debtors' accounts that have been cashed at such Banks' counters or exchanged for cashier's or official checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of the Debtors' accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with all bank fees and costs in connection with any checks or other items deposited in one of the Debtors' accounts with such bank prior to the Petition Date, which have been dishonored or returned unpaid for any reason, to the same extent the Debtors were responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owned to any Bank as to service charges for the maintenance of the Cash Management System.

12.     The Banks shall not be liable to any party on account of (a) following the Debtors' representations, instructions, or presentations as to any order of the Court (without any duty of further inquiry); (b) the honoring of any prepetition checks, drafts, wires or ACH Payments in a good faith belief or upon a representation by the Debtors that the Court has authorized such prepetition check, draft, wire or ACH Payments; or (c) an innocent mistake made despite implementation of reasonable handling procedures.

13.     Nothing contained herein shall prevent the Debtors from closing any Bank Account(s) as they may deem necessary and appropriate, any relevant bank is authorized to honor

the Debtors' requests to close such Bank Accounts, and the Debtors shall give notice of the closure of any account to the U.S. Trustee.

14.     Notwithstanding the relief granted in this Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with any interim or final order entered by the Court approving the Debtors' entry into any post-petition debtor in possession financing facility, and any budget or cash flow forecasts in connection therewith and/or authorizing the Debtors' use of cash collateral and any budget in connection therewith (in either case, the "DIP Order"). To the extent that there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

15.     Nothing contained in this Final Order or the Motion shall constitute a rejection or assumption by the Debtors, as debtors in possession, of any executory contract or unexpired lease by virtue of reference of any such contract or lease in the Motion.

16.      Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any party.

17.     Notwithstanding any applicability of Bankruptcy Rule 6004, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

18.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Final Order.

19.     This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Order.

Dated: _____, 2020

_____
UNITED STATES BANKRUPTCY JUDGE