Dennis F. Dunne
Evan R. Fleck
MILBANK LLP
55 Hudson Yards
New York, NY 10001
Telephone:(212) 530-5000
Facsimile: (212) 530-5219

Gregory Bray
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile:  (213) 629-5063

*Proposed Counsel for Debtors and
Debtors-In-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                          :
In re:                                    :   Chapter 11
                                          :
AVIANCA HOLDINGS S.A., *et al.*,[1]       :   Case No. 20-11133 (MG)
                                          :
                            Debtors.      :   (Joint Administration Requested)
                                          :
-------------------------------------------------------------x

> **PARTIES RECEIVING THIS MOTION SHOULD LOCATE THEIR
> NAMES AND LEASES IN EXHIBIT C HERETO**

**DEBTORS' FIRST OMNIBUS MOTION FOR AN
ORDER AUTHORIZING THEM TO (I) REJECT CERTAIN
AIRCRAFT LEASES AND (II) ABANDON CERTAIN AIRCRAFT**

---

[1]  The Debtors in these chapter 11 cases, and each Debtor's federal tax identification number (to the extent applicable), are as follows: Avianca Holdings S.A. (N/A); Aero Transporte de Carga Unión, S.A. de C.V. (N/A); Aeroinversiones de Honduras, S.A. (N/A); Aerovías del Continente Americano S.A. Avianca (N/A); Airlease Holdings One Ltd. (N/A); America Central (Canada) Corp. (00-1071563); America Central Corp. (65-0444665); AV International Holdco S.A. (N/A); AV International Holdings S.A. (N/A); AV International Investments S.A. (N/A); AV International Ventures S.A. (N/A); AV Investments One Colombia S.A.S. (N/A); AV Investments Two Colombia S.A.S. (N/A); AV Taca International Holdco S.A. (N/A); Avianca Costa Rica S.A. (N/A); Avianca Leasing, LLC (47-2628716); Avianca, Inc. (13-1868573); Avianca-Ecuador S.A. (N/A); Aviaservicios, S.A. (N/A); Aviateca, S.A. (N/A); Avifreight Holding Mexico, S.A.P.I. de C.V. (N/A); C.R. Int'l Enterprises, Inc. (59-2240957); Grupo Taca Holdings Limited (N/A); International Trade Marks Agency Inc. (N/A); Inversiones del Caribe, S.A. (N/A); Isleña de Inversiones, S.A. de C.V. (N/A); Latin Airways Corp. (N/A); Latin Logistics, LLC (41-2187926); Nicaraguense de Aviación, Sociedad Anónima (Nica, S.A.) (N/A); Regional Express Américas S.A.S. (N/A); Ronair N.V. (N/A); Servicio Terrestre, Aereo y Rampa S.A. (N/A); Servicios Aeroportuarios Integrados SAI S.A.S. (92-4006439); Taca de Honduras, S.A. de C.V. (N/A); Taca de México, S.A. (N/A); Taca International Airlines S.A. (N/A); Taca S.A. (N/A); Tampa Cargo S.A.S. (N/A); Technical and Training Services, S.A. de C.V. (N/A). The Debtors' principal offices are located at Avenida Calle 26 # 59 – 15 Bogotá, Colombia.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Avianca Holdings S.A. and its above-captioned direct and indirect subsidiaries in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), as debtors and debtors-in-possession (collectively, the "Debtors"), respectfully represent:

## RELIEF REQUESTED

1.    By this motion (the "Motion") the Debtors seek entry of an order, substantially in the form annexed hereto as **Exhibit A**, authorizing them to (i) reject the leases relating to certain leased aircraft pursuant to section 365 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 6006; and (ii) abandon certain owned aircraft pursuant to section 554 of the Bankruptcy Code.  The Debtors are seeking the rejection or abandonment, as applicable,[2] with respect to the aircraft listed in **Exhibit C** (the "Excess Aircraft"), *nunc pro tunc* to the date of filing this Motion (i.e., the Petition Date, as defined below).  Immediately upon the entry of an Order granting this Motion, the Debtors will make the Excess Aircraft available for delivery to the associated lessors or lenders at the locations indicated on **Exhibit C**.  In support of the Motion, the Debtors submit the Declaration of Ginger Hughes (the "Hughes Declaration"), attached hereto as **Exhibit B**.

## JURISDICTION

2.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]    The Debtors seek to reject certain aircraft leases, or in the alternative, to abandon the underlying leased property because certain rejected aircraft leases may be characterized as leases intended as security (i.e., finance leases). The Debtors contend that the relevant transactions are leases, but for purposes of this Motion, the Debtors submit that the nature of the transaction is irrelevant because, in either case, the Debtors desire to relinquish their interests in the applicable aircraft which are burdensome to the estate.  The Debtors do not seek any determination at this time regarding the nature of the relevant transactions, or the amount of or defenses that may be applicable to any damages claims, and reserve their rights in all respects on such issues.

## STATUS OF THE CASE

3.      On the date hereof (the "Petition Date"), each of the Debtors filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have filed a motion requesting joint administration of the Debtors' chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules").  No creditors' committee has yet been appointed in these cases.  No trustee or examiner has been appointed.

## BACKGROUND

4.      Avianca is the second-largest airline group in Latin America and the most important carrier in the Republic of Colombia and in the Republic of El Salvador.  It is the largest airline in the Republic of Colombia (the third largest Latin American economy), a code-share partner of United Airlines, and a member of the Star Alliance which, with 26 members, is the world's largest global airline alliance.  Established in 1919, Avianca has a 100-year legacy as a leading provider of air travel and cargo services in the Latin American market and around the globe.  Avianca is well respected throughout Latin America and maintains significant customer brand equity and market share in the regions it services.

5.      The Debtors operate an extensive network of routes from their primary hubs in Bogotá and San Salvador (in addition to other focus markets) and offer passenger services on more than 5,350 weekly flights to more than 76 destinations in 27 countries.  With approximately 18,900 employees and approximately $3.9 billion in annual revenues, the Debtors play a key role in the Latin American airline market.

6.      Despite an effective debt reprofiling executed in the second half of 2019, a significant improvement in Avianca's liquidity position in early 2020, and the successful 2019

launch of the "Avianca 2021" transformation plan, the Debtors have been compelled to file these Chapter 11 Cases for one principal reason: the COVID-19 pandemic, which has affected the world's population and economies in ways that have never been experienced. The reduction in travel as a result of the virus, and the measures undertaken to combat the virus, including restrictions commercial flights and on travel, have had and will continue to have an adverse impact on the Debtors. As a result of the ongoing pandemic and its consequences, the Debtors are facing significantly reduced revenues from ticket sales and ancillary revenues, government prohibitions globally on international flights, substantial ongoing contractual obligations to their lessors, lenders and other creditors, and a near complete standstill of the global economy—all with significant continued impact and limited visibility as to the potential market recovery.

7.      On March 20, 2020, the Republic of Colombia, consistent with what numerous other governments around the world have done, announced that it would close its airspace to address the spread of COVID-19. As a result of the restrictions imposed by the Colombian government, as well as similar measures in various other of the Debtors' primary markets, on March 24, 2020 the Debtors announced that they were suspending all scheduled passenger flights from March 25, 2020 until at least the end of April 2020; this situation has now been extended and is ongoing, and no date has been established for restart of flights.

8.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Adrian Neuhauser in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), which is being filed contemporaneously herewith and is incorporated by reference herein.

## BACKGROUND RELEVANT TO MOTION

9.        As of December 31, 2019, Avianca operated a modern fleet of 156 aircraft (143 jet

passenger aircraft and 13 cargo aircraft, excluding 15 turboprop aircraft), mainly from the Airbus

family. Avianca's operative passenger jet fleet is one of the youngest among Latin American

airlines, with an average aircraft age of 7.3 years, as of December 31, 2019.

10.        The Debtors have commenced a comprehensive review of their fleet to determine

whether to reduce the number or alter the mix of their aircraft in light of the current market

conditions, projected air travel demand, and other business factors.  Although this review is not

complete, the Debtors believe that they will likely reduce the size of their fleet, primarily by

returning uneconomic aircraft to lessors and/or lenders, as applicable.

11.        Since the Petition Date, the Debtors have identified certain Excess Aircraft, listed

on **Exhibit C** to the Motion, and have determined that it is not in the best interests of their estates

to retain the owned Excess Aircraft (in which they have no equity) or to continue to lease the leased

Excess Aircraft.  The owned Excess Aircraft are burdensome to the Debtors' estates because they

are not required under the Debtors' business plan and the Debtors do not have any equity in any

of the owned Excess Aircraft.  The evaluation of Excess Aircraft included considering (1) whether

each aircraft is surplus in a post-COVID-19 demand environment, (2) whether each aircraft is

optimally suited for post-COVID flight operations from the Debtors' Bogotá hub, and (3) whether

each aircraft exposes the Debtors to risk of carry cost.  The Excess Aircraft are burdensome to the

Debtors' estates under these criteria.  Some Excess Aircraft have been taken out of service due to

their age, condition, lease terms, and/or maintenance costs, and play no part in the Debtors'

plans.  Many of the rest have been in storage due to the flight suspension caused by the COVID-

19 pandemic, and, after emerging from these Chapter 11 Cases, will not be required to carry out

what Avianca has stated will be a post-chapter 11 strategy of seeking to rebuild its network at a

measured pace, consistent with the rebound in demand for air transport services, while reducing the overall size and complexity of the Company's fleet, network, and corporate operations. Rejecting these leases is therefore in the best interests of the Debtors' estates since there is no business case to renew these leases.

## BASIS FOR RELIEF REQUESTED

**A.    Rejection of Leases for the Leased Excess Aircraft Constitutes
    Sound Exercise of the Debtors' Business Judgment**

12.    Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  "The purpose behind allowing the assumption or rejection of executory contracts [or unexpired leases] is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'"  In re Orion Pictures Corp., 4 F.3d 1095, 1098 (2d Cir. 1993); see also In re Republic Airways, 547 B.R. 578, 582 (Bankr. S.D.N.Y. 2016); In re Grubb & Ellis Co., 2012 WL 1036071 at *4 (Bankr. S.D.N.Y March 27, 2012).  "The ability to reject provides the trustee or debtor-in-possession with the means to relieve the estate of the duty to perform on burdensome obligations at the expense of all of the estate's other creditors, and to avoid the incurrence of additional administrative expenses which lack a corresponding benefit to the estate."  In re Ames Dept. Stores, Inc., 306 B.R. 43, 51-52 (Bankr. S.D.N.Y. 2004).

13.    The standard applied to determine whether the rejection of an unexpired lease should be authorized is the "business judgment" standard.  See In re Old Carco LLC, 470 B.R. 688, 703 (S.D.N.Y. 2012) (business judgment standard "applies when a Bankruptcy Court approves a debtor's assumption or rejection of a contract"); In re Republic Airways, 547 B.R. at 582; In re Delta Airlines, Inc., 359 B.R. 468, 476 (Bankr. S.D.N.Y. 2006) ("By case law, the

6

standard for deciding a motion to reject an executory contract under Section 365(a) is the business judgment rule"); In re Enron Corp., No. 01 B 16034 (AJG), 2006 WL 898033, at *4 (Bankr. S.D.N.Y. Mar. 24, 2006) ("In determining whether to approve a [debtor's] decision to reject such lease or contract, a court applies the 'business judgment' test which is met if the rejection is beneficial to the estate."). The business judgment standard requires a court to approve a debtor's business decision unless that decision is the product of bad faith, whim, or caprice. See, e.g., Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores, Inc.), 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996). Courts defer to a debtor's business judgment in rejecting an unexpired lease, and they generally will not second-guess a debtor's business judgment concerning rejection. See e.g., In re MF Global Holdings Ltd., 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012); Delta, 359 B.R. at 476 (business judgment rule "basically means that if [rejection] makes sense for the debtor in the judgment of management, the motion to reject will be granted"); In re Balco Equities Ltd., Inc., 323 B.R. 85, 98 (Bankr. S.D.N.Y. 2005) ("A court 'should defer to a debtor's decision that rejection of a contract would be advantageous unless the decision is so unreasonable that it could not be based on sound business judgment, but only on bad faith or whim.'") (quoting In re Sundial Asphalt Co., 147 B.R. 72, 84 (Bankr. E.D.N.Y. 1992)).

14.     Sound business judgment generally requires rejection where an executory contract or an unexpired lease is burdensome to the debtor's estate and the rejection would relieve the estate of such burden. See, e.g., In re Orion Pictures, 4 F.3d at 1098–99; In re Stable Mews Assocs., Inc., 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984). More specifically, bankruptcy courts have often authorized airline debtors to reject burdensome aircraft leases. See, e.g., In re Peninsula Airways, Inc., No. 17-282 (GS) (Bankr. D. Alaska Sept. 8, 2017) [Dkt. No. 117] (pre-approving rejection of multiple aircraft leases, subject to negotiations with lessors); In re Nw. Airlines Corp., No. 05-

17930 (ALG) (Bankr. S.D.N.Y. Oct. 20, 2005) [Dkt. No. 750] (same); In re US Airways Grp.,
Inc., 287 B.R. 643 (Bankr. E.D. Va. 2002) (same); see also In re AMR Corp., No. 11-15463 (SHL)
(Bankr. S.D.N.Y. Dec. 23, 2011) [Dkt. No. 454] (granting motion to reject multiple aircraft leases);
In re Arrow Air, Inc., No. 10-28831 (AJC) (Bankr. S.D. Fla. July 20, 2010) (granting motion to
reject multiple aircraft and engine leases on expedited basis) [Dkt. No. 111].

15.     As set forth above, the Debtors have determined that the leased Excess Aircraft are
no longer required for a viable business plan, while retaining the Excess Aircraft would impose
material insurance and maintenance costs on the estates, for no corresponding value.  In contrast,
rejection of the Excess Aircraft leases will represent a significant annual cost savings to the
Debtors' estates.  Accordingly, rejection of the applicable leases effective as of the Petition Date
represents a proper exercise of the Debtors' business judgment as it will minimize the
administrative costs of the Debtors' estates and be in the best interests of the Debtors' estates and
creditors.

**B.    Abandonment of the Owned Excess Aircraft Constitutes
Sound Exercise of the Debtors' Business Judgment**

16.     Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing,
the trustee may abandon any property of the estate that is burdensome to the estate or that is of
inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).  Courts give great deference
to the decisions of debtors in possession to abandon personal property under section 554.  See In re
Vel Rey Props., Inc., 174 B.R. 859, 867 (Bankr. D.D.C. 1994) ("Clearly, the court should give
deference to the trustee's judgment in such matters.").  Unless the property is harmful to the public,
once the debtors in possession have shown that the property is burdensome or of inconsequential
value and benefit, the court should approve the abandonment.  Id. at 868.

17.     More specifically, bankruptcy courts have often authorized airline debtors to abandon aircraft subject to burdensome debt.  See, e.g., In re Northwest Airlines Corp., No. 05-17930 (ALG) (Bankr. S.D.N.Y. Oct. 20, 2005) [Dkt. No. 750]; In re US Airways Grp., Inc., 287 B.R. 643 (Bankr. E.D. Va. 2002).  The test is whether the owned Excess Aircraft are burdensome or of inconsequential value to the Debtors' estates.  11 U.S.C. § 554(a).

18.     In this case, because the owned Excess Aircraft are not needed under the Debtors' business plan and the Debtors do not have any equity in any of the owned Excess Aircraft, the owned Excess Aircraft are burdensome to the Debtors' estates.  This assessment reflects a business judgment made in good faith by the Debtors.  Abandonment of the owned Excess Aircraft is, therefore, in the best interests of the Debtors' estates.

**C.     The Proposed Turnover Procedures Are Reasonable**

19.     To preserve the value of the Excess Aircraft during the transition from the Debtors to the affected lessors or lenders, the Debtors expect to maintain their existing insurance coverage and continue the existing storage maintenance program as to each Excess Aircraft until the earlier of (i) the fifteenth (15th) day after the date of the order granting this Motion; or (ii) the date on which the applicable lessor or lender takes possession of such Excess Aircraft.  Furthermore, the Excess Aircraft are immediately available for the applicable lessors' and lenders' possession.

20.     The Debtors believe that the proposed coverage periods during which the Debtors will continue paying insurance and maintenance costs with respect to the Excess Aircraft and the proposed procedures for turning over the Excess Aircraft to the applicable lessors or lenders are reasonable.  Fifteen days from the date of the order (plus the notice period from the date this Motion is filed) is a reasonable period of time for lessors and lenders to reclaim aircraft.  In each instance, the lessors and lenders will be protected from loss during the transitional period.

21.     The Debtors have provided information on **Exhibit C** hereto that will assist the lessors' and lenders' in retrieving the Excess Aircraft.  The lessors and lenders must remove such Excess Aircraft from the location designated on **Exhibit C**.  If a lessor or lender does not retrieve the Excess Aircraft within fifteen (15) days of the date of entry of the order granting this Motion, such lessor or lender shall be responsible for the costs of storing such equipment and other attendant costs as determined by the Debtors, including the costs of insuring the relevant Excess Aircraft.  If the lessor does not remove its Excess Aircraft or make timely payments for storage, the Debtors may file a motion to compel removal of the Excess Aircraft and/or payment of storage and other attendant costs.

22.     Upon written request by an affected lessor or lender, the Debtors will cooperate reasonably with such party with respect to the execution of, or provision of, information required for a lease termination document or other documentation, as appropriate, to be filed with the Federal Aviation Administration (the "FAA") in connection with such Excess Aircraft. However, the affected lessor or lender shall be solely responsible for all costs associated with such documentation and for the filing thereof with the FAA.

**D.    Rejection and Abandonment of the Excess Aircraft *Nunc Pro Tunc*
to the Date of the Motion is Appropriate Under the Circumstances**

23.     The Debtors respectfully submit that the rejection and abandonment requested in this Motion should become effective, with respect to the Excess Aircraft, *nunc pro tunc* to the date of this Motion.

24.     Sections 365 does not specifically address whether the Court may deem rejections effective *nunc pro tunc* to dates prior to entry of the order authorizing the rejection.  However, courts have consistently held that bankruptcy courts may, in their discretion, authorize *nunc pro tunc* rejections when principles of equity so dictate.  See, e.g., In re Thinking Machines Corp., 67

10

F. 3d 1021, 1028 (1st Cir. 1995) ("In the section 365 context, . . . bankruptcy courts may enter

retroactive orders of approval, and should do so when the balance of equities preponderates in

favor of such remediation."); In re CCI Wireless, LLC, 297 B.R. 133, 140 (Bankr. D. Colo. 2003)

(holding that "because section 365 does not, as a matter of law, prohibit selection of a retroactive

date for rejection, the bankruptcy court has authority under section 365(d)(3) to set the effective

date of rejection at least as early as the filing date of the motion to reject.").

25.     With respect to abandonment, "[t]he consequence of abandonment under § 554 is

clear: 'The estate has no interest in, and does not administer, abandoned property." In re Buerge,

2013 WL 4409698, *3 (Bankr. D. Kan. Aug. 13, 2013) (quoting In re Dewsnup, 908 F.2d 588-

5901-91 (10th Cir. 1990), aff'd sub nom. Dewsnap v. Timm, 502 U.S. 410 (1992) ("Abandonment

is effective retroactively to the petition date . . ."); see also, e.g., In re Renaissance Stone Works,

LLC, 373 B.R. 817, 820 (Bankr. E.D. Mich. 2007) ("Many cases hold that abandoned property

reverts *nunc pro tunc* to its prepetition status as if no bankruptcy had been filed."); In re Dewsnup,

908 F.2d at 590 ("[P]roperty abandoned under [section 554] ceases to be part of the estate . . . and

stands as if no bankruptcy petition was filed.").

26.     In this instance, the balance of equities strongly favors the relief requested herein.

The Debtors, with the assistance of their advisors, have closely reviewed their aircraft portfolio,

analyzed the associated costs and benefits, and determined that the Excess Aircraft are no longer

beneficial to their estates.  The Debtors sought the relief requested herein on the earliest possible

date in these Chapter 11 Cases, and without a retroactive date of rejection, there is risk that the

Debtors could be forced to incur unnecessary administrative costs for leases that provide no

tangible benefit to their estates.  The Debtors have no need for the Excess Aircraft under their go-

forward business plan; such costs would thus be a drain on their estates.  Moreover, counterparties

to the relevant leases will not be unduly prejudiced if the rejections are deemed effective retroactively to the date of filing this Motion since they will receive notice of this Motion and have sufficient opportunity to act accordingly.

27.     Courts in this jurisdiction have regularly granted the type of *nunc pro tunc* relief requested here.  See, e.g., In re Republic Airways Holdings, No. 16-10429 (Bankr. S.D.N.Y. Feb. 25, 2016) (SHL) [Dkt. Nos. 215, 370, 565] (authorizing retroactive rejection of aircraft equipment lease and abandonment of related equipment); In re AMR Corporation, No. 11-15463 (Bankr. S.D.N.Y. Dec. 23, 2011) (SHL) [Dkt. No. 454] (authorizing retroactive rejection of aircraft equipment leases); In re Northwest Airlines Corporation, No. 05-17930 (Bankr. S.D.N.Y. Oct. 13, 2005) [Dkt. Nos. 672, 713, 750, 824, 1135, 1327] (authorizing retroactive rejection of aircraft leases and abandonment of certain aircraft); In re Delta Air Lines, Inc., No. 05-17923 (Bankr. S.D.N.Y. Sep. 16, 2005) (PCB) [Dkt. Nos. 164, 165, 167, 170] (same, *nunc pro tunc* to the Petition Date); see also e.g., In re BCBG Max Azria Global Holdings LLC, No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017) [Dkt. No. 249] (authorizing rejection of corporate aircraft lease effective *nunc pro tunc* to the Petition Date); In re Square Two Financial Services Corporation, No. 17-10659 (JLG) (Bankr. S.D.N.Y. Apr. 28, 2017) [Dkt. No. 165] (same); In re Eastman Kodak Company, No. 12-10202 (ALG) (Bankr. S.D.N.Y. Feb. 15, 2012) [Dkt. No. 368] (same).

28.     Based on the foregoing, the Debtors respectfully submit that the relief requested in this Motion, including the proposed rejections and abandonments of the Excess Aircraft *nunc pro tunc* to the date of filing this Motion, is necessary and appropriate, in the best interest of the Debtors' estates, and should be granted.

## **RESERVATION OF RIGHTS**

29.      Nothing contained herein is intended to be or shall be construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's right to dispute any claim; or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

## **NOTICE**

30.      Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the Southern District of New York; (b) the Debtors' five (5) largest prepetition secured lenders or any agent therefor; (c) creditors holding the forty (40) largest unsecured claims as set forth in the consolidated list filed with the Debtors' petitions; (d) those parties requesting notice pursuant to Bankruptcy Rule 2002; (e) the Office of the United States Attorney General for the Southern District of New York; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) the Federal Aviation Administration; and (i) each lessor and sublessor counterparty listed on **Exhibit C**.

31.      In light of the nature of the relief requested, the Debtors submit that no further notice need be given.

## **NO PRIOR REQUEST**

32.      No prior request for the relief sought in this Motion has been made to this or to any other court.

*[Concluded on Following Page]*

## **CONCLUSION**

WHEREFORE, the Debtors request that this Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as is just and proper.

Dated:  New York, New York
        May 10, 2020

MILBANK LLP

/s/ Evan Fleck
Dennis F. Dunne
Evan R. Fleck
MILBANK LLP
55 Hudson Yards
New York, New York 10001
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219

- and -

Gregory A. Bray
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone:  (424) 386-4000
Facsimile:  (213) 629-5063

*Proposed Counsel for Debtors and
Debtors-in-Possession*

**EXHIBIT A**

**<u>Proposed Order</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                                    :
In re:                                              :    Chapter 11
                                                    :
AVIANCA HOLDINGS S.A., et al.¹                      :    Case No. 20-11133 (MG)
                                                    :
                           Debtors.                 :    (Jointly Administered)
                                                    :
------------------------------------------------------------------x
```

### ORDER AUTHORIZING THE DEBTORS TO (I) REJECT
### CERTAIN AIRCRAFT LEASES AND (II) ABANDON CERTAIN AIRCRAFT

Upon consideration of the motion (the "Motion")² of the above-captioned debtors and

debtors-in-possession (the "Debtors"), seeking entry of an order pursuant to sections 365 and 554

of the Bankruptcy Code authorizing the Debtors to (a) reject certain aircraft leases and (b) abandon

certain aircraft, all as more fully set forth in the Motion; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334

and the *Amended Standing Order of Reference from the United States District Court for the*

*Southern District of New York*, dated February 1, 2012; and it appearing that venue of these chapter

---

¹ The Debtors in these chapter 11 cases, and each Debtor's federal tax identification number (to the extent applicable), are as follows: Avianca Holdings S.A. (N/A); Aero Transporte de Carga Unión, S.A. de C.V. (N/A); Aeroinversiones de Honduras, S.A. (N/A); Aerovías del Continente Americano S.A. Avianca (N/A); Airlease Holdings One Ltd. (N/A); America Central (Canada) Corp. (00-1071563); America Central Corp. (65-0444665); AV International Holdco S.A. (N/A); AV International Holdings S.A. (N/A); AV International Investments S.A. (N/A); AV International Ventures S.A. (N/A); AV Investments One Colombia S.A.S. (N/A); AV Investments Two Colombia S.A.S. (N/A); AV Taca International Holdco S.A. (N/A); Avianca Costa Rica S.A. (N/A); Avianca Leasing, LLC (47-2628716); Avianca, Inc. (13-1868573); Avianca-Ecuador S.A. (N/A); Aviaservicios, S.A. (N/A); Aviateca, S.A. (N/A); Avifreight Holding Mexico, S.A.P.I. de C.V. (N/A); C.R. Int'l Enterprises, Inc. (59-2240957); Grupo Taca Holdings Limited (N/A); International Trade Marks Agency Inc. (N/A); Inversiones del Caribe, S.A. (N/A); Isleña de Inversiones, S.A. de C.V. (N/A); Latin Airways Corp. (N/A); Latin Logistics, LLC (41-2187926); Nicaraguense de Aviación, Sociedad Anónima (Nica, S.A.) (N/A); Regional Express Américas S.A.S. (N/A); Ronair N.V. (N/A); Servicio Terrestre, Aereo y Rampa S.A. (N/A); Servicios Aeroportuarios Integrados SAI S.A.S. (92-4006439); Taca de Honduras, S.A. de C.V. (N/A); Taca de México, S.A. (N/A); Taca International Airlines S.A. (N/A); Taca S.A. (N/A); Tampa Cargo S.A.S. (N/A); Technical and Training Services, S.A. de C.V. (N/A). The Debtors' principal offices are located at Avenida Calle 26 # 59 – 15 Bogotá, Colombia.

² Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

1

11 cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the Motion, the First Day Declaration, and the Hughes Declaration; and upon the statements of counsel in support of the relief requested in the Motion at the hearing before the Court; and all of the proceedings had before the Court; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED and approved in all respects.

2.      Pursuant to section 365 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 6006, and subject to the terms of this Order, each of the leases for the leased Excess Aircraft identified on **<u>Exhibit C</u>** to the Motion is hereby rejected, effective as of the Petition Date.

3.      Pursuant to section 554 of the Bankruptcy Code, and subject to the terms of this Order, the owned Excess Aircraft identified on **<u>Exhibit C</u>** to the Motion are hereby abandoned, effective as of the Petition Date.

4.      In connection with rejection or abandonment of any Excess Aircraft, the Debtors shall make the records and documents related to such aircraft available to the applicable lessor or lender.

5.      If any of the Excess Aircraft happens to be non-serviceable, the Debtors are under no obligation to repair any such Excess Aircraft to make it serviceable.

6.      Upon written request by an affected lessor or lender, the Debtors shall cooperate reasonably with respect to the execution of or provision of information required for a lease termination document or other documentation, as appropriate, to be filed with the FAA in connection with the Excess Aircraft, but the affected lessor or lender shall be solely responsible for all costs associated with such documentation and for the filing thereof with the FAA.

7.      If an affected lessor or lender does not retrieve its Excess Aircraft within fifteen (15) days of the date of this Order, such lessor or lender shall be responsible for the costs of storing such equipment and other attendant costs as determined by the Debtors, including the costs of insuring the relevant Excess Aircraft.  If the lessor does not remove its Excess Aircraft or make timely payments for storage, the Debtors may file a motion to compel removal of the Excess Aircraft and/or payment of storage and other attendant costs.

8.      To the extent necessary, the automatic stay of section 362 of the Bankruptcy Code is hereby modified to allow the Debtors and the applicable lessors and lenders to effectuate the provisions of this Order and to transfer, move or dispose of the abandoned property and property subject to rejected leases.

9.      Claims arising out of any rejection effected pursuant to this order must timely be filed in accordance with any order pursuant to Rule 3003(c) of the Federal Rules of Bankruptcy Procedure establishing a deadline by which prepetition general unsecured claims must be filed, on or before such deadline.

10.     Notwithstanding anything to the contrary contained herein, any payment made or to be made, and authorization contained in this Order shall be subject to the requirements imposed on the Debtors under any approved debtor-in-possession financing facility, any order regarding

3

the Debtors' postpetition financing or use of cash collateral, and any budget in connection therewith.

11.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any party.

12.     The Debtors are authorized and empowered to take all actions necessary to implement the relief requested in this Order.

13.     This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Order.

Dated: _____, 2020

_____
UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT B**

**Hughes Declaration**

Dennis F. Dunne
Evan R. Fleck
MILBANK LLP
55 Hudson Yards
New York, NY 10001
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219

Gregory Bray
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile:  (213) 629-5063

*Proposed Counsel for Debtors and
Debtors-In-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
: 
In re:                                                                    :        Chapter 11
:
AVIANCA HOLDINGS S.A., *et al.*,[1]              :        Case No. 20-11133 (MG)
:
Debtors.                         :        (Joint Administration Requested)
:
-------------------------------------------------------------x

## DECLARATION OF GINGER HUGHES
## IN SUPPORT OF DEBTORS' FIRST OMNIBUS MOTION
## FOR AN ORDER AUTHORIZING THEM TO (I) REJECT
## CERTAIN AIRCRAFT LEASES AND (II) ABANDON CERTAIN AIRCRAFT

Ginger Hughes, pursuant to section 1746, title 28, United States Code, hereby

declares under penalty of perjury as follows:

---

[1]    The Debtors in these chapter 11 cases, and each Debtor's federal tax identification number (to the extent applicable), are as follows: Avianca Holdings S.A. (N/A); Aero Transporte de Carga Unión, S.A. de C.V. (N/A); Aeroinversiones de Honduras, S.A. (N/A); Aerovías del Continente Americano S.A. Avianca (N/A); Airlease Holdings One Ltd. (N/A); America Central (Canada) Corp. (00-1071563); America Central Corp. (65-0444665); AV International Holdco S.A. (N/A); AV International Holdings S.A. (N/A); AV International Investments S.A. (N/A); AV International Ventures S.A. (N/A); AV Investments One Colombia S.A.S. (N/A); AV Investments Two Colombia S.A.S. (N/A); AV Taca International Holdco S.A. (N/A); Avianca Costa Rica S.A. (N/A); Avianca Leasing, LLC (47-2628716); Avianca, Inc. (13-1868573); Avianca-Ecuador S.A. (N/A); Aviaservicios, S.A. (N/A); Aviateca, S.A. (N/A); Avifreight Holding Mexico, S.A.P.I. de C.V. (N/A); C.R. Int'l Enterprises, Inc. (59-2240957); Grupo Taca Holdings Limited (N/A); International Trade Marks Agency Inc. (N/A); Inversiones del Caribe, S.A. (N/A); Isleña de Inversiones, S.A. de C.V. (N/A); Latin Airways Corp. (N/A); Latin Logistics, LLC (41-2187926); Nicaraguense de Aviación, Sociedad Anónima (Nica, S.A.) (N/A); Regional Express Américas S.A.S. (N/A); Ronair N.V. (N/A); Servicio Terrestre, Aereo y Rampa S.A. (N/A); Servicios Aeroportuarios Integrados SAI S.A.S. (92-4006439); Taca de Honduras, S.A. de C.V. (N/A); Taca de México, S.A. (N/A); Taca International Airlines S.A. (N/A); Taca S.A. (N/A); Tampa Cargo S.A.S. (N/A); Technical and Training Services, S.A. de C.V. (N/A).  The Debtors' principal offices are located at Avenida Calle 26 # 59 – 15 Bogotá, Colombia.

1.     I am a Managing Director of Seabury International Corporate Finance LLC ("Seabury").  I have been employed by Seabury or its affiliates since 2002.  I submit this Declaration in support of the *Debtors' First Omnibus Motion for an Order Authorizing Them to (I) Reject Certain Aircraft Leases and (II) Abandon Certain Aircraft* (the "Motion"), which was filed with the Court concurrently herewith.[2]

2.     Prior to joining Seabury, I was a Senior Manager in Ernst & Young's global airline group, where my clients included Southwest Airlines, British Airways, and American Airlines.  I led evaluation teams for various completed and proposed transactions, including the American Airlines/British Airways alliance, the British Airways/Qantas Airlines joint services agreement, and the LOT Polish Airlines and Iberia Airlines privatizations.

3.     As a Managing Director at Seabury, I have advised several major airlines during their restructuring processes.  I have worked on many bankruptcy cases in the airline industry over the past several years, including US Airways, Air Canada, Northwest Airlines, Frontier Airlines, Pinnacle Airlines (now Endeavor), and Republic Airways.  I have advised dozens of industry-leading airlines on matters relating to strategic alternatives, business plan analyses, and overall operating cost structure, and I have evaluated and renegotiated thousands of supplier-side contracts on behalf of my clients, helping them to develop cost-effective contractual relationships as part of their overall restructurings. I also served as acting Chief Financial Officer of Pinnacle Airlines during its successful restructuring and sale to Delta Airlines.

4.     Seabury has acted as strategic and financial advisor for the Debtors both prior to the commencement of these cases and thereafter.  I have extensive knowledge of the matters discussed herein based upon my work with the Debtors as their advisor and, specifically, my

---

[2]    Capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

review of the Debtors' aircraft portfolio.  This review included consideration of the effect of the

COVID-19 pandemic on its aircraft portfolio and the costs associated therewith.

5.      The Debtors operate a diverse fleet of commercial aircraft, many of which are

subject either to secured debt or lease financing arrangements.  Prior to the shutdown caused by

the COVID-19 pandemic, the Debtors were offering passenger and cargo service on more than

5,350 weekly flights to more than 76 destinations in 27 countries.  As of December 31, 2019,

Avianca operated a modern fleet of 156 aircraft (143 jet passenger aircraft and 13 cargo aircraft,

excluding 15 turboprop aircraft), mainly from the Airbus family.

6.      The Debtors are now analyzing their flight schedules and aircraft fleet, the projected

demand for air travel, maintenance requirements, labor costs, operating costs and other business

goals and objectives.  Through this analysis and with Seabury's assistance, they intend to

(i) rationalize costs relating to aircraft lease and debt obligations and (ii) match their aircraft fleet

to future operating needs.  The Debtors realize that they need to adjust their fleet size and mix in

light of the current COVID-19-driven market conditions for aircraft, projected demand for air

travel, current and projected flight schedules, maintenance requirements, labor costs, and other

business and economic factors.  Based on current market conditions, a significant reduction in the

Debtors' fleet size and related expenses is required to improve the Debtors' financial position and

flexibility.  The Debtors expect that, while the airline industry will eventually recover, the recovery

will be slow.  After the initial demand shock and slow return to service, the Debtors anticipate air

travel demand will stabilize at 20-30% below pre-COVID-19 levels.  As a result, a significant

number of the Debtors' aircraft will be surplus to the business need.

7.      Prior to the Petition Date, the Debtors identified certain aircraft under existing lease

or debt terms which are not of benefit to the estates.  The Debtors' fleet review process is not

complete, is inherently dynamic and is expected to result in additional aircraft being returned to lessors and lenders in order to match fleet requirements with current market dynamics.

8.    Since the Petition Date, the Debtors have identified certain Excess Aircraft, listed on **Exhibit C** to the Motion, and have determined that it is not in the best interests of their estates to retain the owned Excess Aircraft (in which they have no equity) or to continue to lease the leased Excess Aircraft.  The owned Excess Aircraft are burdensome to the Debtors' estates because they are not required under the Debtors' business plan and the Debtors do not have any equity in any of the owned Excess Aircraft.  The evaluation of Excess Aircraft included considering (1) whether each aircraft is surplus in a post-COVID-19 demand environment, (2) whether each aircraft is optimally suited for post-COVID flight operations from the Debtors' Bogotá hub, and (3) whether each aircraft exposes the Debtors to risk of carry cost.  The Excess Aircraft are burdensome to the Debtors' estates under these criteria.  Some Excess Aircraft have been taken out of service due to their age, condition, lease terms, and/or maintenance costs, and play no part in the Debtors' plans.  Many of the rest have been in storage due to the flight suspension caused by the COVID-19 pandemic, and, after emerging from these Chapter 11 Cases, will not be required to carry out what Avianca has stated will be a post-chapter 11 strategy of seeking to rebuild its network at a measured pace, consistent with the rebound in demand for air transport services, while reducing the overall size and complexity of the Company's fleet, network, and corporate operations.  Rejecting these leases is therefore in the best interests of the Debtors' estates since there is no business case to renew these leases.

9.    In my business judgment, the Debtors' abandonment of the owned Excess Aircraft and rejection of the leases for the leased Excess Aircraft are appropriate steps that are in the best interests of the Debtors' estates.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 10th day of May, 2020
in New York, New York

/s/ Ginger Hughes_____
Ginger Hughes

**EXHIBIT C**

**Excess Aircraft**

| Reg. No | MSN | Aircraft Mfr. & Model | Engine Mfr. & Model | ESN #1 | ESN #2 | Location of Airframe and Engines[1] | Lessee Entity | Lessor Counterparty; Sublessor Counterparty (if applicable)[2] | Lessor Address | Owner (if different than Lessor) | Security Trustee/Security Agent | Is the Lessee the Operator? (Y/N). If not, list Operator. | Is there any sublease to a non-affiliated entity? (Y/N) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| N803AV | 1357 | Airbus A330-343 | Rolls-Royce plc Model RB211 Trent 772B-60 | 42122 | 42150 | Airframe: MDE ESN #1: MDE ESN#2: MDE | Avianca (Sublessee) | APF 3 PROJEKT NR. 2 GMBH (Head Lessor)<br><br>Wells Fargo Trust Company, National Association, as owner trustee (Sublessor) | APF 3 Projekt No. 2 GmbH Toelzer Str. 15 82031 Gruenwald Germany Attention: Managing Director Email: contracts@goal-leasing.de<br><br>Wells Fargo Trust Company, National Association 299 South Main Street, 5th Floor MAC: U1228-051 Salt Lake City, Utah, 84111 Attention: Corporate Trust Department Email: ctsleasegroup@wellsfargo.com | N/A | Norddeutsche Landesbank Girozentrale | Y; Avianca (Sublessee) | N |
| N804AV | 1378 | Airbus A330-343 | Rolls-Royce plc Model RB211 Trent 772B-60 | 42149 | 42124 | Airframe: MDE ESN #1: MDE ESN#2: MDE | Avianca (Sublessee) | APF 1 PROJEKT NR. 11 GMBH (Head Lessor)<br><br>Wells Fargo Trust Company, National Association, as owner trustee (Sublessor) | APF 1 Projekt No. 11 GmbH Toelzer Str. 15 82031 Gruenwald Germany Attention: Managing Director Email: contracts@goal-leasing.de<br><br>Wells Fargo Trust Company, National Association 299 South Main Street, 5th Floor MAC: U1228-051 Salt Lake City, Utah, 84111 Attention: Corporate Trust Department Email: ctsleasegroup@wellsfargo.com | N/A | Norddeutsche Landesbank Girozentrale | Y; Avianca (Sublessee) | N |

---

[1]    IATA Airport Codes:  BAQ (Ernesto Cortissoz International Airport, Barranquilla, Colombia); BOG (El Dorado International Airport, Bogota, Colombia); CLO (Alfonso Bonilla Aragon International Airport, Cali, Colombia); MDE (Jose Maria Cordova International Airport, Medellin, Colombia); GE Celma (GE's maintenance and repair facility, Petropolis, Brazil); GYE (José Joaquín de Olmedo International Airport, Guayaquil, Ecuador); GYR (Phoenix Goodyear *Airport); and* UIO (Mariscal Sucre International Airport, Quito, Ecuador).

[2]    Sublessor information to be included if the transaction structure has a head lease / sublease structure wherein the sublessee is the operating airline.

| N805AV | 6009 | Airbus A321-231 | International Aero Engines AG Model IAE-V2533-A5 | V17136 | V17137 | Airframe: MDE ESN #1: MDE ESN#2: MDE | Avianca (Sublessee) | APF 4 PROJEKT NR. 7A GMBH (Head Lessor) | APF 4 Projekt No. 7 GmbH Toelzer Str. 15 82031 Gruenwald Germany Attention: Managing Director Email: contracts@goal-leasing.de | N/A | Norddeutsche Landesbank Girozentrale | Y; Avianca (Sublessee) | N |
| | | | | | | | | Wells Fargo Trust Company, National Association., as owner trustee (Sublessor) | Wells Fargo Trust Company, National Association 299 South Main Street, 5th Floor MAC: U1228-051 Salt Lake City, Utah, 84111 Attention: Corporate Trust Department Email: ctsleasegroup@wellsfargo.com | | | | |
| N810AV | 6294 | Airbus A321-231 | International Aero Engines AG Model IAE-V2533-A5 | V17436 | V17441 | Airframe: BAQ ESN #1: BAQ ESN#2: BAQ | Avianca (Sublessee) | APF 4 PROJEKT NR. 7B GMBH (Head Lessor) | APF 4 Projekt No. 7 GmbH Toelzer Str. 15 82031 Gruenwald Germany Attention: Managing Director Email: contracts@goal-leasing.de | N/A | Norddeutsche Landesbank Girozentrale | Y; Avianca (Sublessee) | N |
| | | | | | | | | Wells Fargo Trust Company, National Association, as owner trustee (Sublessor) | Wells Fargo Trust Company, National Association 299 South Main Street, 5th Floor MAC: U1228-051 Salt Lake City, Utah, 84111 Attention: Corporate Trust Department Email: ctsleasegroup@wellsfargo.com | | | | |
| N499TA | 3510 | Airbus A320-233 | International Aero Engines AG Model IAE V2527E-A5 | V12942 | V12943 | Airframe: GYR ESN #1: GYR ESN#2: GYR | TACA | Wells Fargo Trust Company, National Association, as owner trustee | Wells Fargo Trust Company, National Association 299 South Main Street, 5th Floor MAC: U1228-051 Salt Lake City, Utah, 84111 Attention: Corporate Trust Department Email: ctsleasegroup@wellsfargo.com | | Credit Lyonnais | Y | N |
| | | | | | | | | | With a copy to: | | | | |
| | | | | | | | | | AerCap Group Services, Inc. 100 NE Third Avenue, Suite 800 Fort Lauderdale, FL 33301 USA Attention: Legal Counsel Fax: +1 954-760-7716 Telephone: +1 954-760-7777 | | | | |
| | | | | | | | | | AerCap Ireland Limited | | | | |

2

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | AerCap House<br>Shannon, County Clare<br>Ireland<br>Attention: Legal Counsel<br>Fax: +353 61 723 850<br>Telephone: +353 61 723 600 | | | | |
| N680TA | 3538 | Airbus A320-233 | International Aero Engines AG Model IAE V2527E-A5 | V12973 | V12975 | Airframe: MDE<br>ESN #1: MDE<br>ESN#2: MDE | TACA | Wells Fargo Trust Company, National Association, as owner trustee | Wells Fargo Trust Company, National Association<br>299 South Main Street, 5th Floor<br>MAC: U1228-051<br>Salt Lake City, Utah, 84111<br>Attention: Corporate Trust Department<br>Email:<br>ctsleasegroup@wellsfargo.com<br><br>With a copy to:<br>AerCap Group Services, Inc.<br>100 NE Third Avenue, Suite 800<br>Fort Lauderdale, FL 33301 USA<br>Attention: Legal Counsel<br>Fax: +1 954-760-7716<br>Telephone: +1 954-760-7777<br><br>AerCap Ireland Limited<br>AerCap House<br>Shannon, County Clare<br>Ireland<br>Attention: Legal Counsel<br>Fax: +353 61 723 850<br>Telephone: +353 61 723 600 | | Credit Lyonnais | Y | N |
| HC-CKN | 1882 | Airbus A319-112 | CFM International, Inc. Model CFM56-5B6/P | 575516 | 575517 | Airframe: MDE<br>ESN #1: MDE<br>ESN#2: MDE | Avianca Ecuador S.A. | WILMINGTON TRUST SP SERVICES (DUBLIN) LIMITED, as trustee | WILMINGTON TRUST SP SERVICES (DUBLIN) LIMITED<br>First Floor, 7 Exchange Place<br>IFSC<br>Dublin 1<br>Ireland<br>Attn: Lease Management<br>Fax: +353 1 612-5550<br>E-Mail: ilfc@wtc.com<br><br>AIRCRAFT 32A-1882 (IRELAND) TRUST<br>C/O International Lease Finance Corporation<br>10250 Constellation Boulevard, Floor 34<br>Los Angeles, California 90067-6234<br>Attn: Legal Department | N/A | N/A | Y | N |

3

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Fax: +1 310 788-1990<br>Telephone: + 310-1990<br>Email: legalnotices@ilfc.com | | | | |
| HC-CLF | 2078 | Airbus A319-112 | CFM International, Inc. Model CFM56-5B6/P | 575691 | 575293 | Airframe:  MDE<br>ESN #1: MDE<br>ESN#2:  MDE | Avianca Ecuador S.A. | Wells Fargo Trust Company, National Association, as owner trustee | Wells Fargo Trust Company, National Association<br>299 South Main Street, 5th Floor<br>MAC: U1228-051<br>Salt Lake City, Utah, 84111<br>Attention: Corporate Trust Department<br>Email:<br>ctsleasegroup@wellsfargo.com<br><br>Zephyrus Capital Aviation Partners 1C Limited<br>c/o Zephyrus Aviation Capital Limited<br>Block A, George's Quay Plaza<br>George's Quay<br>Dublin 3, Ireland<br>Fax: +353 61 363682<br>Email:<br>Operations@ZACap.Aero<br><br>Zephyrus Aviation Capital LLC<br>1560 Sawgrass Corporate Parkway<br>Suite 400<br>Sunrise, Florida 33323<br>Attention: President & CEO<br>Fax: +1 (954) 314-0551<br>Email:<br>Operations@ZACap.Aero | | UMB Bank, N.A., as security trustee | Y | N |

| N536AV | 5360 | Airbus A320-214 | CFM International, Inc. Model CFM56-5B4/3 | 645350 | 645352 | Airframe: BOG ESN #1: GE CELMA ESN#2: BOG | Avianca | Wells Fargo Trust Company, National Association, as owner trustee | Wells Fargo Trust Company, National Association  299 South Main Street, 5th Floor MAC: U1228-051 Salt Lake City, Utah, 84111 Attention: Corporate Trust Department Email: ctsleasegroup@wellsfargo.com<br><br>With a copy to:<br><br>Tottori Word Cup Co., Ltd. c/o ORIX Aviation Systems Limited 2nd Floor, Booterstown Hall Booterstown Avenue County Dublin Ireland Fax: +353 1 670 0644 Email: legal@orix.ie Attention: Company Secretary / Senior Director - Legal<br><br>ORIX Corporation 4-1, Hamamatsucho 2-chome Minato-ku Tokyo Fax: +81 3 5419 0612 Attention: Managing Director, Aviation and Investment | N/A | ORIX Corporation | Y | N |
| N562AV | 5622 | Airbus A320-214 | CFM International, Inc. Model CFM56-5B4/3 | 645635 | 645640 | Airframe:  MDE ESN #1: MDE ESN#2:  MDE | Avianca | Wells Fargo Trust Company, National Association, as owner trustee | Wells Fargo Trust Company, National Association  299 South Main Street, 5th Floor MAC: U1228-051 Salt Lake City, Utah, 84111 Fax: +1 (801) 246 7142 Attention: Corporate Trust Department Email: ctsleasegroup@wellsfargo.com<br><br>With a copy to:<br><br>ORIX Aviation Systems Limited 2nd Floor, Booterstown Hall Booterstown Avenue County Dublin Ireland Fax: +353 1 670 0644 Email: legal@orix.ie Attention: Company Secretary / Senior Director - Legal | N/A | N/A | Y | N |

| N784AV | 37506 | Boeing 787-8 | Rolls-Royce plc Model Trent 1000-D | 10292 | 10294 | Airframe: BOG ESN #1: BOG ESN#2: BOG | Avianca | Wells Fargo Trust Company, National Association, as owner trustee | Wells Fargo Trust Company, National Association 299 South Main Street, 5th Floor MAC: U1228-051 Salt Lake City, Utah, 84111 Fax: +1 (801) 246 7142 Attention: Corporate Trust Department Email: ctsleasegroup@wellsfargo.com  With a copy to:  ORIX Aviation Systems Limited 2nd Floor, Booterstown Hall Booterstown Avenue County Dublin Ireland Fax: +353 1 670 0644 Email: legal@orix.ie Attention: Company Secretary/Senior Director – Legal | N/A | N/A | Y | N |
| N477AV | 5477 | Airbus A320-214 | CFM International, Inc. Model CFM-56-5B4/3 | 645460 | 645461 | Airframe: CLO ESN #1: CLO ESN#2: MED | Avianca | Wells Fargo Trust Company, National Association, as owner trustee | Wells Fargo Trust Company, National Association 299 South Main Street, 5th Floor MAC: U1228-051 Salt Lake City, Utah, 84111 Fax: +1 (801) 246 7142 Attention: Corporate Trust Department Email: ctsleasegroup@wellsfargo.com  With a copy to:  Body Work Co., Ltd. 2-25-6 Shirokanedai Minato-ku, Tokyo Japan Attention: Accounting Department E-mail: m.nakamura@bodywork-holdings.co.jp  ORIX Aviation Systems Limited 2nd Floor, Booterstown Hall Booterstown Avenue County Dublin Ireland Fax: +353 1 670 0644 Email: legal@orix.ie Attention: Company Secretary/Senior Director – Legal | N/A | MUFG Bank, Ltd., as mortgagee | Y | N |

6

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | MUFG Bank, Ltd. Ueno Commercial Banking Office Commercial Banking Division(No.1) Commercial Banking Department(No.2) 14-4, Higashiueno 1- chome, Taito-ku Tokyo 110-0015 Japan Facsimile +81-3-3832-3035 E-mail: hitoshi_2_miura@mufg.jp gou_4_satou@mufg.jp Attention: Manager relating to Body Work CO., Ltd. / one (1) Airbus A320-200 with MSN 5477  With a copy to:  MUFG Bank, Ltd. Solution Products Division Aviation, Shipping & Transportation Finance Department Aviation Finance Team JP Tower 2-7-2, Marunouchi, Chiyoda-ku Tokyo 100-0005 Japan Facsimile +81-3-3287-8205 E-mail: masayasu_tanimura@mufg.jp shigeru_miyanaka@mufg.jp hideyuki_yabe@mufg.jp daishi_fujimaru@mufg.jp Attention: Manager relating to Body Work CO., Ltd. /one (1) Airbus A320-200 with MSN 5477 | | | | | |
| HC-CJW | 4487 | Airbus A320-214 | CFM International, Inc. model CFM-56-5B4/3 | 643203 3 | 643205 4 | Airframe: UIO ESN #1: MDE ESN#2: GYE | Avianca (Lessee) | Wells Fargo Trust Company, National Association, as owner trustee (Lessor) | Wells Fargo Trust Company, National Association 299 South Main Street, 5th Floor MAC: U1228-051 Salt Lake City, Utah, 84111 Attention: Corporate Trust Department | N/A | N/A | N; Avianca Ecuador (Sublessee) | N | |

---

3    Engine is installed on MSN 5632.

4    Engine is installed on MSN 3408.

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | Email:<br>ctsleasegroup@wellsfargo.com<br><br>With a copy to:<br><br>Celestial Aviation Trading 23 Limited<br>c/o GE Capital Aviation Services Limited<br>Aviation House<br>Shannon, Co. Clare<br>Ireland<br>Attn: Contracts Leader<br>Fax: +353 61 706867<br>E-mail: asanotices@gecas.com | | | | |
| HC-CTR | 4599 | Airbus A320-214 | CFM International, Inc. model CFM-56-5B4/3 | 643352 | 643355 [5] | Airframe: GYE<br>ESN #1: MDE<br>ESN#2: GE Celma | Avianca (Lessee) | Wells Fargo Trust Company, National Association, as owner trustee (Lessor) | Wells Fargo Trust Company, National Association<br>299 South Main Street, 5th Floor<br>MAC: U1228-051<br>Salt Lake City, Utah, 84111<br>Attention: Corporate Trust Department<br>Email: ctsleasegroup@wellsfargo.com<br><br>With a copy to:<br><br>Celestial Aviation Trading 16 Limited<br>c/o GE Capital Aviation Services Limited<br>Aviation House<br>Shannon, Co. Clare<br>Ireland<br>Attn: Contracts Leader<br>Fax: +353 61 706867<br>E-mail: asanotices@gecas.com | N/A | N/A | N; Avianca Ecuador (Sublessee) | N |

---

[5]    Engine is located at GE Celma (yet not inducted into maintenance).