```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:                                                              FOR PUBLICATION

                                                                    Chapter 11
AVIANCA HOLDINGS S.A., et al.,[1]
                                                                    Case No. 20-11133 (MG)

                                                      Debtors.      (Jointly Administered)
----------------------------------------------------------------x
```

## MEMORANDUM OPINION APPROVING THIRD AMENDED DISCLOSURE STATEMENT, SOLICITATION PROCEDURES AND OTHER RELIEF

*A P P E A R A N C E S:*

MILBANK LLP
*Counsel for Debtors and Debtors-In-Possession*
55 Hudson Yards
New York, NY  10001
By:    Dennis F. Dunne, Esq.
       Evan R. Fleck, Esq.
       Benjamin Schak, Esq.
       Kyle R. Satterfield, Esq.

       and

2029 Century Park East
Los Angeles, CA  90067
By:    Gregory A. Bray, Esq.

---

[1] The Debtors in these chapter 11 cases, and each Debtor's federal tax identification number (to the extent applicable), are as follows: Avianca Holdings S.A. (N/A); Aero Transporte de Carga Unión, S.A. de C.V. (N/A); Aeroinversiones de Honduras, S.A. (N/A); Aerovías del Continente Americano S.A. Avianca (N/A); Airlease Holdings One Ltd. (N/A); America Central (Canada) Corp. (00-1071563); America Central Corp. (65-0444665); AV International Holdco S.A. (N/A); AV International Holdings S.A. (N/A); AV International Investments S.A. (N/A); AV International Ventures S.A. (N/A); AV Investments One Colombia S.A.S. (N/A); AV Investments Two Colombia S.A.S. (N/A); AV Taca International Holdco S.A. (N/A); Avianca Costa Rica S.A. (N/A); Avianca Leasing, LLC (47-2628716); Avianca, Inc. (13-1868573); Avianca-Ecuador S.A. (N/A); Aviaservicios, S.A. (N/A); Aviateca, S.A. (N/A); Avifreight Holding Mexico, S.A.P.I. de C.V. (N/A); C.R. Int'l Enterprises, Inc. (59-2240957); Grupo Taca Holdings Limited (N/A); International Trade Marks Agency Inc. (N/A); Inversiones del Caribe, S.A. (N/A); Isleña de Inversiones, S.A. de C.V. (N/A); Latin Airways Corp. (N/A); Latin Logistics, LLC (41-2187926); Nicaraguense de Aviación, Sociedad Anónima (Nica, S.A.) (N/A); Regional Express Américas S.A.S. (N/A); Ronair N.V. (N/A); Servicio Terrestre, Aereo y Rampa S.A. (N/A); Servicios Aeroportuarios Integrados SAI S.A.S. (92-4006439); Taca de Honduras, S.A. de C.V. (N/A); Taca de México, S.A. (N/A); Taca International Airlines S.A. (N/A); Taca S.A. (N/A); Tampa Cargo S.A.S. (N/A); Technical and Training Services, S.A. de C.V. (N/A).  The Debtors' principal offices are located at Avenida Calle 26 # 59 – 15 Bogotá, Colombia.

WILLKIE FARR AND GALLAGHER LLP
*Counsel for the Official Committee of Unsecured Creditors*
787 7th Avenue
New York, NY 10019-960
By:    Brett H. Miller, Esq.
        Todd M. Goren, Esq.

OFFICE OF THE UNITED STATES TRUSTEE, Region 2
201 Varick Street, Room 1006
New York, NY  10014
By:    Brian S. Masumoto, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

      Pending before the Court is the Debtors' motion for entry of an order (i) approving the disclosure statement; (ii) approving solicitation and voting procedures; (iii) approving forms of ballots; (iv) establishing procedures for allowing certain claims for voting purposes; (v) scheduling a confirmation hearing; and (vi) establishing notice and objection procedures. ("Motion," ECF Doc. # 1983.)  The Motion was filed with the Debtors' disclosure statement (the "Disclosure Statement," ECF Doc. # 1982) and plan (the "Plan," ECF Doc. # 1981) on August 10, 2021.  The Debtors have made additional filings and amendments in relation to this Motion.  On August 31, 2021, the Debtors filed the liquidation analysis as well as the financial projections.  (ECF Doc. # 2067.)  Subsequently, the Debtors' filed an amended disclosure statement (the "Amended Disclosure Statement," ECF Doc. # 2079) and an amended plan (the "Amended Plan," ECF Doc. # 2078).  On September 13, 2021, the Debtors filed a second amended disclosure statement (the "Second Amended Disclosure Statement," ECF Doc. # 2111) and a second amended plan of confirmation (the "Second Amended Plan," ECF Doc. # 2109).  On September 15, 2021, the Debtors filed a third amended disclosure statement (the "Third Amended Disclosure Statement," ECF Doc. # 2131) and a third amended plan (the "Third

2

Amended Plan," ECF Doc. # 2129), which addressed the issues raised by the Court during the September 14 hearing.

The deadline to object to the Motion was 4:00 p.m., September 7, 2021. On September 7, 2021, William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee") filed an objection. (The "United States Trustee Objection," ECF Doc. # 2086.) On September 13, 2021, the Debtors filed an omnibus reply. (The "Reply," ECF Doc. # 2114.)

For the reasons explained below, with some limited changes that the Court required to be made, the Third Amended Disclosure Statement is approved as containing adequate information. The solicitation and voting procedures, the procedures for allowance of claims for voting purposes, scheduling of the confirmation hearing, and the establishment of confirmation and objection procedures, are all likewise approved. The objections to the Second Amended Disclosure Statement are overruled. This Opinion deals with objections to the Disclosure Statement raised by the United States Trustee and by several other parties in informal, unfiled objections. It also addresses issues raised by the Court at several hearings. Obviously, other issues may arise and will be dealt with by the Court, if necessary, at the confirmation hearing. A separate Order approving the Third Amended Disclosure Statement and related relief will be entered.

## I. OVERVIEW OF THE PLAN

The Debtors represent that

> [t]he Plan is the result of extensive good faith negotiations, overseen by [Avianca Holdings S.A.'s] board of directors, among the Debtors and several of their key economic stakeholders. The Plan is supported by,

among others, [the Committee];[2] the Consenting Noteholders,[3] which collectively held a majority of the Debtors' 9.000% Senior Secured Notes due 2023 prior to giving effect to the DIP Roll-Up;[4] and a majority of the holders of Tranche B DIP Facility Claims.

(Third Amended Disclosure Statement at 2.)

The Plan specifies twenty-three classes of claims. A summary of the classes is below (italicized classes relate to Debtors that are not proposed to be substantively consolidated):

| Class | Description | Status | Voting Rights | Estimated Recovery |
|---|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | Presumed to accept | 100% |
| 2 | Other Secured Claims | Unimpaired | Presumed to accept | 100% |
| 3 | Engine Loan Claims | Impaired | **Entitled to vote** | 100% |
| 4 | Secured RCF Claims | Impaired | **Entitled to vote** | 100% |
| 5 | USAV Receivable Facility Claims | Unimpaired | Presumed to accept | 100% |
| 6 | Grupo Aval Receivable Facility Claims | Unimpaired | Presumed to accept | 100% |
| 7 | Grupo Aval Lines of Credit Claims | Impaired | **Entitled to vote** | 100% |
| 8 | Grupo Aval Promissory Note Claims | Unimpaired | Presumed to accept | 100% |
| 9 | Cargo Receivable Facility Claims | Unimpaired | Presumed to accept | 100% |
| 10 | Pension Claims | Unimpaired | Presumed to accept | 100% |
| 11 | General Unsecured Avianca Claims | Impaired | **Entitled to vote** | 1.0%-1.4%[5] |
| 12 | *General Unsecured Avifreight Claims* | *Unimpaired* | *Presumed to accept* | *100%* |

---

[2]  At the disclosure statement hearing on September 14, 2021, the Committee's counsel stated that the Committee supports approval of the Second Amended Disclosure Statement and recommends confirmation of the Second Amended Plan.
[3]  "Consenting Noteholders" means those holders of 2023 Notes and/or Tranche A DIP Facility Claims that are or become party to the Noteholder RSA, together with their respective successors and permitted assigns. (Third Amended Plan at 6 ¶ 46.)
[4]  "DIP Roll-Up" means the "roll-up" of $220 million of the 2023 Notes into the DIP Facility, as approved by the Bankruptcy Court pursuant to the Final DIP Order. (Third Amended Plan at 8 ¶ 66.)
[5]  These estimated recoveries assume that Class 11 votes to accept the Plan. (Third Amended Disclosure Statement at 5 n.4.)

| | | | | |
|---|---|---|---|---|
| 13 | *General Unsecured Aerounión Claims* | *Unimpaired* | *Presumed to accept* | *100%* |
| 14 | *General Unsecured SAI Claims* | *Unimpaired* | *Presumed to accept* | *100%* |
| 15 | General Unsecured Convenience Claims | Impaired | **Entitled to vote** | 1% |
| 16 | Subordinated Claims | Impaired | Deemed to reject | 0% |
| 17 | Intercompany Claims | Impaired/ Unimpaired | Deemed to reject/ presumed to accept | 0% |
| 18 | Existing AVH Non-Voting Equity Interests | Impaired | Deemed to reject | 0% |
| 19 | Existing AVH Common Equity Interests | Impaired | Deemed to reject | N/A |
| 20 | *Existing Avifreight Equity Interests* | *Unimpaired* | *Presumed to accept* | *N/A* |
| 21 | *Existing SAI Equity Interests* | *Unimpaired* | *Presumed to accept* | *N/A* |
| 22 | Other Existing Equity Interests | Impaired | Deemed to reject | N/A |
| 23 | Intercompany Interests | Impaired/ Unimpaired | Deemed to reject/ presumed to accept | N/A |

(Third Amended Disclosure Statement at 4–6.)

The Third Amended Disclosure Statement also details the treatment of administrative expense and other unclassified claims. (*Id.* at 35–39.)

The Debtors propose partial substantive consolidation under the Plan, by which all Debtors except Aerounión,[6] Avifreight,[7] and SAI[8] will be consolidated "solely for voting, Confirmation, and distribution purposes." (Third Amended Plan at 45; *see also* Third Amended Plan at 23 ¶ 216 (defining "Unconsolidated Debtors" as Aerounión, Avifreight, and SAI).)

---

[6]     "Aerounión" means Aero Transporte de Carga Unión, S.A. de C.V. (Third Amended Plan at 2 ¶ 12.)
[7]     "Avifreight" means Avifreight Holding Mexico S.A.P.I. de C.V. (Third Amended Plan at 3 ¶ 19.)
[8]     "SAI" means Servicios Aeroportuarios Integrados SAI S.A.S. (Third Amended Plan at 20 ¶ 180.)

The Debtors' proposed timeline through the confirmation hearing is as follows:

| Event | Date and Time (prevailing Eastern Time) |
|---|---|
| Disclosure Statement Objection Deadline | September 7, 2021, at 4:00 p.m. |
| Voting Record Date | September 9, 2021 |
| Disclosure Statement Hearing | September 14, 2021, at 10:00 a.m. |
| Deadline for Commencement of Solicitation | September 21, 2021, or 5 business days after entry of the Disclosure Statement Order, whichever is later |
| Publication Deadline | 10 business days before Confirmation Hearing |
| Plan Supplement Filing Deadline | 10 business days before Confirmation Hearing |
| Voting Deadline | 7 business days before Confirmation Hearing, at 4:00 p.m. |
| Deadline to File Voting Report | 5 business days before Confirmation Hearing, at 4:00 p.m. |
| Plan Objection Deadline | 5 business days before Confirmation Hearing, at 4:00 p.m. |
| Deadline to File Confirmation Brief and Plan Reply | 2 days before Confirmation Hearing, at 12:00 p.m. |
| Confirmation Hearing | October 26, 2021, at 10:00 a.m., or as soon thereafter as the Debtors may be heard |

(Motion at 8.)

## II.    ADEQUACY OF DISCLOSURE STATEMENT

### A.    Legal Standard

Under section 1125 of the Bankruptcy Code, a disclosure statement contains "adequate information" if it contains:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

Section 1125 further provides that the Court shall consider "the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information" when determining if a disclosure statement provides adequate information. *Id.* Pursuant to section 1125 and its legislative history, courts have held that

> a disclosure statement must contain all pertinent information bearing on the success or failure of the proposals in the plan of reorganization. A disclosure statement should likewise contain all material information relating to the risks posed to creditors and equity interest holders under the proposed plan of reorganization. The disclosure statement, on the other hand, should not be burdened with overly technical and extremely numerous additions, where such information would serve only to diminish the understanding of a typical creditor or interest holder.

*In re Cardinal Congregate I*, 121 B.R. 760, 765–66 (Bankr. S.D. Ohio 1990) (internal quotation marks and citations omitted).

Furthermore, a disclosure statement is intended to be a source "of factual information upon which one can make an informed judgment about a reorganization plan," and not "an advertisement or a sales brochure." *In re Eagan*, 33 B.R. 672, 676–77 (Bankr. N.D. Ill. 1983). Accordingly, "disclosure statements must contain factual support for any opinions contained therein since opinions alone do not provide the parties voting on the plan with sufficient information upon which to formulate decisions." 7 COLLIER ON BANKRUPTCY ¶ 1125.02[2].

Other courts have created a non-exhaustive list of factors that should be disclosed, with the qualification that "[d]isclosure of all factors is not necessary in every case." *In re Metrocraft Publ'g Servs.*, 39 BR 567, 568 (Bankr. N.D. Ga. 1984). The factors are:

> (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such

7

information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectability of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a non-bankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with affiliates.

*Id*. (citations omitted); *see also In re Phoenix Petroleum*, 278 B.R. 385, 406 n.6 (Bankr. E.D. Pa. 2001); 7 COLLIER ON BANKRUPTCY ¶ 1125.02[2].

**B.    Analysis**

The Third Amended Disclosure Statement is comprehensive and informative. On August 31, 2021, the Debtors filed the liquidation analysis as well as related financial projections (ECF Doc. # 2067) and these exhibits have been included in the Third Amended Disclosure Statement (*see* ECF Doc. # 2131 Ex. C and Ex. D.) Now that the liquidation analysis and financial projections have been filed, the Court concludes that, with the limited changes that the Court required and which are described below, the Court **APPROVES** the Third Amended Disclosure Statement as containing adequate information. The objections of the United States Trustee, discussed below, are **OVERRULED**.

1.    <u>The Timing of the Filing of the Plan Supplement</u>

The Third Amended Disclosure Statement currently lacks many important details about the Third Amended Plan that the Debtors propose to include later in the Plan Supplement. The Plan Supplement is defined as follows:

> "*Plan Supplement*" means the compilation of documents (or forms thereof),schedules, and exhibits to the Plan, which, with respect to the documents identified in clauses (a) through (g) below, shall be filed no later than fourteen (14) days before the Plan Objection Deadline and, with respect to the documents identified in clauses (h) through (k) below, shall

>be filed no later than seven (7) days before the Plan Objection Deadline, as each may be amended, supplemented, or modified from time to time in accordance with this Plan, the Bankruptcy Code, and the Bankruptcy Rules, to be filed with the Bankruptcy Court which may include, as applicable:(a) the New Organizational Documents; (b) the Description of Restructuring Transactions; (c) the Schedule of Assumed Contracts (as amended, supplemented, or modified); (d) the Schedule of Retained Causes of Action; (e) the Transaction Steps; (f) the Warrant Agreement; (g) the Secured RCF Amendment; (h) a list of the members of the New Boards (to the extent known); (i) the Exit Facility Indenture(s); (j) the Shareholders Agreement; and (k) such other documents as are necessary or advisable to implement the Restructuring. For the avoidance of doubt, the Debtors shall have the right to amend, supplement, or modify the Plan Supplement through the Effective Date in accordance with this Plan, the Bankruptcy Code, and the Bankruptcy Rules. The Committee shall have consultation rights with respect to the documents included in the Plan Supplement (including any amendments, supplements, and/or modifications thereto) to the extent such documents materially impact the rights of holders of General Unsecured Avianca Claims; provided, that the Committee's consultation rights with respect to the list of the members of the New Boards shall be limited to consultation regarding the appointment of one independent directorto the Reorganized AVH Board, in accordance with Article V.J.1 of the Plan.

(Third Amended Plan ¶ 155, at 17.)

As it was filed, the Second Amended Plan sought to have the Plan Supplement be filed no later than seven days before the deadline to object to the plan. Because of the importance of the information that will be included in the Plan Supplement, the Court believed that providing this information to creditors who are entitled to vote seven days before the voting deadline would not provide sufficient time for creditors to consider the information. The Plan Supplement will likely be lengthy and complex. Seven days is simply not sufficient time comprehensively review all of this information. To allow the claim and interest holders to make a well-informed decision, the Court required that portions of the Plan Supplement be filed on or before October 5, 2021, and the remainder of the information be filed on or before October 12, 2021, as more particularly set forth in the order approving the disclosure statement.

9

2. <u>The Recommendation of the Creditors Committee</u>

In the Second Amended Disclosure Statement, the Debtors included a Committee Recommendation Letter from the Committee that includes a conspicuous heading in bold language that states: **"[The Committee] urges all holders of unsecured claims to vote to ACCEPT the Joint Chapter 11 Plan of Avianca Holdings, S.A. and its Affiliated Debtors."** (ECF Doc. # 2131 Ex. E.) The Committee's recommendation to accept the plan cannot be any clearer.[9]

3. <u>Some Miscellaneous Clarifications Had to Be Made</u>

Some minor issues needed to be clarified in a revised disclosure statement, including the following, which are reflected in the Third Amended Disclosure Statement:

- the method of selection for the reorganized debtors' directors and officers (regarding section 1129(a)(5)); and

- required regulatory approvals (regarding section 1129(a)(6)).

4. <u>Third-Party Non-Debtor Releases</u>

There are two issues that the Court raised with Debtors' counsel at an earlier hearing in this case shortly after the Disclosure Statement was filed: (i) whether the releases in the Plan cover claim and interest holders who are not entitled to vote, and (ii) whether the requested partial substantive consolidation is proper in this case. The objections to the Disclosure Statement filed by the United States Trustee also focus on the third-party releases. The issue at this stage is the adequacy of disclosure regarding the third-party releases included in the Third Amended Disclosure Statement. Whether the releases should ultimately be approved may be

---

[9] The Committee's draft letter refers to the Plan and Disclosure Statement filed on August 10, 2021. The Second Amended Disclosure Statement and Second Amended Plan were filed on September 13, 2021. The Committee's counsel confirmed that the Committee supports the Second Amended Disclosure Statement and Second Amended Plan. The letter was subsequently revised accordingly to include references to the Third Amended Plan and the Third Amended Disclosure Statement.

raised by objections to confirmation.  Of course, if proposed plan provisions are unconfirmable as a matter of law, it may be appropriate to reject the provisions at the disclosure statement stage to avoid the unnecessary time and expense in moving forward to solicitation, voting and plan confirmation.  But such a result is clearly not called for here.  The Debtors in fact propose consensual third-party releases with opt-out provisions.  The Court concludes that adequate information about the releases is provided in the Third Amended Disclosure Statement.

Third-party releases and related injunctions in chapter 11 plans and confirmation orders are "proper in only rare cases."  *Deutsche Bank AG v. Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber Network, Inc.*), 416 F.3d 136, 141 (2d Cir. 2005).  Bankruptcy courts have approved non-debtor releases where:

> the estate received substantial consideration[,] . . . the enjoined claims were channeled to a settlement fund rather than extinguished[,] . . . the enjoined claims would indirectly impact the debtor's reorganization by way of indemnity or contribution[,] . . . the plan otherwise provided for the full payment of the enjoined claims[, and] the affected creditors consent[ed].

*Id.* at 142.

If third-party releases are consensual or not objected to after proper notice, "courts generally approve them unless they are truly overreaching on their face."  *In re MPM Silicones, LLC*, No. 14-22503-RDD, 2014 WL 4436335, at *32 (Bankr. S.D.N.Y. Sept. 9, 2014).  The Debtors propose consensual third-party releases in this case.

The Third Amended Plan provides for third-party releases in Article IX.E.  (Third Amended Plan at 77–78.)  The Third Amended Plan defines "Releasing Parties" as follows:

> "Releasing Parties" means, collectively, each of the following in their capacity as such: (i) each of the Released Parties (other than the Debtors and the Reorganized Debtors); (ii) all holders of Claims that vote to accept the Plan; (iii) all holders of Claims or Interests that are Unimpaired under the Plan and do not opt out of granting the releases in Article IX.E of the Plan; and (iv) all holders of Claims in Classes that are entitled to vote under

11

> the Plan but that (a) vote to reject the Plan or do not vote either to accept or reject the Plan and (b) do not opt out of granting the releases in Article IX.E of the Plan; and (v) with respect to each of the foregoing Entities and Persons set forth in clauses (ii) through (iv), all of such Entities' and Persons' respective Related Parties.

(*Id.* ¶ 170, at 19 (emphasis added).)

Under subpart (iii) of the definition above, the release explicitly covers claim and interest holders who are unimpaired under the Plan, *but in an important change between the Amended Plan and the Third Amended Plan*, the provision now provides unimpaired creditors with the right to opt-out of granting the included releases. This change resolves one of the objections of the United States Trustee, discussed below.

Another important clarification in the Third Amended Disclosure Statement that addresses a question raised by the Court at an earlier hearing is that the creditors who are deemed to reject the Third Amended Plan and are therefore not entitled to vote are *not* deemed to have granted the releases. (*See* Third Amended Disclosure Statement at 91.)

### C. Objections

#### 1. The United States Trustee Objection

The United States Trustee objects to the Disclosure Statement on three grounds. First, the United States Trustee objects to the third-party releases in the Plan because the Debtors seek approval of third-party releases from creditors that reject the Plan or abstain from voting, but fail to Opt-Out of the releases. (United States Trustee Objection at 8.) The United States Trustee argues that the Disclosure Statement fails to explain why creditors that vote to reject the Plan or abstain from voting should have their rights against third-parties stripped away. (*Id.* at 8–9 (citing *In re SunEdison*, 576 B.R. 453, 461 (Bankr. S.D.N.Y. 2017) (Bernstein, S.) (holding that creditors that abstained from voting did not consent to non-debtor releases under the Debtor's

plan))*.*) Instead, the United States Trustee argues that consent to third-party releases "should be demonstrated through an unequivocal opt-in procedure." (*Id.* at 9.) For legal support, the United States Trustee cites to *Chassix Holdings, Inc.*, 533 B.R. 64, 79 (Bankr. S.D.N.Y. 2015), where Judge Wiles held, an "additional 'opt out' requirement [for a rejecting creditor] . . . . would have been little more than a Court-endorsed trap for the careless or inattentive creditor." (*Id.* at 8.) Additionally, the United States Trustee argues that the Disclosure Statement should make clear whether the Plan intends to impose non-consensual third-party releases pursuant to *Metromedia*. (*Id.* at 9.)

Second, the United States Trustee objects that the Disclosure Statement fails to adequately explain the basis for imposing third-party releases on creditors that are identified as unimpaired and are not entitled to vote on the Plan. (*Id.* at 9–10.) The United States Trustee argues that unimpaired class should be provided with a Notice of Non-voting status with an optional Release Opt-In Form. (*Id.* at 10.)

The United States Trustee's third objection is that the Disclosure Statement fails to adequately explain the basis for imposing a "death trap" provision that seeks to induce Class 11 creditors to vote for the Plan by providing those Class 11 creditors who vote for the plan an additional $6 million in recoveries (or the equivalent in equity, if properly elected). (*Id.*)

    2.  Debtors' Reply

In their Reply, the Debtors respond to the three objections raised in the United States Trustee Objection.

First, the Debtors argue that the law does not support the United States Trustee's argument that a creditor can only validly consent to the third-party release by affirmatively opting in, rather than those creditors who decline to opt out. (Reply ¶ 8.) The Debtors argue that

"the vast majority of cases in this District and elsewhere have accepted the opt-out structure as being fair to creditors and consistent with due process." (*Id.* ¶ 9 (citing cases).) In particular, the Debtors cite to Judge Chapman's explanation that the opt-out structure is permissible because "[i]naction is action under appropriate circumstances. When someone is clearly and squarely told if you fail to act your rights will be affected, that person is then given information that puts them on notice that they need to do something else or else. That's not a trap." (*Id.* ¶ 10 (citing Tr. of Hr'g at 27–28, *In re Cumulus Media Inc.*, No. 17-13381 (Bankr. S.D.N.Y. Feb. 1, 2018)).) Here, the Debtors argue the Solicitation Package adequately discloses the full text of the third-party release with clear instructions of how to opt-out of them. (*Id.* ¶ 11.)

The Debtors also distinguish the case cited by the United States Trustee, *Chassix*, by arguing that in *Chassix*, "the debtors proposed that the releases would bind all creditors who were deemed to reject the plan (and who therefore did not vote). Here, every person who the Debtors propose to bind by the third-party releases will receive an opportunity to opt out." (*Id.* ¶ 13.) The Debtors are correct that the debtors in *Chassix* proposed releases that would bind creditors who were not entitled to vote (and were deemed to reject the plan). However, as the United States Trustee points out in its objection (*see* United States Trustee Objection at 8), the *Chassix* court also took issue with the proposed releases because they would have bound creditors who voted to reject the plan unless they affirmatively opted out. *Chassix*, 533 B.R. at 79 ("As to creditors who might vote to reject the Plan: the Court noted that it was difficult to understand why any other action should be required to show that the creditor also objected to the proposed third party releases.") In *Chassix*, the debtors ultimately "agreed to modify the proposed Ballots so that creditors who rejected the Plan would be given the ability to 'opt in' to the proposed releases by checking a box indicating their desire to do so." (*Id.*)

14

The Debtors also distinguish *In re Sun Edison, Inc.* because that case does not address the question of opt-out versus opt-in, and only held that "consent" requires non-voting creditors to be able to elect whether to be bound by third-party releases." (Reply ¶ 14; *see In re Sun Edison, Inc.* 576 B.R. at 463–64.) Further, the Debtors argue that the opt-out structure is consistent with the United States Supreme Court's views on consent in the context of class action releases. (*Id.* ¶ 12 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) and *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).)

In the Reply, the Debtors provide that they have responded to the second objection raised by the United States Trustee (that creditors in unimpaired classes should not be bound by the Third-Party Release) by revising the Plan and the relevant Non-Voting Status Notice to permit members of unimpaired classes to opt out of the Third-Party Release. (*Id.* ¶ 4.)

With respect to the United States Trustee's third objection, the Debtors assert that the Disclosure Statement sufficiently explains the incremental recovery of $6,000,000 in value to members of Class 11 (General Unsecured Avianca Claims) that choose to vote to accept the Plan. (*Id.* ¶ 15.) In response to the United States Trustee's objection, the Debtors have added to the Disclosure Statement a new risk factor that explains the potential effect of different voting outcomes on the distribution to claimholders in Class 11. (*Id.* ¶ 16.)

### 3. Villegas Statement

In their Reply, the Debtors note that they also received an email statement from Saúl Villegas Ramos (the "Villegas Statement"). Mr. Villegas appeared at the hearing on the Second Amended Disclosure Statement and was heard by the Court. The Debtors explain that the Villegas Statement relates to his assertion that Mr. Villegas, a former employee of non-debtor Avianca Perú, S.A., has about not having been paid certain amounts that he believes he is owed

under Peruvian law.  (*Id.* ¶ 7.)  According to the Debtors, Avianca Perú had become subject to a liquidation proceeding under the laws of Perú prior to the filing of the Chapter 11 Cases and so the Debtors do not believe there is any basis for Mr. Villegas, or any similarly situated employee of that entity, to assert claims against any Debtor (and Mr. Villegas did not file any proof of claim against any Debtor despite having been served with the bar date notice).  (*Id.*)

4. <u>Burlingame Objection</u>

In the Debtors' Reply, the Debtors note that they received an informal objection from Blake Kim ("Mr. Kim") on behalf of Burlingame Investment Partners LP ("Burlingame").  The Debtors explain that Burlingame was a holder of the 2023 Notes who declined to participate in Court-approved roll-up of those securities.  (*Id.* ¶ 6.)  The Debtors assert that Burlingame objects that the 2023 Notes are not unsecured and that the Debtors' financial projections are too pessimistic.  (*Id.*)  The Debtors argue that these are not proper objections to the adequacy of the Disclosure Statement and that the financial projections were based on the most recently available information and remain consistent with the Debtors' current views.  (*Id.*)

This Court notes that Mr. Kim, a Californian resident, failed to file a timely objection to the Disclosure Statement, or for that matter, to any other prior motion or matters raised in this case and ruled on by the Court.  Mr. Kim's objections actually deal with prior orders entered by the Court, particularly with respect to the approval of debtor-in-possession financing, and adequate protection and security provided to the DIP lenders.  Some of Mr. Kim's objections may more properly be characterized as objections to confirmation, which if properly and timely

raised, may be considered during the confirmation hearing.[10]  In any event, Mr. Kim's objections to the disclosure statement are **OVERRULED.**

     5.    Other Potential Parties-in-Interest

During the September 14 hearing on the Second Amended Disclosure Statement, the Court heard from at least 12 other people, most of whom are not attorneys, who were appearing from Columbia (where Avianca is based) or from Perú, where a non-debtor Avianca affiliate, Avianca Perú, S.A., is the subject of a liquidation proceeding.  Many of the individuals who spoke at the hearing had questions about why they received notice of the hearing, and what, if any, connection they have to the proceedings in this Court.  As is often the case, parties to whom notice of hearings is sent are "over inclusive," to assure that anyone with a potential interest in the proceedings has notice and an opportunity to appear and be heard.  For some of the people who were heard by the Court, English is not their first language.  Many of the people who addressed the Court had questions about the proceedings.  Counsel for the Debtors and for the Creditors Committee have communicated with some potential parties in interest.  The Court directed that when the disclosure statement and solicitation materials are distributed, counsel for the Debtors and for the Committee file a notice identifying people with whom parties-in interest may communicate, hopefully including individuals who speak Spanish.  The cover letter and ballot that will be provided to creditors will also include a Spanish language translation.

---

[10]    The Debtors' counsel stated that Mr. Kim's claim is actually held by an LLC, which is required to be represented by counsel rather than by an individual, such as Mr. Kim, who is not a lawyer.

### III.   THE DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION

The Court finds and concludes that the Third Amended Disclosure Statement contains adequate information as required by section 1125 of the Bankruptcy Code. With the few changes as were made by the requirements stated above, the Third Amended Disclosure Statement, the Third Amended Plan, and the solicitation materials may be mailed to creditors. The Confirmation hearing in these chapter 11 cases will be scheduled for October 26, 2021.

More importantly though, the Third Amended Disclosure Statement has sufficiently addressed the objections of the United States Trustee—specifically in clarifying that (1) the third-party releases do not apply to apply to impaired creditors who are deemed to reject and therefore do not vote on plan confirmation; and (2) unimpaired creditors who are deemed to accept will be provided the opportunity opt-out of the releases. With respect to the United States Trustee objection that an opt-in rather than opt-out procedure must be followed for a consensual release to be effective, the objection is **OVERRULED**.

As catalogued in the Debtors' Reply, numerous cases in this district and elsewhere have approved the use of an opt-out procedure.[11]  I agree with Judge Chapman's analysis in *Cumulis*

---

[11]    *See* Reply ¶ 9, at 4–5 ("However, the vast majority of cases in this District and elsewhere have accepted *Stearns Holdings, LLC*, Case No. 19-12226 (SCC) (Bankr. S.D.N.Y. Nov. 13, 2019) [ECF No. 459] (confirming plan with opt-out third-party releases over objection of U.S. Trustee); *In re Ditech Holding Corp.*, Case No. 19-10412 (JLG) (Bankr. S.D.N.Y. Sept. 16, 2019) [ECF No. 1404] (same); *In re Nine West Holdings, Inc.*, Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. Feb. 27, 2019) [ECF No. 1308] (confirming plan with opt-out third-party releases over objectionsof U.S. Trustee and SEC); *In re Tops Holding II Corp.*, Case No. 18-22279 (RDD) (Bankr. S.D.N.Y. Nov. 9, 2018) [ECF No. 765] (confirming plan with opt-out third-party releases overobjection of U.S. Trustee); *see also In re Insys Therapeutics, Inc.*, Case No. 19-11292 (KG) (Bankr. D. Del. Jan. 16, 2020) [ECF No. 1115] (confirming plan with opt-out third-party releases overobjections of U.S. Trustee and SEC); *In re Gen. Wireless Opers. Inc.*, Case No. 17-10506 (BLS) (Bankr. D. Del. Oct. 26, 2017) [ECF No. 1117] (confirming plan with opt-out third-party releases over objection of creditor); *In re Abeinsa Holding Inc.*, Case No. 16-10790 (KJC) (Bankr. D. Del. Dec. 15, 2016) [ECF No. 1042] (confirming plan with opt-out third-party releases over objectionof U.S. Trustee); *In re Indianapolis Downs, LLC*, Case No. 11-11046 (BLS) (Bankr. D. Del. Mar. 20, 2013) [ECF No. 1767] (confirming plan with opt-out third-party releases over objectionsof U.S. Trustee and certain creditors); *cf. Aralez Pharm. US Inc.*, Case No. 18-12425 (MG) (Bankr. S.D.N.Y. May 7, 2019) [ECF No. 677] (confirming plan with third-party releases that bound allcreditors who vote to accept the Plan and all creditors who do not opt out of the releases); *In re Quirky, Inc.*, Case No. 15-12596 (MG) (Bankr. S.D.N.Y. July 15, 2016) [ECF No. 474] (same); *In re Dewey & LeBoeuf LLP*, Case No. 12-12321 (MG) (Bankr. S.D.N.Y.

*Media*—the opt-out structure is permissible provided that a clear and prominent explanation of the procedure is given as it has been here. To repeat Judge Chapman's conclusion: "Inaction is action under appropriate circumstances. When someone is clearly and squarely told if you fail to act your rights will be affected, that person is then given information that puts them on notice that they need to do something or else. That's not a trap." Tr. of Hr'g at 27–28, *In re Cumulus Media Inc.*, No. 17-13381 (Bankr. S.D.N.Y. Feb. 1, 2018). The proposed ballot here clearly explains the required procedure.

The opt-out structure is consistent with the Supreme Court's authority on consent in the context of class action releases. In *Phillips Petroleum Co. v. Shutts*, the Court upheld an "opt-out" class action structure, stating that "[t]he plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" 472 U.S. 797, 812 (1985) (citing *Mullane*, 339 U.S. 306, 314). Moreover, in *Mullane*, the Supreme Court explained:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied. 'The criterion is not the possibility of conceivable injury, but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.'

*Mullane*, 339 U.S. 306, 314–15 (internal citations omitted).

---

Feb. 27, 2013) [ECF No. 1144] (same); *In re Borders Grp., Inc.*, Case No. 11-10614 (MG) (Bankr. S.D.N.Y. Dec. 21,2011) [ECF No. 2384] (same); *In re Mesa Air Grp., Inc.*, Case No. 10-10018 (MG) (Bankr. S.D.N.Y. Jan. 20, 2011) [ECF No. 1448] (same).")

Permitting the use of an opt-out procedure also results in overruling of the United States Trustee's objection that the releases are not effective as to any creditor that has the right to vote but fails to return a ballot (i.e., abstains from voting). If a creditor with a right to vote is sent a ballot that clearly explains that the ballot must be returned and the opt-out box checked if the creditor elects not to approve the third-party release, the release is effective as to that creditor.

### IV.    CONCLUSION

For the reasons explained above, with the limited changes that the Court has directed, the objections to the Second Amended Disclosure Statement are **OVERRULED.**

The Third Amended Disclosure Statement is approved as containing adequate information. The solicitation and voting procedures, the procedures of allowance of claims for voting purposes, scheduling of the confirmation hearing, and the establishment of confirmation and objection procedures, are all likewise approved.

The Confirmation Hearing in this case is scheduled for Tuesday, October 26, 2021, at 10:00 a.m., New York time. Depending on the Court's COVID protocols then in place, the hearing will either be a hybrid hearing, with those who are fully vaccinated able to appear in Court in-person and anyone else able to appear by Zoom for Government, or the hearing will be entirely remote utilizing Zoom for Government.

As already stated, a separate Order approving the Third Amended Disclosure Statement and other relief will be entered.

Dated:  September 15, 2021
         New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge