**O'MELVENY & MYERS LLP**                          **Hearing Date & Time: TBD**
Peter Friedman, Esq. (*pro hac vice* pending)        **Objection Deadline: TBD**
Matthew Kremer, Esq.
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: pfriedman@omm.com
           mkremer@omm.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>AVIANCA HOLDINGS S.A., *et al.*,[1]<br><br>           Debtors. | Chapter 11<br><br>Case No. 20-11133 (MG)<br>(Jointly Administered) |

**BURNHAM STERLING AND COMPANY LLC AND BABCOCK
& BROWN SECURITIES LLC'S MOTION TO COMPEL
COMPLIANCE WITH 11 U.S.C. §§ 365(d)(5) AND 503(b)**

       Burnham Sterling and Company LLC ("**Burnham Sterling**") and Babcock & Brown

Securities LLC f/k/a Burnham Sterling Securities LLC ("**Babcock**", and together with Burnham

---

[1] The Debtors in these chapter 11 cases, and each Debtor's federal tax identification number (to the extent applicable), are as follows: Avianca Holdings S.A. (N/A); Aero Transporte de Carga Unión, S.A. de C.V. (N/A); Aeroinversiones de Honduras, S.A. (N/A); Aerovías del Continente Americano S.A. Avianca (N/A); Airlease Holdings One Ltd. (N/A); America Central (Canada) Corp. (00- 1071563); America Central Corp. (65-0444665); AV International Holdco S.A. (N/A); AV International Holdings S.A. (N/A); AV International Investments S.A. (N/A); AV International Ventures S.A. (N/A); AV Investments One Colombia S.A.S. (N/A); AV Investments Two Colombia S.A.S. (N/A); AV Taca International Holdco S.A. (N/A); Avianca Costa Rica S.A. (N/A); Avianca Leasing, LLC (47- 2628716); Avianca, Inc. (13-1868573); Avianca-Ecuador S.A. (N/A); Aviaservicios, S.A. (N/A); Aviateca, S.A. (N/A); Avifreight Holding Mexico, S.A.P.I. de C.V. (N/A); C.R. International Enterprises, Inc. (59-2240957); Grupo Taca Holdings Limited (N/A); International Trade Marks Agency Inc. (N/A); Inversiones del Caribe, S.A. (N/A); Isleña de Inversiones, S.A. de C.V. (N/A); Latin Airways Corp. (N/A); Latin Logistics, LLC (41-2187926); Nicaragüense de Aviación, Sociedad Anónima (N/A); Regional Express Américas S.A.S. (N/A); Ronair N.V. (N/A); Servicio Terrestre, Aéreo y Rampa S.A. (N/A); Servicios Aeroportuarios Integrados SAI S.A.S. (92-4006439); Taca de Honduras, S.A. de C.V. (N/A); Taca de México, S.A. (N/A); Taca International Airlines S.A. (N/A); Taca S.A. (N/A); Tampa Cargo S.A.S. (N/A); Technical and Training Services, S.A. de C.V. (N/A); AV Loyalty Bermuda Ltd. (N/A); Aviacorp Enterprises S.A. (N/A). The Debtors' principal offices are located at Avenida Calle 26 # 59 – 15 Bogotá D.C., Colombia.

Sterling, "**Burnham**"), creditors of Avianca Holdings S.A. and its debtor-affiliates (collectively, the "**Debtors**") under those certain Lease Agreements (as defined below), by and through its undersigned counsel, hereby submits this motion (the "**Motion**") pursuant to sections 365 and 503(b)(1) of title 11 of the United States Code, as amended (the "**Bankruptcy Code**"), for entry of an order substantially in the form annexed hereto as Exhibit A (the "**Proposed Order**"), compelling the immediate payment of the full amount of all accrued and accruing post-petition obligations under the Lease Agreements and awarding an administrative expense claim in the same amount. In support of the Motion, Burnham respectfully states as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The bases for the relief requested herein are sections 365(d)(5) and 503(b)(1) of the Bankruptcy Code, Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**").

## RELIEF REQUESTED

3.  By this Motion, Burnham requests that the Court enter an order compelling the Debtors to immediately pay Burnham's accrued and accruing post-petition claims pursuant to Bankruptcy Code sections 365(d)(5) and 503(b)(1) in accordance with the terms of the Lease Agreements, including interest on past due amounts calculated at the rate set forth in the Lease Agreements, and awarding an administrative expense claim in the same amounts.

# BACKGROUND

**A.    Entry into the Lease Agreements**

4.    The Debtors began contracting with Burnham in 2014 to arrange the financing and leasing of certain aircraft in exchange for certain fees (such services, the "**Initiator Services**" and the related fees, the "**Initiator Fees**"). The Initiator Fees are due and owing under the terms of various lease agreements and ancillary documents related to the following transactions (collectively, the "**Lease Agreements**"):

- EAIV 2015 (Group 1): MSNs 6617, 6692, 6739, 37507;
- EAIV 2015 (Group 2): MSNs 6767, 6511, 37508, 6746;
- EAIV 2016: MSNs 37511, 7284, 7318;
- JOLCO (2017): MSNs 7887, 7928;
- JOLCO (2018): MSNs 65315, 8300;
- JOLCO (2019): MSNs 3988, 3992, 4281, 4284; and
- JOLCO (2017): MSNs 39407

5.    Under the Lease Agreements, the Debtors have an unconditional obligation to pay Burnham through the payment of "Additional Rental Payments" on a schedule set forth in the Lease Agreements. By way of example, the Amended and Restated Aircraft Lease Agreement (MSN 3992), dated April 25, 2019, between Aircol 7, as Lessor, and Aerovías Del Continente Americano S.A., as Lessee (the "**MSN 3992 Lease Agreement**"), includes the following provision for the payment of the Initiator Fees (which is referred to in this agreement as the "Initiator Compensation"):

> The Lessee shall on each Additional Rental Payment Date pay to the Lessor at the Initiator Account, by way of additional rental payment, installments of the Initiator Compensation . . . . The Sub-Lessee acknowledges that the Initiator has already provided

3

> services prior to the Delivery Date, and accordingly agrees that the Sub-Lessee's obligations to pay the Initiator Fees hereunder are unconditional.

*See* MSN 3992 Lease Agreement § 5.2.

6. Burnham is also expressly authorized to enforce its right to payment under the Lease Agreements against the Debtors:

> The agreement as to the payment of the Initiator Compensation under this Lease is a bilateral matter as between the Lessee and the Initiator, and no consent or act is required by the Lessor for the Initiator to enforce its rights hereunder, or for the Lessee and the Initiator to agree to any amendment or variation of any payment of Initiator Compensation.

*See* MSN 3992 Lease Agreement § 5.2(f).

7. Burnham is also designated as an express third-party beneficiary under the Lease Agreements, entitled to enforce its rights under such agreements:

> The Initiator shall be entitled to enforce its rights against the Lessee and Lessor under and in connection with this Clause 5.2 as a third party, notwithstanding that the Initiator is not a signatory to this Agreement, pursuant to the Contracts (Rights of Third Parties) Act 1999. For the avoidance of doubt, the Initiator shall have the right to bring a claim directly against the Lessee and/or the Guarantor for any Initiator Compensation and any other amounts payable to the Initiator that become due and unpaid under this Agreement, and such right shall not be reduced, diminished or otherwise affected in any respect detrimental to the Initiator as a result of Initiator not being a party to this Agreement. Any obligation in connection with Initiator's deficiency claim against the Lessee (or Guarantor) shall only be released upon actual receipt by Initiator of the relevant amounts. Any amounts payable by the Lessee to the Initiator in respect of such deficiency claim shall be paid by Lessee (or Guarantor) directly to the Initiator.

*See, e.g.*, MSN 3992 Lease Agreement § 5.2(j).

8. Accordingly, the Lease Agreements indisputably provide Burnham with a right to payment of the Initiator Fees as Additional Rental Payments, along with the right to enforce such Lease Agreements.

**B.    Chapter 11 Cases**

9. On May 10, 2020 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the

4

Southern District of New York (the "**Bankruptcy Court**").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.  The chapter 11 cases were consolidated for procedural purposes only and are being jointly administered.

10. On November 16, 2020, the Bankruptcy Court entered an order establishing January 20, 2021 as the bar date for filing proofs of claims in the chapter 11 cases for general creditors (the "**Bar Date**").  *See Order (I) Establishing Bar Dates for Filing Proofs of Claim, (II) Approving Proof of Claim Forms, Bar Date Notices, and Mailing and Publication Procedures, (III) Implementing Uniform Procedures Regarding 503(b)(9) Claims, and (IV) Providing Certain Supplemental Relief* [Docket No. 1180].  On the Bar Date, Burnham timely filed proof of claim numbers 2055 and 2057 (the "**Prepetition Claims**"), asserting Burnham's prepetition claims against the Debtors.[2]

11. Since the filing of the chapter 11 cases, the Bankruptcy Court has entered several orders relating to the rejection of certain of the Lease Agreements (collectively, the "**Rejection Orders**"), including the following:

- *Order Authorizing the Debtors to (I) Enter into New Aircraft Lease and Letter of Intent and (II) Reject Pre-Petition Aircraft Lease with Wilmington Trust Company (MSN 7928) and Certain Related Agreements* [Docket No. 1929];

- *Order Authorizing the Debtors to (I) Enter into New Aircraft Lease and Letter of Intent and (II) Reject Pre-Petition Aircraft Lease with Wilmington Trust Company (MSN 7887) and Certain Related Agreements* [Docket No. 1930];

- *Order Authorizing the Debtors to (I) Enter Into New Aircraft Lease and (II) Reject Pre-Petition Aircraft Lease (MSN 8300) and Certain Related Agreements* [Docket No. 2002];

---

[2] On November 8, 2021, Burnham made its written election to receive the Unsecured Claimholder Equity Package and Warrants with respect to claims 2055 and 2057 pursuant to Article III.B(11) of the Plan (as defined below).

5

- *Order Authorizing the Debtors to (I) Enter Into New Aircraft Leases and (II) Reject Pre-Petition Aircraft Leases with EAIV 2016 (MSNs 7284 and 7318) and Certain Related Agreements* [Docket No. 2004];

- *Order Authorizing the Debtors to (I) Enter Into New Aircraft Leases and (II) Reject Pre-Petition Aircraft Leases with EAIV 2015 (MSNs 6511, 6617, 6692, 6739, 6746, and 6767)* [Docket No. 2015];

- *Order Authorizing the Debtors to (I) Enter Into New Aircraft Leases and (II) Reject Pre-Petition Aircraft Leases (MSNs 4281 and 4284) and Certain Related Agreements* [Docket No. 2016]; and

- *Order Authorizing the Debtors to (I) Enter Into New Aircraft Leases and (II) Reject Pre-Petition Aircraft Leases (MSNs 3988 and 3992) and Certain Related Agreements* [Docket No. 2017].

12.  Pursuant to the Rejection Orders, Burnham has thirty days from the date of each Rejection Order to file a new claim or amend a previously filed claim against any of the Debtors, for "damages based upon or resulting from the assumption, rejection or amendment of any unexpired leases or subleases related to each of the transactions."[3]  Burnham complied with such deadline and, on August 23, 2021, timely filed proof of claim numbers 4033, 4034, 4035, 4036, 4037 and 4038 (collectively, the "**Administrative Claims**").  A copy of such Administrative Claims are attached as **Exhibit B**.

13.  The Rejection Orders provide that the rejection of the leases will become effective upon the Debtors' entry into a new aircraft lease for such aircraft (the "**Rejection Date**").[4]  Under the Rejection Orders, the Debtors are required to file notice of the Rejection Date with the Court promptly upon entry into a new aircraft lease.

---

[3] Burnham does not believe that the thirty-day deadline imposed by the Rejection Orders applies to the filing of administrative expense claims, which do not arise from the rejection of the applicable agreements.

[4] To the extent applicable, Burnham objects to the effectiveness of any rejection as described in Schedule E of the Plan Supplement.

6

14. Based on the notices of the Rejection Dates filed with the Court [Docket Nos. 2427, 2500, 2501, 2502, 2503, 2582], and the terms of the applicable leases, the following Initiator Fees accrued post-petition through the applicable Rejection Dates.

| MSN | Transaction | Lease Rejection or Maturity Date | Total Due to Burnham Sterling | Total Due to Babcock |
|---|---|---|---|---|
| 6617 | 2015 EAIV-1 | 7/18/2022 | 45,687.49 | 51,701.85 |
| 6692 | 2015 EAIV-1 | 5/24/2022 | 51,409.79 | 58,255.50 |
| 6739 | 2015 EAIV-1 | 6/6/2022 | 52,152.84 | 59,061.05 |
| 37507 | 2015 EAIV-1 | 5/11/2022 | 133,928.25 | 151,556.87 |
| 6767 | 2015 EAIV-2 | 12/15/2022 | 75,331.56 | 85,249.41 |
| 6511 | 2015 EAIV-2 | 12/15/2022 | 75,266.24 | 85,127.75 |
| 37508 | 2015 EAIV-2 | 5/25/2022 | 136,495.09 | 154,564.77 |
| 6746 | 2015 EAIV-2 | 6/1/2022 | 51,799.77 | 58,644.47 |
| 37511 | 2016 EAIV | 8/31/2022 | 343,358.78 | - |
| 7284 | 2016 EAIV | 2/9/2022 | 93,517.20 | - |
| 7318 | 2016 EAIV | 2/16/2022 | 94,490.27 | - |
| 7887 | 2017 JOLCO | 5/12/2022 | 298,496.43 | - |
| 7928 | 2017 JOLCO | 5/9/2022 | 297,538.76 | - |
| 65315 | 2018 JOLCO | 12/1/2021 | 315,738.05 | - |
| 8300 | 2018 JOLCO | 1/27/2022 | 195,046.54 | - |
| 3988 | 2019 JOLCO | 2/4/2022 | 120,098.42 | - |
| 3992 | 2019 JOLCO | 2/26/2022 | 124,194.22 | - |
| 4281 | 2019 JOLCO | 2/9/2022 | 131,935.38 | - |
| 4284 | 2019 JOLCO | 1/27/2022 | 129,426.38 | - |
| Total | | | **$2,765,911.46** | **$704,161.68** |

15. The Rejection Date with respect to the lease for MSN 39407 has not occurred and thus Burnham's post-petition administrative claim under that lease continues to accrue. As of December 1, 2022, that claim totals $739,700.13 (including interest).

16. As of the date hereof, Burnham has not received payment on account of any of its Administrative Claims.

7

**LEGAL BASIS FOR RELIEF REQUESTED**

A. **Allowance and Payment of Burnham's Initiator Fees is Required by Bankruptcy Code Section 365(d)(5)**

17. Under Bankruptcy Code section 365(d)(5), the Debtors are obligated to "timely perform *all of the obligations*" on leases of personal property after sixty days after the Petition Date until the leases are assumed or rejected. *See* 11 U.S.C. § 365(d)(5). Specifically, Bankruptcy Code section 365(d)(5) states as follows:

> The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property (other than personal property leased to an individual primarily for personal, family, or household purposes), until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f). Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

11 U.S.C. § 365(d)(5).

18. A debtor's obligations under section 365(d)(5) are independent of, and not subject to, the requirements for the allowance of administrative expenses under Bankruptcy Code section 503. *See* 3 Collier on Bankruptcy P 365.04 (16th ed. 2022) (Section 365(d)(5) "is apparently intended to eliminate an argument over whether accrued rent was 'actual' or 'necessary' and, hence, entitled to an administrative priority."); *In re Hayes Lemmerz Int'l, Inc.*, 340 B.R. 461, 472 (D. Del. 2006) ("Unlike parties claiming administrative expense status under section 503(b), [creditors] claiming under section [365(d)(5)] need not prove they conferred any benefit upon the estate.").

19. Accordingly, Burnham need not establish a benefit to the Debtors' estates in order to be awarded an administrative expense claim under section 365(d)(5); rather, Burnham must only

8

establish that the charges came due during the section 365(d)(5) period. *See In re Stone Barn Manhattan LLC*, 405 B.R. 68, 76 (Bankr. S.D.N.Y. 2009) ("To allow the debtor to extend this abeyance period on commercial personal property lease obligations . . . would be to allow the debtor to circumvent the 60-day limitation . . .")[5]; *see also In re Midway Airlines Corp.*, 406 F.3d 229, 237 (4th Cir. 2005) ("when a lessor seeks an administrative expense for 'all of the obligations' due under a lease, the 'notwithstanding § 503(b)(1)' proviso . . . relieves the lessor from proceeding under § 503(b)(1)(A), which would limit the recovery to an amount representing only the actual and necessary use by the estate"); *In re Wyoming Sand and Stone Co.*, 393 B.R. 359, 361 (M.D. Pa. 2008) ("Benefit to the estate is not an issue under § 365(d)(5), and, in the absence of intervening action by the Debtor, the obligation to perform under the lease remains."); *In re Russel Cave Co.*, 247 B.R. 656, 658 (Bankr. E.D. Ky. 2000) (holding that the purpose of section 365(d)(10), 365(d)(5)'s predecessor, "is to mandate the performance of the debtor's obligations under an unexpired lease, beginning on the 60th day after filing"); *In re Lakeshore Const. Co. of Wolfeboro, Inc.*, 390 B.R. 751, 756 (Bankr. D.N.H. 2008) ("personal property lessors may assert administrative claims under § 365(d)(5) based upon the terms of the lease and not the benefit to the bankruptcy estate.").

20.    Here, the Debtors continued to operate under the Lease Agreements 60 days after the Petition Date through the applicable Rejection Dates. Burnham's claim for Initiator Fees under the terms of the Lease Agreements—the payment of which is classified as "Additional Rental Payments"—indisputably falls within the "all obligations" under a personal property lease that is entitled to an administrative expense claim under Bankruptcy Code Section 365(d)(5). *In re*

---

[5] As part of the 2005 BAPCPA amendments to the Bankruptcy Code, 11 U.S.C. § 365(d)(10) was moved to subsection (d)(5). However, the language of the provision was not altered, so courts have agreed that case law interpreting old 11 U.S.C. § 365(d)(10) "is equally authoritative under § 365(d)(5)." *In re Stone Barn Manhattan LLC*, 405 B.R. 68, 76 n.8 (Bankr. S.D.N.Y. 2009).

9

*Wyoming Sand and Stone Co.*, 393 B.R. at 361 (concluding that no showing of a benefit to the estate is required and "the Court has little discretion but to award [the applicable creditor] an allowance for that time period from the 60th day after filing until surrender of the equipment . . ."); *Lakeshore Const. Co.*, 390 B.R. at 756 (Section 365(d)(5) imposes a "duty of timely performance on trustees and debtors-in-possession" and "eliminates the 'actual and necessary' test under § 503(b)(1).").

21.     Since the Debtors are required to perform "all obligations" under section 365(d)(5), Burnham is also entitled to post-petition default interest due and owing under the terms of the Lease Agreements. Indeed, courts have concluded that the administrative expense treatment afforded by Bankruptcy Code section 365(d)(5) extends to interest payments, attorney's fees, and other similar charges to the extent provided for under the terms of the lease agreement. *See, e.g.*, *In re Crown Books Corp.*, 269 B.R. 12, 18 (Bankr. D. Del 2001) (holding landlord entitled to collect attorney's fees provided under prepetition agreement in enforcing administrative claim against debtors); *In re Pettingill Enterprises, Inc.*, 486 B.R. 524, 537 (Bankr. D.N.M. 2013) (creditor entitled to recover hauling charges under § 365(d)(5) as the debtor was "obligated to pay such costs under the terms of the Rental Contracts and because they accrued more than 60 days after the Petition Date and prior to the rejection of the Rental Contracts").

22.     Accordingly, for the foregoing reasons, this Court should enforce Bankruptcy Code section 365(d)(5) as written and compel the Debtors to immediately pay Burnham its section 365(d)(5) claim, plus interest.[6]

---

[6] Courts have also found that a creditor's section 365(d)(5) claim is entitled to be paid before other administrative claims. *See, e.g., In re Brennick*, 178 B.R. 305, 306-08 (Bankr. D. Mass. 1995) (Chapter 7 trustee was required to pay landlord's claim immediately, and landlord was not obligated to reimburse trustee if there were insufficient funds to pay other Chapter 11 or Chapter 7 administrative expense claimants); *In re Telesphere Commc'ns, Inc.*, 148 B.R. 525, 528-30 (Bankr. N.D. Ill. 1992) (claims under Section 365(d)(5) are entitled to immediate payment on superpriority basis).

**B.    Burnham is Entitled to an Administrative Claim Under Bankruptcy Code Section 503(b)(1)**

23.    Bankruptcy Code section 503(b)(1) provides that the actual, necessary costs and expenses of preserving the Debtor's estate constitute administrative expenses, and that a party may file a request for payment of administrative expenses.  11 U.S.C. § 503(b)(1); *see In re Patient Education Media, Inc.*, 221 B.R. 97, 101 (Bankr. S.D.N.Y. 1998); *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 531 (1984) ("If the debtor-in-possession elects to continue to receive benefits from the executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services . . . .").  The Second Circuit has recognized the presumption that the payment terms of a lease are a reasonable measure of the administrative expenses to be paid by a debtor.  *Farber v. Wards Co., Inc.*, 825 F.2d 684, 689-90 (2d Cir. 1987); *see also In re ID Liquidation One, LLC*, 503 B.R. 392, 399 (Bankr. D. Del 2013) ("[T]here is a presumption that the contract terms and rate represent the reasonable value of the services or goods provided under the contract.").

24.    Through the applicable Rejection Dates, the Debtors continued to receive the benefit of the Lease Agreements and the amounts due under such agreements—including the Initiator Fees—constitute the actual and necessary costs of preserving the estates.  Accordingly, Burnham is entitled to an allowed administrative expense claim for all amounts due under the Lease Agreements from the Petition Date through the Rejection Date.

**RESERVATION OF RIGHTS**

25.    Burnham expressly reserves its rights to amend or supplement this Motion from time to time and at any time, and requests that the Debtors remain liable for, among other things, certain amounts accruing under the Lease Agreements, which may be unbilled as of the date hereof.  Nothing in this Motion is intended to be, or should be construed as, a waiver by Burnham

11

of any of its rights under the Lease Agreements, the Bankruptcy Code, or applicable law. Burnham expressly reserves all such rights.

## **NO PRIOR REQUEST**

26.    No prior request for the relief sought herein has been requested by Burnham.

## **CONCLUSION**

27.    Based on the foregoing, Burnham respectfully requests the entry of an order substantially in the form attached hereto as **Exhibit A** compelling the immediate payment of the full amount of all accrued and accruing post-petition obligations under the Lease Agreements and awarding an administrative expense claim in the same amount.

WHEREFORE, Burnham respectfully requests that the Court enter the Proposed Order or grant such other or further relief as the court deems just and proper.

Dated: November 30, 2022
New York, New York

Respectfully Submitted,

**O'MELVENY & MYERS LLP**

*/s/ Matthew Kremer*
Peter Friedman
Matthew Kremer
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: pfriedman@omm.com
           mkremer@omm.com