```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:                                                              NOT FOR PUBLICATION

AVIANCA HOLDINGS S.A., et al¹                                       Chapter 11

                    Debtors and Reorganized Debtors.                Case No. 20-11133 (MG)
------------------------------------------------------------------x
```

## MEMORANDUM OPINION SUSTAINING THE OBJECTION OF AEROVÍAS DEL CONTINENTE AMERICANO S.A. AVIANCA TO CLAIM NUMBER 1729 FILED BY THE ASOCIACIÓN COLOMBIANA DE AVIADORES CIVILES

*A P P E A R A N C E S :*

Milbank LLP
*Counsel for Debtors and Reorganized Debtors*
55 Hudson Yards
New York, New York 10001
By:  Dennis F. Dunne, Esq.
     Evan R. Fleck, Esq.
     Benjamin Schak, Esq.
     Gregory A. Bray, Esq.

James & Hoffman, P.C.
*Counsel for Asociación Colombiana de*
*Aviadores Civiles (ACDAC)*
1629 K Street NW, Suite 1050
Washington, DC 20006
By:  Ryan E. Griffin, Esq.

---

[1] The Debtors and Reorganized Debtors in these chapter 11 cases, and each Debtors' and Reorganized Debtors' federal tax identification number (to the extent applicable), are as follows: Avianca Holdings S.A. (N/A) n/k/a HVA Associated Corp.; Aero Transporte de Carga Unión, S.A. de C.V. (N/A); Aeroinversiones de Honduras, S.A. (N/A); Aerovías del Continente Americano S.A. Avianca (N/A); Airlease Holdings One Ltd. (N/A); America Central (Canada) Corp. (00-1071563); America Central Corp. (65-0444665); AV International Holdco S.A. (N/A); AV International Holdings S.A. (N/A); AV International Investments S.A. (N/A); AV International Ventures S.A. (N/A); AV Investments One Colombia S.A.S. (N/A); AV Investments Two Colombia S.A.S. (N/A); AV Loyalty Bermuda Ltd. (N/A); AV Taca International Holdco S.A. (N/A); Enterprises S.A. (N/A); Avianca Costa Rica S.A. (N/A); Avianca Leasing, LLC (47-2628716); Avianca, Inc. (13-1868573); Avianca-Ecuador S.A. (N/A); Aviaservicios, S.A. (N/A); Aviateca, S.A. (N/A); Avifreight Holding Mexico, S.A.P.I. de C.V. (N/A); C.R. Int'l Enterprises, Inc. (59-2240957); Grupo Taca Holdings Limited (N/A); International Trade Marks Agency Inc. (N/A); Inversiones del Caribe, S.A. (N/A); Isleña de Inversiones, S.A. de C.V. (N/A); Latin Airways Corp. (N/A); Latin Logistics, LLC (41-2187926); Nicaragüense de Aviación, Sociedad Anónima (N/A); Regional Express Américas S.A.S. (N/A); Ronair N.V. (N/A); Servicio Terrestre, Aéreo y Rampa S.A. (N/A); Servicios Aeroportuarios Integrados SAI S.A.S. (92-4006439); Taca de Honduras, S.A. de C.V. (N/A); Taca de México, S.A. (N/A); Taca International Airlines S.A. (N/A); Taca S.A. (N/A); Tampa Cargo S.A.S. (N/A); Technical and Training Services, S.A. de C.V. (N/A).  The Debtors' and Reorganized Debtors' principal offices are located at Avenida Calle 26 # 59 – 15 Bogotá, Colombia.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the objection (the "Objection," ECF Doc. # 2660) of Reorganized Debtor Aerovías del Continente Americano S.A. Avianca ("Avianca" or "Debtor") pursuant to sections 105 and 502(b) of the Bankruptcy Code, to proof of claim numbered 1729 (the "Claim") filed by the Asociación Colombiana de Aviadores Civiles ("ACDAC"). Attached to the objection as Exhibits A-F are: the Declaration of Paola María Villota Martínez, Vice President of Human Affairs of Avianca (the "Villota Declaration"), the Claim, excerpts of Judgment T-069 (as defined below), excerpts from the 2017 Arbitration Award (as defined below), several Columbian court judgments and Avianca's incentive calculation payments. ACDAC filed a response (the "Response," ECF Doc. # 2687.) The Debtors filed a reply (the "Reply," ECF Doc. # 2697) For the reasons described below, the Court **SUSTAINS** the Objection.

## I.  BACKGROUND

ACDAC represents about half of Avianca's Colombian pilots. (Villota Declaration ¶ 5.) ACDAC has maintained a collective bargaining agreement (convención colectiva) with Avianca since 2009. (*Id.*) In October 2013, following a failed round of negotiations led by the Colombian Ministry of Labor, Avianca offered non-union Colombian pilots a Voluntary Benefits Plan (Plan Voluntario de Beneficios). (*See id.* ¶ 6.) Among other things, the Voluntary Benefits Plan included a monthly incentive payment for operational efficiency and a semi-annual incentive payment for efficient fuel usage. *See id.* ACDAC did not accept the Voluntary Benefits Plan and took the position that the Voluntary Benefits Plan was not permissible under Colombian law. (*See id.*)

2

Subsequently, certain members of ACDAC filed actions before Colombian courts arguing that Avianca's unilateral offer of a compensation package had undermined their right to bargain collectively under Colombian law, and certain actions were reviewed by the Colombian Constitutional Court. (*See id.* ¶ 7.) The Colombian Constitutional Court largely accepted ACDAC's arguments in its February 2015 judgment, excerpted in relevant part at Exhibit C of the Motion ("Judgment T-069"). (*See id.*) Among other things, the court ordered Avianca to extend the Voluntary Benefits Plan to ACDAC members, with the same criteria offered to non-unionized pilots. *See* Judgment T-069 (first paragraph of fifth decretal section).

By late 2017, Avianca and ACDAC had not yet agreed on the terms of a new collective bargaining agreement, and ACDAC had commenced a strike. (*See* Villota Decl. ¶ 8.) In an effort to resolve the dispute, the Colombian Ministry of Labor ordered Avianca and ACDAC to appear before an arbitration panel (tribunal de arbitramento). (*See id.*) The panel's decision (the "2017 Arbitration Award" and, together with Judgment T-069, the "Compensation Decrees") adopted a certain level of salary increases and also provided that efficiency and fuel bonuses "shall be paid in 100% of [their] corresponding value, pursuant to [Judgment] T[-]069 of 2015." 2017 Arbitration Award, cl. 201, excerpted in relevant part at Exhibit D of the Objection.

ACDAC filed the Claim on January 20, 2021. The Claim asserts that "Debtor is obligated under Judgment T-069/15 and the 2017 Arbitration Award to pay monthly operational efficiency incentives and semiannual fuel bonuses to ACDAC members at 100% of the benefit levels paid to non-union pilots." (*See* Claim.) The Claim asserts that the "the amount of this claim is currently unknown but can be determined through Debtor's payroll records." (*Id.*).

The heart of the dispute is as follows: Avianca interprets the 2017 Arbitration Award's requirement that the payment of incentives "shall be paid in 100% corresponding value, pursuant

3

to ruling T069 of 2015" to require Avianca to pay 100% of earned incentives that non-union pilots achieved based on performance. (Objection ¶ 18.) ACDAC interprets this same language to require Avianca to pay the maximum achievable incentive bonus regardless of whether the pilot achieves the performance milestones, which essentially amounts to the argument that the incentive payments are a fixed bonus that ACDAC pilots are entitled to regardless of performance. (Response ¶ 22.) If Avianca's interpretation of the claim amount is correct, then the Claim amount is zero and the Claim should be disallowed. If ACDAC's interpretation is correct, then the claim has a positive value. The Debtors also argue that the Claim should be disallowed because it is untimely and does not attach sufficient documentation to be considered *prima facie* valid. (Reply ¶¶ 16–28.)

## II.  LEGAL STANDARD

Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of claim" to claim an interest in a debtor's bankruptcy estate. 11 U.S.C. § 501(a). Section 502(a) provides that a claim or interest, properly filed, "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).

Under section 502, if an objection is made, the court shall determine the amount of such claim "as of the filing date." *In re Solutia, Inc.*, 379 B.R. 473, 483 (Bankr. S.D.N.Y. 2007) (citation omitted). Section 502(b)(1) provides that claims may be disallowed if they are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

4

"To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak* (*In re Reilly*), 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust* (*In re Motors Liquidation Co.*), No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted); *see also In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) (laying out identical burden-shifting framework).

### III.    DISCUSSION

The Court finds that even assuming the Claim is timely and *prima facie* valid, issues which the Court does not reach here, the Debtors have met their burden of overcoming the *prima facie* evidence by refuting "at least one of the allegations essential to the claim." *Sherman v. Novak* (*In re Reilly*), 245 B.R at 773. ACDAC's central allegation is that the Debtors have not complied with their obligations under the Compensation Decrees regarding incentive payments. Avianca has refuted this essential allegation.

ACDAC does not appear to dispute that if the Court accepts Avianca's interpretation, then the Claim has zero value since the Debtors are currently paying incentives using an identical formula for union and non-union pilots.[2] Avianca has produced sufficient evidence[3] for the

---

[2]    See Response ¶¶ 12("Following Judgment T069, Avianca began applying the Incentives to ACDAC pilots as well as non-union pilots"), 30 n.4 ("these spreadsheets do appear to indicate the [sic] Avianca applies the same formula for all pilots").
[3]    While ACDAC filed a response, they submitted no declaration in support of their Response.

5

Court to determine that their interpretation of Judgment T-069 and the 2017 Arbitration Award is proper and that accordingly the Claim has zero value.

First, Avianca has shown that on seven occasions Colombian courts have endorsed Avianca's interpretation of the 2017 Arbitration Award as requiring equal, but not better, payment of incentives to union pilots vs. non-union pilots. (*See* Objection ¶ 9; Villota Declaration ¶ 12). Further, in their Reply the Debtors attached copies of the translations of the relevant portions of the Colombian court judgments, which confirm that Avianca has properly characterized the judgments. (Reply, Exhibits C-F.) No Colombian court has ever endorsed ACDAC's interpretation of the Compensation Decrees and at the hearing neither counsel for Avianca nor ACDAC identified any currently pending Colombian litigation on the subject. (*See* Villota Declaration ¶ 12.)

Avianca correctly points out that U.S. Courts ordinarily defer to the judgment of foreign Courts. *See Pravin Banker Assocs. v. Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir.1997) ("Under the principles of international comity, United States courts ordinarily . . . defer to [judicial acts and] proceedings taking place in foreign countries, allowing those acts and proceedings to have extraterritorial effect in the United States" unless doing so "would be contrary to the policies or prejudicial to the interests of the United States."); *In re SLS Capital, S.A.*, 2015 Bankr. LEXIS 2468, at *25 (Bankr. S.D.N.Y. July 20, 2015) (granting comity to a Luxembourg court order interpreting its own liquidation order, as this was "consistent with the principles of comity because there was no evidence that the proceedings in the Luxembourg [c]ourt were not fair and impartial"). Here, under principles of comity, the Court defers to the judgment of Colombian courts who have accepted Avianca's interpretation of the Compensation Decrees.

The Court also agrees with Avianca that the plain language of the Compensation Decrees supports Avianca's interpretation. ACDAC interprets the language in the 2017 Arbitration Award that each incentive "shall be paid in 100% of its corresponding value" to mean that "no calculation or formula . . . is required . . . ACDAC pilots are simply entitled . . . to 100% of the available incentive premiums." (Response ¶ 23.) But the language in the 2017 Arbitration award indicates that such payments are to be made "***in accordance with judgment T069 of 2015.***" (Reply, Exhibit A) (emphasis added). This language indicates that the 2017 Arbitration Award simply confirmed that Avianca was obligated to comply with Judgment T-069 and did not purport to expand Avianca's obligations thereunder. *See id.*

In support of its interpretation, ACDAC also points to paragraph 2 of the 2017 Arbitration Award which provides that Avianca "must pay only the difference, should there be one, between the values paid during 2017, and as of the date of issue of this Arbitration Award, so that there is no double payment, for the same item." (Response ¶ 24 (citing 2017 Arbitration Award).) ACDAC then argues that if Avianca was already in compliance with its incentive payments, this paragraph would be superfluous since there would be no additional amounts to pay. However, the clause in paragraph 2 indicates the difference only needs to be paid "should there be one" and thus is not superfluous, but a reaffirmation of the Debtors' obligation to pay incentive bonuses, should they owe any, under Judgment T-069. (*See* Reply, Exhibit A.)

Accordingly, the Court accepts Avianca's interpretation of the Compensation Decrees and finds that the Claim has zero value. Therefore, the Objection is **SUSTAINED**.

/ / / /

/ / / /

/ / / /

A separate order will be entered granting the requested relief.

Dated:   January 20, 2023
         New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge