**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
In re:                                                                    Chapter 11

AVIANCA HOLDINGS S.A., *et al.*,[1]                                       Case No. 20-11133 (MG)

                Debtors and Reorganized Debtors.
------------------------------------------------------------------------x

**DECISION RESOLVING (I) BURNHAM STERLING AND COMPANY LLC AND BABCOCK & BROWN SECURITIES LLC'S MOTION TO COMPEL COMPLIANCE WITH 11 U.S.C. §§ 365(d)(5) AND 503(b), AND (II) REORGANIZED DEBTORS' TWENTY-FOURTH AND TWENTY-FIFTH OMNIBUS OBJECTIONS TO PROOFS OF CLAIM**

*A P P E A R A N C E S:*

Smith, Gambrell & Russell, LLP
*Counsel for Debtors and Reorganized Debtors*
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
By:    John G. McCarthy, Esq.
         Michael F. Holbein, Esq.

O'Melveny & Myers LLP
*Counsel for Burnham Sterling and Company LLC
and Babcock & Brown Securities LLC*
7 Times Square
New York, New York 10036
By:    Matthew Kremer, Esq.
         Peter Friedman, Esq.

---

[1] The Debtors and Reorganized Debtors in these chapter 11 cases, and each Debtor's and Reorganized Debtor's federal tax identification number (to the extent applicable), are as follows: Avianca Holdings S.A. (N/A) n/k/a HVA Associated Corp.; Aero Transporte de Carga Unión, S.A. de C.V. (N/A); Aeroinversiones de Honduras, S.A. (N/A); Aerovías del Continente Americano S.A. Avianca (N/A); Airlease Holdings One Ltd. (N/A); America Central (Canada) Corp. (00-1071563); America Central Corp. (65-0444665); AV International Holdco S.A. (N/A); AV International Holdings S.A. (N/A); AV International Investments S.A. (N/A); AV International Ventures S.A. (N/A); AV Investments One Colombia S.A.S. (N/A); AV Investments Two Colombia S.A.S. (N/A); AV Loyalty Bermuda Ltd. (N/A); AV Taca International Holdco S.A. (N/A); Aviacorp Enterprises S.A. (N/A); Avianca Costa Rica S.A. (N/A); Avianca Leasing, LLC (47-2628716); Avianca, Inc. (13-1868573); Avianca-Ecuador S.A. (N/A); Aviaservicios, S.A. (N/A); Aviateca, S.A. (N/A); Avifreight Holding Mexico, S.A.P.I. de C.V. (N/A); C.R. Int'l Enterprises, Inc. (59-2240957); Grupo Taca Holdings Limited (N/A); International Trade Marks Agency Inc. (N/A); Inversiones del Caribe, S.A. (N/A); Isleña de Inversiones, S.A. de C.V. (N/A); Latin Airways Corp. (N/A); Latin Logistics, LLC (41-2187926); Nicaragüense de Aviación, Sociedad Anónima (N/A); Regional Express Américas S.A.S. (N/A); Ronair N.V. (N/A); Servicio Terrestre, Aéreo y Rampa S.A. (N/A); Servicios Aeroportuarios Integrados SAI S.A.S. (92-4006439); Taca de Honduras, S.A. de C.V. (N/A); Taca de México, S.A. (N/A); Taca International Airlines S.A. (N/A); Taca S.A. (N/A); Tampa Cargo S.A.S. (N/A); Technical and Training Services, S.A. de C.V. (N/A). The Debtors' and Reorganized Debtors' principal offices are located at Avenida Calle 26 # 59 – 15 Bogotá, Colombia.

1

Before the Court are two claim objections and one motion centering on the same dispute between the Reorganized Debtors, which this decision refers to as Avianca, and two entities that served as brokers or initiators of aircraft leases by which Avianca leased aircraft that were necessary to Avianca's business as an airline. Those entities are Burnham Sterling and Company LLC and Babcock & Brown Securities LLC, referred to in this decision as the "Initiators."

The dispute involves services rendered by the Initiators in furtherance of Avianca's entry into aircraft lease agreements before Avianca commenced its Chapter 11 case in this Court. The terms of the leases that the Initiators helped arrange extended well past Avianca's bankruptcy petition date. The express terms of the leases and/or documents incorporated into the main lease documents required Avianca to compensate the Initiators for their services through scheduled lease payments that, like the leases themselves, extended well past Avianca's eventual petition date, and Avianca acknowledged at oral argument that the required payments are fairly characterized as payments due under the leases.

The Initiators each filed timely proofs of claim, among other things asserting secured prepetition claims for unpaid pre-petition amounts due, and/or administrative claims for unpaid amounts that, under the agreed payment schedule imposed by the relevant leases, were due to be paid after Avianca's petition date. Avianca filed objections to the Initiators' Proofs of Claim raising essentially identical arguments, namely, that the claims were not secured and therefore should be reclassified as general unsecured claims; that the Initiators were not entitled to administrative claims on account of amounts that became due after the petition date but that were earned entirely in the pre-petition period; and that various duplicative claims should be expunged in favor of one allowed, general unsecured claim per Initiator creditor. [*See* Reorganized

Debtors' Twenty-Fourth Omnibus Obj. to Proofs of Claim [ECF No. 2661]; Reorganized Debtors' Twenty-Fifth Omnibus Obj. to Proofs of Claim [ECF No. 2663]].

Meanwhile, the Initiators filed a motion of their own, to "compel compliance with 11 U.S.C. § 365(d)(5) and 503(b)" [Burnham Sterling and Company LLC and Babcock & Brown Securities LLC's Mot. to Compel Compliance with 11 U.S.C. §§ 365(d)(5) and 503(b) [ECF No. 2657]]. That motion sought an order compelling immediate payment of amounts asserted in the Initiators' proofs of claim, at least those that became due after Avianca's petition date. The motion also sought an order deeming those amounts to constitute an allowed administrative claim against the estate.

For the reasons that follow, the Court grants in part the Initiators' motion to compel insofar as they seek an order requiring the timely payment of certain post-petition amounts due; denies the Initiators' motion insofar as it seeks allowance of an administrative claim for those amounts; and correspondingly denies the part of Avianca's claim objection that argues that the Initiators are not entitled to relief under section 365(d)(5), while granting the portion of the claim objection that seeks reclassification of the Initiators' pre-petition claim and expungement of duplicative claims.

By way of brief overview of the Court's analysis, Code section 365(d)(5) provides that the Initiators are entitled to "timely perform[ance]" of "all" of Avianca's lease obligations that "aris[e]" beginning 60 days after Avianca's petition date until the assumption or rejection of the relevant lease or leases. The governing agreements establish that the post-petition payment obligations were and are obligations of the debtor under a lease. Further, those payment obligations required payments on specified post-petition dates, and therefore, notwithstanding Avianca's contentions to the contrary, the lease-imposed payment obligations at issue "arose" on

3

the various dates that the leases made them due.  The Initiators are not, however, entitled to an allowed administrative claim pursuant to section 503(b), because those payments have not been shown to constitute "actual, necessary costs and expenses of preserving the estate," nor have the Initiators provided a post-petition service or conferred a benefit on the estate, as is ordinarily required as a condition of the allowance of an administrative claim.  Finally, as noted, the Court sustains Avianca's claim objections to the extent it challenges the Initiators' assertion of secured status for their proofs of claim, and to the extent it seeks to expunge duplicative claims.

## BACKGROUND

The facts that are central to this dispute are not contested, and are summarized only in salient part here.  The parties' pleadings and exhibits provide more detailed histories of the transactions at issue.  Counsel also provided helpful clarifications and factual background during argument on January 25, 2023, which this decision relies on without formal citation to the transcript, as the drafting of this decision had been substantially completed before the transcript became available.

As is typical of many airlines, Avianca leased at least many of the aircraft it used to carry out its business operations.  Avianca retained or contracted for the Initiators to assist Avianca in locating suitable aircraft for Avianca to lease on acceptable terms, and the Initiators did so.  The result was the leases that play a role in this dispute, all of which were entered into before Avianca's bankruptcy petition.  The Initiators' work in furtherance of the lease transactions was completed before the petition date, and there is no contention that the Initiators performed any relevant services for Avianca at any time after Avianca's petition date.  The claim objections and Initiators' motion all concern payment obligations that are imposed by aircraft lease agreements and do not concern any obligations arising at or after the time of any lease's rejection.

Rather than pay the Initiators contemporaneously for their services, Avianca and each aircraft's owner/lessor negotiated and agreed to adopt as requirements of the relevant leases that Avianca's obligations to the Initiators would be paid in specified amounts on specified dates running over time. Avianca acknowledged at oral argument that the terms of the relevant leases require these payments to be made according to pre-agreed schedules. By way of slightly more detailed example, the Initiators explain that section 5.2 of the lease agreement labeled "MSN 3992" provides that "[t]he Lessee shall on each Additional Rental Payment Date pay to the Lessor at the Initiator Account, by way of additional rental payment, installments of the Initiator Compensation . . . . [T]he . . . obligations to pay the Initiator Fees hereunder are unconditional." [Initiators' Mot. to Compel [ECF No. 2657] at 3–4]. And Avianca's papers acknowledge that its obligations to the Initiators were "styled as additional or supplemental rent, which the Debtors [*i.e.*, Avianca] pay in the first instance to a lessor/owner trust." [Debtors' 24th Omnibus Claim Obj. [ECF No. 2661] at 7].

Further, Avianca does not dispute (and the Initiators confirm) that the Initiators seek payment of amounts that, according to the relevant leases and related documents, first became due on or after 60 days following Avianca's petition date, do not extend past the date of any assumption or rejection of any aircraft lease, and have not been paid.

Avianca has objected to the Initiators' assertion that their claim is secured, and the Initiators do not oppose the request to reclassify the claim as unsecured. The Initiators likewise do not oppose the portion of Avianca's claim objection that seeks to expunge certain duplicative claims.

The Court heard argument on the claim objections and the Initiators' motion to compel on January 25, 2023.

# DISCUSSION

### A. The Initiators' Entitlement to Payment Is Pursuant to Lease Obligations That Arose After Avianca's Petition Date

The Initiators' position flows from the literal meaning of Code section 365(d)(5), which provides, with inapplicable exceptions omitted: "The trustee shall timely perform all of the obligations of the debtor . . . first arising from or after 60 days after the order for relief in a [Chapter 11 case] under an unexpired lease of personal property . . . , until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after notice and a hearing and based upon the equities of the case, orders otherwise with respect to the obligations or timely performance thereof." 11 U.S.C. § 365(d)(5). The Initiators observe (as is not contested) that the parties' dispute relates to "an unexpired lease of personal property" and that the leases have not been, at least for the periods for which the Initiators seek compensation, "assumed or rejected." The Initiators also observe that the payment obligations at issue are "obligations of the debtor . . . under" the governing leases and associated transaction documents. Avianca acknowledged at argument, at a minimum, that the lease agreements require the scheduled payments that the Initiators seek to compel.

In opposition, Avianca emphasizes that the Initiators' entitlement to the payments flows from work that the Initiators performed and completed before Avianca's petition date, such that in Avianca's view all the Initiators have is a contractually required payment schedule on account of a prepetition obligation—thus merely an unsecured prepetition claim, not something that should support an administrative claim under the Code [Debtors' 24th Omnibus Claim Obj. [ECF No. 2661] at 11], and "not 'true lease' obligations as contemplated in section 365(d)(5)" [*id.* at 9]. Avianca's papers did not pinpoint any inaccuracy in the Initiators' analysis of the governing statutory text, but emphasized policy considerations and legislative history, arguing

6

that the purpose of section 365(d)(5) was to protect commercial landlords or lessors who otherwise suffered prejudice when debtors languished in bankruptcy without paying rent and other obligations to landlords or lessors, thus unfairly jeopardizing the economic health of parties that were legally obliged to have continuing dealings with a debtor.  [*Id.* at 9–10 (citing *In re Hayes Lemmerz Int'l, Inc.*, 340 B.R. 461, 472 (Bankr. D. Del. 2006) (describing Congressional intent in enacting section 365(d)(5) as being to "give special protection to qualified lessors"); *In re Pudgie's Dev. of NY, Inc.*, 202 B.R. 832, 837 (Bankr. S.D.N.Y. 1996) (opining that the similarly drafted section 365(d)(3) should be "strictly construed" and holding that a prepetition lease's requirement that the lessee pay attorney fees was not entitled to full repayment under section 365(d)(3) notwithstanding that the fees were not billed until after the petition date, where the payment obligation "may fortuitously arise before or after the time period in question"); *In re Child World, Inc.*, 161 B.R. 571, 576 (Bankr. S.D.N.Y. 1993) ("Allowing landlords to recover for items of rent which are billed during the postpetition, prerejection period, but which represent payment for services rendered by the landlord outside this time period, would grant landlords a windfall payment, to the detriment of other creditors, without any support from the legislative history."))].

At argument, Avianca sharpened its efforts to harmonize these observations with the text of section 365(d)(5), arguing that the fact that the Initiators' services were complete and the payment dates agreed to before Avianca's petition date means that Avianca's payment obligation "arose" before the petition date, and is not an obligation of the debtor that, in the words of section 365(d)(5), was "first arising from or after 60 days after the order for relief" (*i.e.*, Avianca's bankruptcy petition filing date).  The Court, however, finds this argument unpersuasive.  Neither party identified case law expressly defining "arising from" as that phrase

7

is used in section 365(d)(5), but the Initiators correctly observe that, under the leases' terms, no payment was due—and thus the debtor had no payment obligation as to any future scheduled payment—until and unless its due date was reached. Further, the statute refers to plural "all obligations" of the debtor "arising" under "a lease" (a singular noun), which signals that each separate payment requirement under "a" lease constitutes a separate "obligation," not merely one portion of a singular, overarching "obligation" embodied in the underlying lease document. The Court is satisfied that both the plain meaning of the statutory terms and the commercial realities of the parties' arrangement here was that there are multiple payment "obligations" that "arise" on their respective due dates as specified in the applicable leases—just as the obligation to pay rent for future periods undisputedly "arises" for purposes of section 365(d)(3) and (d)(5) not upon the signing of the lease, but upon the due dates specified by the lease.

Meanwhile, as to whether the payment obligations can be said to be among "all of the obligations of the debtor" under the leases, the parties agreed at oral argument that the payment obligations at issue are imposed under the leases at issue, which are unexpired leases of personal property. The Court acknowledges the policy and equitable concerns emphasized by Avianca as voiced in *Pudgie's* and *Child World*, and those decisions as well as Avianca here correctly characterize at least a substantial animating concern voiced in relevant legislative history of protecting lessors with ongoing obligations to a debtor, which may apply with less force to payment obligations to parties other than the lessor even when those obligations are imposed by the terms of the lease. But the Bankruptcy Code expressly and unambiguously requires timely payment of "all of the obligations of the debtor" under a lease, not merely "rent" and not merely payments to "lessors." 11 U.S.C. § 365(d)(5). And equitable or policy concerns and legislative history do not control if the statute's express, unambiguous language dictates a different result.

8

*Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) ("In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself.  Where, as here, that examination yields a clear answer, judges must stop.  Even those of us who sometimes consult legislative history will never allow it to be used to 'muddy' the meaning of 'clear statutory language.'") (citations omitted); *In re R.H. Macy & Co., Inc.*, No. 93 CIV. 4414, 1994 WL 482948, at *4, *12 (S.D.N.Y. Feb. 23, 1994) (Sotomayor, J.) ("The problem that I have is that I am persuaded by the policy arguments set forth by Judge Goettel in Childworld [sic].  * * *  Unlike Judge Goettel, I cannot create an ambiguity [in section 365(d)(3)] where I see none exists . . . .  I must interpret 'obligation' according to its ordinary meaning. . . .  I decline, as did the court in [another case], to read into an unambiguous, clear statute a revision based on policy considerations.  I feel compelled to follow the clear and unambiguous terms of the statute[.]").  Or, as the Initiators put it, "Section 365(d)(5) should not be read to include language it clearly does not."  [Burnham Sterling and Company LLC and Babcock & Brown Securities LLC's Consolidated Reply (I) in Resp. to Reorganized Debtors' Twenty-Fourth and Twenty-Fifth Omnibus Objs. to Proofs of Claim and (II) in Further Supp. of Mot. to Compel [ECF No. 2689] at 8 (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 93–100 (2012); *Rotkiske v. Klemm*, 140 S. Ct. 355, 360–61 (2019); *Iselin v. United States*, 270 U.S. 245, 251 (1926))].

The case law invoked by Avianca does not overcome this textual analysis to support the result it seeks, both because reliance on equity and policy cannot overcome an express statutory command, and because the cases Avianca relies on are materially distinguishable.

In *Pudgie's*, the Court relied on the fact that the contracts in question—unlike those at issue here—did not require payments to be made on a date certain or according to a set schedule,

9

such that the payment obligation could arise "fortuitously" either within or outside the statutorily required full-pay period—thus not constituting the type of payments that the statute should be read to mean in requiring "timely" payment of post-petition lease obligations. 202 B.R. at 837. The Court declined to deem such a haphazard payment schedule a requirement for rent payments within the time frame specified by section 365(d)(3) (which all parties and the Court agree has no material analytical differences from subsection (d)(5) except that it applies to real property leases rather than personal property leases). *Id.* As the Initiators emphasize, however, this distinctive factual characteristic that justified the Court's decision in *Pudgie's* is absent here; rather, the lease obligations here concededly make payment for the benefit of the Initiators due as part of each periodic rent payment due under the governing leases. [Initiators' Mot. to Compel [ECF No. 2657] at 3–4]. In fact, *Pudgie's* supports the Initiators' position here because it emphasizes that the statute affords a "preferred position with respect to those obligations arising under the lease in a contractually determined time frame," 202 B.R. 837—exactly what exists here.

Meanwhile, the outcome of *Child World* arguably supports Avianca's position, but it is at least partially distinguishable, and, to the extent it can be said to call for a denial of the Initiators' motion, the Court respectfully declines to follow it because such a reading would be contrary to the unambiguous command of section 365(d)(5) for reasons already stated. *Child World* concerned a debtor-tenant's lease obligation to reimburse a trust-landlord for taxes related to the leased property. The trust billed the Debtor/tenant for tax amounts due without regard to whether the obligations arose before or after the petition date. The Court held that section 365(d)(3) did not require the debtor to make reimbursements for taxes that accrued before the petition, notwithstanding that the bills were sent after the petition date. 161 B.R. at 576–77. The

Court reasoned that these obligations did not come due during the statutorily covered post-petition period. *Id.* In so holding, the Court relied on legislative history reflecting the policy objective of ensuring that landlords would be paid by "debtor-tenants" for "current services," *id.* at 576, and opined that payments that were billed post-petition for "services rendered by the landlord outside this time period [] would grant landlords a windfall payment, to the detriment of other creditors, without any support from the legislative history." *Id.*

The Initiators observe that here, unlike in *Child World*, Avianca's payment obligations not only arise under the leases, but by the leases' terms are due and at all pre- and post-petition times were always due *on dates specified by the leases* that fall within the period that the Code dictates must be timely paid in full. The Court can conceive of no construction that makes these payment obligations under the leases anything other than Avianca payment "obligations" under the leases whose "timely" payment necessarily falls within the post-petition time frame addressed by section 365(d)(5). *Supra* at 7–8. Thus, unlike *Child World*, there is no element of happenstance or timing uncertainty here that could arguably bring the payment obligation outside the scope of section 365(d)(5).

*Child World* thus is materially distinguishable on its facts, and the materiality of its factual difference from the present situation resulted in a legal analysis that did not assume that the plain terms of section 365(d)(3) squarely govern. In other words, the Court in *Child World* did not deem present or analytically contend with the existence of unambiguous statutory language that compelled a ruling in favor of the landlord. Yet here, for the reasons explained above, the statute's unambiguous terms control and mandate the "timely" payment of an explicit lease obligation that the Initiators seek to enforce. *See supra* at 6–9. In keeping with that analysis, to the extent *Child World* is deemed to hold that timely full-payment obligations under

11

section 365(d)(3) or (d)(5) exist only as to landlords or lessors themselves (which overstates the holding of *Child World*), or to hold that lease payments that are due post-petition but that are owed on account of pre-petition events do not constitute such obligations, the Court respectfully declines to follow such a holding, because the statute itself calls for full and timely payment of "all of the obligations of the debtor" under the lease in question, not merely "rent" or "those obligations that are directly payable to the landlord or lessor." Reference to legislative history or policy concerns is insufficient to override Congress's explicit command. *See R.H. Macy*, 1994 WL 482948, at *12.

Not only are the legislative history and policy concerns identified by Avianca not sufficient to override the unambiguous and squarely applicable statutory text, there are also policy and statutory considerations that point in favor of the Court's ruling today. First, section 365(d)(5) requires timely payment of lease obligations "notwithstanding section 503(b)(1) of this title," which provides that administrative claims "shall be allowed" if they are "actual, necessary costs and expenses of preserving the estate. . . ." 11 U.S.C. § 503(b)(1)(A). Thus, section 365(d)(5) omits any benefit to the estate requirement, unlike the standard that governs the requested allowance of administrative claims. This reality, in turn, lessens the persuasiveness of objections that requiring full payment of all of a debtor's lease obligations results in a "windfall," because Congress in enacting section 365(d)(5) explicitly *required* at least some degree of what otherwise might be a windfall by saying that payments required by leases are due without regard to the limits on availability of administrative claims under section 503(b).

Moreover, section 365(d)(5) has been in effect since 1994. *See In re Oreck Corp.*, 506 B.R. 500, 503 n.6 (Bankr. M.D. Tenn. 2014) (noting that § 365(d)(5) was "formerly § 365(d)(1) as enacted in 1994"). The parties to the leases and related transaction documents at issue here

12

are sophisticated, major financial concerns, including a major international airline, presumably sophisticated international aircraft leasing brokers, and (according to document excerpts attached to Avianca's reply) major financial institutions including Wilmington Trust and Wells Fargo Bank. The leases and transaction documents post-date the statute's enactment. The parties' decision to term Avianca's obligations to the Initiators "lease" obligations, in a way that squarely fits within section 365(d)(5), can only have been intentional. The Court has no basis to speculate why the parties chose to proceed this way, but enforcing such a conscious negotiating decision that renders Avianca's recurring payment obligations to the Initiators "obligations of the debtor" under a "lease" does not strike the Court as a windfall that can be said to contravene the intent of Congress nearly 30 years after it enacted section 365(d)(5) using words that perfectly describe the parties' negotiated arrangements here. Indeed, as the Initiators observed at argument and Avianca did not dispute, although section 365(d)(5) includes language authorizing courts to excuse payments otherwise required by the section "after notice and a hearing and based on the equities on the case," Avianca has not proposed such a hearing, nor has it invoked that portion of the statute in its response to the Initiators' contentions.

The Court pauses to note that, although the parties' briefs do not meaningfully discuss cases interpreting sections 365(d)(3) or (d)(5) besides *Pudgie's* and *Child World*, the Court's own research has identified several other such cases, and the Court has considered them. *Child World* itself cites more than ten of these cases on both sides of the issue, noting that some of them "interpreted § 365(d)(3) as providing that the billing date determines when lease obligations arise" even though the taxes which were billed post-petition had accrued during "a period which was almost entirely prepetition," but opining that "[a] substantial majority of [the cases] concluded that under § 365(d)(3), rent should be prorated to cover only the postpetition,

13

prerejection period, regardless of the fortuity of the billing date." 161 B.R. at 576 (collecting cases). The Court need not spend any time discussing these other cases other than to note that they exist. The parties did not cite any of these cases, and even if they had, the Court's own review has identified no analytically relevant difference between these cases and *Child World* which would compel the Court to alter its conclusion that the outcome here is dictated by the unambiguous, plain language of the statute. Quite simply, the Court considers then-Judge Sotomayor's analysis in *R.H. Macy*, 1994 WL 482948, at *11–13, to be both correct, and squarely on point here. *See supra* at 9.

Finally, in addition to seeking to compel payment pursuant to section 365(d)(5), the Initiators' motion seeks allowance of an administrative claim pursuant to Code section 503(b). Allowance of such a claim, however, requires a two-part showing: "first, there must be a postpetition transaction, making it a transaction between the debtor-in-possession and the creditor; and second, the estate must receive a benefit from the transaction. . . . In other words, to qualify for administrative priority, a debtor's obligation to make a payment must have arisen out of a *postpetition* transaction between the creditor and the debtor." *In re Grubb & Ellis Co.*, 478 B.R. 622, 624–25 (Bankr. S.D.N.Y. 2012) (citations omitted). The showing the Initiators have made is that they are entitled to payment under section 365(d)(5), but they have not established a post-petition transaction or benefit to the estate as required to support allowance of an administrative claim under section 503(b). The motion's request for allowance of an administrative claim is therefore denied.

### B. Post-Petition Stipulations Do Not Extinguish the Initiators' Entitlements

Avianca also argues that it entered into various post-petition stipulations which it contends, without citing any law, "modified the terms of each of the lease agreements at issue, and—once

14

so-ordered by the Court—[] took precedence over the lease agreements and suspended the operation thereof, including payment of the initiator fees." [Reply in Supp. of Reorganized Debtors' Twenty-Fourth and Twenty-Fifth Omnibus Objs. to Proofs of Claim [ECF No. 2699] at 7–8; *see also* Debtors' 24th Omnibus Claim Obj. [ECF No. 2661] at 11–12]. Although Avianca refers to several such stipulations, it cites only one, which it calls the "Second Stipulation," as apparently illustrative of the rest. [Debtors' 24th Omnibus Claim Obj. [ECF No. 2661] at 11–12 (citing Second Stipulation and Order Between Debtors and Aircraft Counterparties Concerning Certain Aircraft [ECF No. 401])]. But Avianca fails to cite any specific provision of the Second Stipulation that purports either to (a) relieve Avianca of its obligations to the Initiators specifically, or (b) supersede or suspend the entirety of the underlying lease agreements more generally. Having reviewed the Second Stipulation itself, the Court has identified no such provisions, nor did Avianca identify any such provision when asked at oral argument.

On the contrary, the Court agrees with the Initiators that, because the Second Stipulation expressly and repeatedly contemplates the potential future "assumption of the applicable Original Aircraft Agreements [including the leases] pursuant to section 365 of the Bankruptcy Code" and/or the potential future "reject[ion of] the Aircraft Agreements [including the leases]" [Second Stipulation [ECF No. 401] at 2–10], the Second Stipulation cannot have extinguished the leases, and that the stipulation is insufficient to relieve Avianca of its lease obligations to the Initiators given the explicit wording of section 365(d)(5). As the Initiators rightly point out, section 365(d)(5) requires the performance of lease obligations "arising from or after 60 days after the [petition date] . . . *until such lease is assumed or rejected*" [Initiators' Reply [ECF No. 2689] at 9 (quoting 11 U.S.C. § 365(d)(5)) (alterations in original)], which the Second Stipulation made clear would not occur until some future date. Avianca counters that the Initiators could and should have

15

objected "at the time the Second Stipulations were filed and approved" [Debtors' Reply [ECF No. 2699] at 8], but Avianca has not shown that the Initiators had reason or need to object. Rather, the Second Stipulation does not purport to alter the Initiators' rights under the leases, so the Initiators had no need to object to it.

The Court does not reach the Initiators' additional argument that they cannot be bound by the Second Stipulation because they are not parties to it. [Initiators' Reply [ECF No. 2689] at 9–10]. The Initiators do not appear on the Second Stipulation's list of parties on whom it is binding [Second Stipulation [ECF No. 401] at 9)], but the Initiators are third-party beneficiaries under the original leases, and neither the Initiators nor Avianca has briefed the issue of whether and to what extent a Court-approved, post-petition stipulation may modify the express rights of a third-party beneficiary under a pre-petition lease agreement. For purposes of the present dispute, it is sufficient that the Second Stipulation, by its terms, does not purport to modify the Initiators' rights under the leases and under section 365(d)(5), even assuming that it could do so. Therefore, for the reasons stated above, the Court denies Avianca's claim objection to the extent it is premised on the Second Stipulation purportedly relieving Avianca of its obligations to the Initiators. The Court accordingly also rejects the argument that the Second Stipulation defeats the Initiators' motion to compel.

### C. The Initiators' Duplicative Claims Should Be Expunged, and Their Claims Are Not Secured

Requiring far less discussion is Avianca's objection to the Initiators' assertion that their pre-petition claim was secured as opposed to unsecured, and Avianca's objection to various duplicative claims asserted by the Initiators. [Debtors' 24th Omnibus Claim Obj. [ECF No. 2661] at 8–9, 12–14]. The Initiators concede that their pre-petition claim is not secured, and that duplicative claims can be expunged in favor of one already-filed proof of claim that accurately

16

sets forth pre-petition amounts due to the Initiators.  [Initiators' Reply [ECF No. 2689] at 10–11]. The Court grants Avianca's objection to the extent it seeks to reclassify the Initiators' claim for pre-petition amounts due to general unsecured status, and the Court grants Avianca's request to expunge duplicative claims.  The parties confirmed at oral argument that there is no remaining dispute on these aspects of the claim objection, and they have reached agreement on which claims are to be expunged as duplicative.

## CONCLUSION

For the reasons stated above, the Initiators' motion to compel compliance with section 365(d)(5) is granted, and the Court will direct payment of amounts due under that section.  The Court, however, denies the Initiators' motion to the extent it seeks allowance of an administrative claim pursuant to Code section 503(b).  The Court sustains Avianca's claim objections to the extent they seek to reclassify the Initiators' secured claim and expunge duplicative claims, but denies the objections to the extent they seek to disallow the Initiators' request for payment of post-petition amounts due to them under the leases as required by Code section 365(d)(5).

The parties are to confer and, on or before January 27, 2023, if practicable, jointly submit a proposed order implementing the rulings in this decision.

It is so ordered.


Dated:  New York, New York
        January 26, 2023

                                        *s/ David S. Jones*
                                        Honorable David S. Jones
                                        United States Bankruptcy Judge

17