UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) FOR PUBLICATION |
| | ) |
| | ) Chapter 11 |
| AVIANCA HOLDINGS S.A., *et al.*, | ) Case No. 20-11133 (MG) |
| | ) |
| Debtors and Reorganized Debtors. | ) (Confirmed) |
| | ) |

**MEMORANDUM OPINION GRANTING THE REORGANIZED DEBTORS'
MOTION FOR AN ORDER IMPOSING CONTEMPT SANCTIONS AGAINST
CERTAIN FOREIGN PLAINTIFFS**

*A P P E A R A N C E S:*

Milbank LLP
*Counsel for Debtors and Reorganized Debtors*
55 Hudson Yards
New York, New York 10001
By:    Dennis F. Dunne, Esq.
        Evan R. Fleck, Esq.
        Benjamin Schak, Esq.
        Gregory A. Bray, Esq.

**MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE**

More than 150 Avianca creditors in Columbia and Brazil that filed proofs of claim in these cases also filed lawsuits in courts in Columbia and Brazil that they continue to prosecute and have refused to withdraw or discontinue.  By filing proofs of claim in this Court, those creditors submitted to the jurisdiction of this Court.  Avianca's confirmed chapter 11 plan and the Bankruptcy Code discharge prepetition claims and enjoin the claimholders from commencing or continuing any action or proceeding to enforce or collect on those claims.  After unsuccessfully trying to persuade these creditors to discontinue their foreign lawsuits, Avianca now seeks to hold those creditors in civil contempt.

Avianca requests the Court to enter an order imposing coercive sanctions, giving those creditors 30-days to discontinue their foreign lawsuits, and if they fail to do so, disallowing their claims in these cases. For the reasons explained below, the Court grants the requested relief, conditionally disallowing the claims unless the creditors discontinue their foreign lawsuits within 30 days from the date of this Opinion and Order.

## I.    BACKGROUND

Pending before the Court is the Reorganized Avianca Holdings S.A. ("Avianca") and its above-captioned affiliates' (collectively, the "Reorganized Debtors") motion (the "Motion," ECF Doc. # 2644) for an order imposing sanctions on the Foreign Plaintiffs (as defined below) for violations of section 524(a)(2) of the Bankruptcy Code and certain provisions of the Further Modified Joint Chapter 11 Plan of Avianca Holdings S.A. and Its Affiliated Debtors confirmed on November 2, 2021 (the "Plan"). Attached to the Motion as Exhibit A is the Declaration of Elizabeth Riaño Alarcón in Support of the Debtors' Motion for Order Imposing Sanctions for Violations of Section 524 of the Bankruptcy Code and Discharge and Injunction Provisions of Their Confirmed Chapter 11 Plan (the "Riaño Declaration"). The objection deadline was December 9, 2022. No objections were filed.

### A.    The Reorganized Debtors

On May 10, 2020 and on September 21, 2020 (each, the "Petition Date"), the Reorganized Debtors' predecessors in interest (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases were jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Amended Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 73] and the

*Order Directing Certain Orders in Chapter 11 Cases of Avianca Holdings S.A., et al. Be Made Applicable to Subsequent Debtors* [ECF Doc. # 1030].

The Debtors operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code until they emerged from bankruptcy protection on December 1, 2021. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of their chapter 11 cases is set forth in the *Declaration of Adrian Neuhauser in Support of the Debtors' Chapter 11 Petitions and First Day Orders* [ECF Doc. # 20].

On November 2, 2021, the Court entered the *Order (I) Confirming Further Modified Joint Chapter 11 Plan of Avianca Holdings S.A. and Its Affiliated Debtors and (II) Granting Related Relief* [Docket No. 2300] (the "Confirmation Order"), and the Plan became effective on December 1, 2021 (the "Effective Date"). *See Notice of (I) Entry of Order Confirming Further Modified Joint Chapter 11 Plan of Avianca Holdings S.A. and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadlines for Filing Certain Claims* [ECF Doc. # 2384].

### B.    Foreign Litigation Claims

As of the applicable Petition Date, various judicial proceedings were pending against certain Debtors in Colombia and Brazil. (Motion ¶ 4.) In addition, numerous actions, mostly on account of claims that arose before the applicable Petition Date, were filed in these countries against certain Debtors after the applicable Petition Date (together with the prepetition proceedings, the "Foreign Actions"). (*Id*.) Many plaintiffs in the Foreign Actions (the "Foreign Plaintiffs") filed proofs of claim in the Debtors' chapter 11 cases (the "Foreign Litigation Proofs of Claim") without discontinuing their Foreign Actions.

3

Pursuant to section 1141(d)(1)(A) of the Bankruptcy Code, the confirmation of the Plan has discharged the Debtors "from any debt that arose before the date of such confirmation . . . ." 11 U.S.C. § 1141(d)(1)(A). Furthermore, section 524(a) of the Bankruptcy Code provides that the foregoing discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset" any "debt discharged under section . . . 1141 [of the Bankruptcy Code]." 11 U.S.C. § 524(a)(1), (2).

To give effect to the foregoing provisions of the Bankruptcy Code, (i) section IX.B. of the Plan provides that, except as otherwise provided therein, the Plan treatment provided to all Claims "shall be in exchange for and in complete satisfaction, discharge, and release of all claims and interests of any nature whatsoever," and all such Claims "shall be satisfied, discharged and released in full, and the applicable Debtor's liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all entities shall be precluded from asserting against such Debtors, such Debtors' estates, the applicable Reorganized Debtors, their successors and assigns and their assets and properties any other Claims . . . based upon any documents, instruments or any act or omission, transaction or other activity of any kind or nature that occurred before the Effective Date" (the "Discharge Provision") and (ii) section IX.G of the Plan permanently enjoins all holders of Claims against the Debtors, from and after the Effective Date, from taking the following actions (among others), against the Debtors or Reorganized Debtors: "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims," as well as from "enforcing, collecting, attaching or recovering by any manner

4

or means any judgment, award, decree or order against such entities on account of or in connection with or with respect to any such claims" (the "Injunction Provision").

The Reorganized Debtors argue that the very broad definition of "Claim" in section 101(5) of the Bankruptcy Code (which the Plan adopts), among other things, includes every "right to payment, whether or not such right is reduced to judgment, . . . unliquidated, . . . contingent, . . . disputed, . . . legal, equitable, secured or unsecured," clearly covers the Foreign Actions. (Motion ¶ 7.) Moreover, they also contend that by virtue of filing their respective proofs of claim, the Foreign Plaintiffs have subjected themselves to the equitable jurisdiction in this Court. *See, e.g., Katchen v. Landy*, 382 U.S. 323, 337 (1966)*; Bankruptcy Servs. v. Ernst & Young* (*In re CBI Holding Co.*), 529 F.3d 432, 466 (2d Cir. 2008) (citing *Granfinanciera v. Nordberg*, 492 U.S. 33, 58 (1989)).

The Foreign Plaintiffs were given notice of both the Debtors' efforts to gain approval of the Disclosure Statement and of the confirmation of the Plan. (Motion ¶ 8.) The Reorganized Debtors have written to the Foreign Plaintiffs and spoken to many of them (or their counsel where such information was available) to inform them of the violations. (*See* Riaño Decl. ¶¶ 4-11.) In addition, the Reorganized Debtors have sent claimants and/or their counsel a written final demand reiterating the approval and contents of the Plan and demanding that the Foreign Plaintiffs withdraw their claims either in the applicable foreign jurisdiction or in the Bankruptcy Court. (*See id*.) Thus, the Reorganized Debtors contend that Foreign Plaintiffs were (or should have been) aware that their continued prosecution of the Foreign Actions violates the Discharge Provision and Injunction Provision of the Plan, as well as section 524 of the Bankruptcy Code. Most recently, the Reorganized Debtors sent written communications to the

5

Foreign Plaintiffs (or their counsel) demanding that they either discontinue the applicable Foreign Action(s) or withdraw their Proof(s) of Claim. (*See id.*)

## II.    LEGAL STANDARD

In its decision in *Taggart v. Lorenzen*, the Supreme Court established that a court is authorized under the Bankruptcy Code to impose civil contempt sanctions when "there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." 139 S. Ct. 1795, 1801 (2019). Section 105(a) of the Bankruptcy Code gives this Court the power to "issue any order . . . that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). This provision gives this Court the power to "tak[e] any action . . . necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." *Id.* The mechanism through which courts may take "whatever action appropriate or necessary" to protect the "integrity of the bankruptcy system" is their statutory contempt powers under section 105(a), as well as "whatever inherent contempt powers the court may have." *Bessette v. AVCO Fin. Servs., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000). Those contempt powers "inherently include the ability to sanction a party." *Id.* (citing *Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1389–90 (11th Cir.1996) (recognizing that courts' contempt powers include authority to grant various forms of relief "to the extent . . . necessary and appropriate to carry out the provisions of the Bankruptcy Code")).

Generally, "Federal Courts consider two factors in determining whether to hold a party in civil contempt: whether the alleged contemnor had notice of the court order, and whether that person complied with the order." *In re Residential Capital, LLC*, 571 B.R. 581, 585 (Bankr. S.D.N.Y. 2017). In addition, "[t]o justify a civil contempt order, a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of

noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Weston Capital Advisors v. PT Bank Mutiara, Tbk,* 738 F. App'x 19, 21 (2d Cir. 2018). The Supreme Court has clarified that when a court uses its civil contempt power (including in the bankruptcy context when invoked in conjunction with sections 105(a) and 524 of the Bankruptcy Code), an additional finding of bad faith or willfulness is not required. *Taggart v. Lorenzo*, 139 S. Ct. at 1804.

Generally, bankruptcy courts award two types of sanctions under their civil contempt power: coercive sanctions to encourage compliance or damages for monetary harm. *See Taggart v. Lorenzen*, 139 S. Ct. at 1801; *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("Civil contempt . . . is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance."); *Bartel v. Shugrue (In re Ionosphere Clubs, Inc.)*, 171 B.R. 18, 21 (S.D.N.Y. 1994).

### III. DISCUSSION

The Motion raises two issues 1) whether contempt sanctions are appropriate and 2) provided contempt sanctions are appropriate, what type of sanctions are proper. The Court finds that contempt sanctions are warranted and that the Reorganized Debtors' proposed sanctions are proper under the circumstances.

#### A. Appropriateness of Contempt Sanctions

The Reorganized Debtors have established that contempt sanctions are proper given the Foreign Plaintiffs' violation of the discharge. As an initial matter, this Court has jurisdiction over the Foreign Plaintiffs as all the Foreign Plaintiffs have filed proofs of claim in the chapter 11, which subjects them to the jurisdiction of this Court. *See, e.g., Katchen v. Landy*, 382 U.S.

323, 337 (1966); *Bankruptcy Servs. v. Ernst & Young (In re CBI Holding Co.)*, 529 F.3d 432, 466 (2d Cir. 2008) (citing *Granfinanciera v. Nordberg*, 492 U.S. 33, 58 (1989)).

Next, the Debtors have established that the Foreign Plaintiffs had notice of the Discharge Order and the Injunction Provision and that, despite this notice, the Foreign Plaintiffs have not complied with these orders by failing to discontinue their Foreign Actions. (*See* Riano Decl. ¶¶ 5–11); *In re Residential Capital, LLC*, 571 B.R. 581, 585 (Bankr. S.D.N.Y. 2017) (requiring a showing that the alleged contemnor had notice of the court order and did not comply with the court order).

As required for contempt sanctions, the Reorganized Debtors have also established, through the undisputed Riaño Declaration that 1) the Foreign Plaintiffs have failed to comply with a clear and unambiguous order; 2) the proof of compliance is clear and convincing, and 3) the Foreign Plaintiffs have not made diligent efforts to comply with this Court's order. (Riaño Declaration ¶ 4); *See Weston Capital Advisors v. PT Bank Mutiara, Tbk*, 738 F. App'x 19, 21 (2d Cir. 2018).

First, the Reorganized Debtors have shown that the Foreign Plaintiffs have failed to comply with a clear and unambiguous order—the Discharge Provision and Injunction Provision in the Plan. The Injunction Provision explicitly provides that "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims," as well as from "enforcing, collecting, attaching or recovering by any manner or means any judgment, award, decree or order against such entities on account of or in connection with or with respect to any such claims." (Motion ¶ 6 (citing section IX.G of the Plan).) Further it is undisputed that the broad definition of "claim" in the Discharge Provision includes the Foreign Plaintiffs' actions. Here, the Foreign Plaintiffs have continued to prosecute actions in

8

connection with their claims, which were discharged through the Discharge Provision, in clear violation of the Injunction Provision. (*See* Riaño Declaration ¶ 4.)

Second, evidence of such violations is clear and convincing. The Foreign Plaintiffs had notice of the Discharge and Injunction Provisions, and flouted the provisions, nonetheless. The Riaño Declaration explains in detail the Reorganized Debtors' attempt to contact claimants and counsel. (*Id.* ¶¶ 5–12.) The Declaration indicates that for the most part counsel did not respond to repeated letters informing them of the violations and requesting that they discontinue the Foreign Actions. (*Id.* ¶ 13.) One attorney who did respond was Mr. Ballen, who represents 156 of the Foreign Plaintiffs against whom the Reorganized Debtors seek sanctions. (*Id.* ¶ 7.) In response to the Reorganized Debtors' demand that Mr. Ballen withdraw the Foreign Actions, Mr. Ballen stated that he did not believe his clients have an obligation to choose between prosecuting their claims in this Court or in the Colombian courts. (*Id.* ¶ 9.) Accordingly, despite the Reorganized Debtors' diligent efforts to apprise claimants and counsel of the violations, the Foreign Plaintiffs have not discontinued their Foreign Actions, and in the case of Mr. Ballen, have even indicated an intent to actively continue the actions in direct violation of this Court's order. (*Id.* ¶¶ 5–12.)

Finally, for these same reasons, it is clear that the Foreign Plaintiffs have not made diligent efforts to comply. Despite being informed of their violations of the Discharge and Injunction provisions, the Foreign Plaintiffs have made no efforts to comply and have not discontinued their actions. (*Id.* ¶¶ 4–12.) Because the Reorganized Debtors have met the prongs of the *Weston* test, contempt sanctions are appropriate here. *See Weston,* 738 F. App'x at 21.

### B. Appropriateness of Reorganized Debtors' Proposed Contempt Sanctions

The Reorganized Debtors' proposed sanctions, giving Foreign Plaintiffs thirty days to discontinue their actions and then disallowing the Foreign Litigation Proofs of Claims if they fail

9

to do so, are proper under the circumstances.  (*See* Motion ¶ 9.)  As already stated, the purpose of a civil contempt usually is to coerce compliance with a court order, and a coercive civil contempt sanction may be conditioned on continued noncompliance.  *See* MOORE'S FEDERAL PRACTICE, at § 37.51; *Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir.1998) (stating that because the sanctions, which were entirely conditional and coercive, were imposed to compel obedience to a court order, they were civil in nature).  The Court has broad discretion to fashion a coercive remedy based on the nature of the harm and the probable effect of alternative sanctions, and its determination will not be disturbed absent a clear showing of abuse.  *EEOC v. Local 28, Sheet Metal Workers*, 247 F.3d 333, 336 (2d Cir.2001).

In considering what sanction to impose, the Court has considered (1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of the sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden.  *See Terry*, 886 F.2d at 1353 (citing *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir.1987)).  A coercive sanction must be reasonable in relation to the facts.  *See Terry*, 886 F.2d at 1351.

Here, the harm, as the Reorganized Debtors point out, is that the Foreign Plaintiffs may be able to obtain double recovery for their pre-petition claims, under the Plan and through the Foreign Actions, if they do not discontinue the Foreign Actions.  (Motion ¶ 19.)  The proposed sanctions are likely to be effective in abating this harm (at least to the extent of avoiding a double recovery).  If the Foreign Plaintiffs discontinue the Foreign Actions as required by this Order, they can pursue their claims in the bankruptcy court, subject to any further objections of the Reorganized Debtors.  If they do not comply with the Court's order, their claims will be disallowed, as any double recovery will be obtained at the expense of Avianca's other unsecured

10

creditors whose recoveries would be unfairly diluted. Finally, because all the Foreign Plaintiffs need to do for the proposed sanctions to abate is discontinue the Foreign Actions, there is no financial burden on the Foreign Plaintiffs to come into compliance with this Court's order. Accordingly, the Court finds that the Debtors' proposed sanction is reasonable in relation to the facts. *See Terry*, 886 F.2d at 1351.

The Court notes that the Reorganized Debtors have cited no case, and the Court is not aware of any case, in which a bankruptcy court has used conditional disallowance of a claim as a contempt sanction. The Reorganized Debtors point out that the lack of precedent on this issue is probably a product of the unique factual scenario. (Motion ¶ 26.) The Debtors note that the risk of double recovery present here is ordinarily eliminated by a combination of section 502(b)(1) (for debts that either have already been paid or otherwise expose the debtor to such risk (as, for example, claims for both default interest and late charges) and section 1141 (for debts that have been discharged).[1] (*Id.*) The Court finds here that given the injustice that would result from the Foreign Plaintiffs' double recovery, and the Foreign Plaintiffs' clear contempt for this Court's order, that a sanction of conditional disallowance of the Foreign Plaintiffs' claims is proper.

/ / / / /

/ / / / /

/ / / / /

---

[1] The Court agrees with the Debtors that the remedy they are seeking here is not a remedy of "equitable disallowance," which the Debtors note, the Bankruptcy Code does not provide for. (Motion ¶ 22.) The Reorganized Debtors are not seeking equitable disallowance of the Foreign Litigation Proofs of Claim in that they are not asking the Court to disallow the Foreign Litigation Proofs of Claim because of some inequitable or egregious conduct by the Foreign Plaintiffs. (*Id.* ¶ 23.) What the Debtors are seeking is a contempt sanction that is tailored to the particular circumstances at hand. If the Foreign Plaintiffs comply with this Court's orders within thirty days, their claims will not be disallowed. (Motion ¶ 9.)

11

### IV. CONCLUSION

For the reasons described above, the Motion is **GRANTED**. A separate order will be entered granting the requested relief.

Dated: January 27, 2023
      New York, New York

                                   *Martin Glenn*
                                MARTIN GLENN
                    Chief United States Bankruptcy Judge